UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 16-CV-80170-MARRA/MATTHEWMAN

HARBOURSIDE PLACE, LLC, a
Florida limited liability company,

      Plaintiff,

v.

TOWN OF JUPITER, FLORIDA, a
Florida municipal corporation,
JUPITER COMMUNITY
REDEVELOPMENT AGENCY, a
dependent special district of the
Town of Jupiter, Florida,

      Defendants.

_____/

## PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTED MOTION FOR TEMPORARY INJUNCTION [VERIFIED]

Plaintiff, HARBOURSIDE PLACE, LLC ("HARBOURSIDE"), by and through its undersigned counsel and pursuant to Rule 65, Federal Rules of Civil Procedure, amends and supplements its initial and amended/supplemented Motion(s) for Emergency Temporary Injunction [Verified] (the "Motions") filed with the state court on January 7, 2016 and January 16, 2016 prior to removal to this Court, and respectfully requests entry of an order temporarily enjoining Defendant, THE TOWN OF JUPITER, FLORIDA (the "TOWN"), from interfering with, disrupting or shutting down HARBOURSIDE's free public event programming (including its use of TOWN Police to disrupt or halt regularly-scheduled events).

### ≣ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

Having not been satisfied with using the police to shut down performances at Harbourside Place and unconstitutionally restricting certain forms of musical expression, the Town of Jupiter during the pendency of this litigation has now passed a new sound ordinance directed at HARBOURSIDE and is refusing to allow HARBOURSIDE to hold its traditional July 4th celebrations.  For months the Town and HARBOURSIDE have stipulated to the continuing operation of HARBOURSIDE's amphitheater without one violation of the Town's then-existing sound regulations occurring. Not being satisfied, the Town for retaliatory reasons has created a new, more restrictive sound ordinance and is prohibiting HARBOURSIDE from celebrating July 4th.

These events do not pose any genuine health or safety risks; rather, the TOWN seeks to self-adjudicate HARBOURSIDE's rights through force instead of through an orderly judicial process. Through this motion, HARBOURSIDE does not seek to be excused from complying with the Town's Exterior Sound Ordinance, or the Development Orders applicable to Harbourside Place.

The Motions are restated herein and are further supplemented to allege facts relevant to the requested relief that have occurred since January 16, 2016 and through which the Town has continued to target and injure HARBOURSIDE, including:

- Special Event Permits.  To facilitate the parties' elongated mediation efforts, the parties entered into serial stipulations (the "Stipulations"). Harbourside and the Town agreed in the Stipulations that despite HARBOURSIDE'S belief that it was not obligated to apply for and obtain Special Event Permits ("SEP") from the Town to operate regularly scheduled events (e.g., a solo guitarist or yoga

-2-

BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
t: 561-241-9500  f: 561-998-0028

instructor) in the amphitheater, HARBOURSIDE would seek and obtain the SEPs for those regularly-scheduled outdoor amphitheater events while the parties mediated provided that the issuance of those SEPs would not be held against HARBOURSIDE if this matter was not able to be settled through mediation. Pursuant to the terms of the Stipulations, filed of record with this Court[1] (and in the state court prior to removal), the Town expressly agreed that Harbourside's use of SEPs for its regularly-scheduled outdoor amphitheater events would be *entirely without prejudice* to Harbourside's rights. The TOWN most recently issued a blanket SEP to approve the events to be held by HARBOURSIDE during the mediation period in the last Stipulation. In April 2016, HARBOURSIDE applied for an SEP to present July 4th/Independence Day family events at/around its outdoor amphitheater; due to the number of visitors expected at HARBOURSIDE to enjoy the July 4th festivities (based on last year's event), HARBOURSIDE recognized that the July 4th event may require a special event permit under the Town's Code. However, despite the agreement reached in the Stipulations that the application and issuance of the SEPs during the mediation period would not be used against HARBOURSIDE, by letter dated June 3, 2016 from Thomas Baird, the Town's attorney, the Town asserted that HARBOURSIDE had already exhausted its allotted number of SEPs for all of 2016. The Town's position directly conflicts with and violates the express terms and spirit of the Stipulations that were put in place while the parties were

---

[1] ECF No. 11; ECF No. 22; ECF No. 1 (pp. 322-433).

≡ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

attempting to negotiate a settlement of this matter. In effect, the Town has denied HARBOURSIDE's application for a July 4th/Independence Day SEP for no reason other than the reasons stated in Mr. Baird's letter. *See* Thomas Baird, Esq. letter dated June 3, 2016 (attached hereto as **Exhibit 13**). The Town's denial of the July 4th/Independence Day SEP request is a breach of the Stipulations and is wrongful is done in bad faith, and done merely to harm HARBOURSIDE and its tenants. The Town has reneged on its promise with HARBOURSIDE and the Town has misrepresented to this Court its true objective, which was to lure HARBOURSIDE into a lengthy mediation and cause HARBOURSIDE to use up the SEPs during that period of time.  This breach by the Town of the terms of the Stipulations and its bad faith dealing must be remedied. HARBOURSIDE, acting in good faith the settle this matter, agreed to participate in the Town's special event permitting process for its regularly-scheduled outdoor amphitheater events only because the Town agreed that HARBOURSIDE would not be prejudiced by doing so.  The Town's latest position greatly prejudices HARBOURSIDE and the public at large. Given that the nation's Independence Day is quickly approaching, prompt judicial assistance is sought in hopes of salvaging HARBOURSIDE's opportunity to serve the public with celebratory events.

- On June 7, 2016, the Town Council adopted Ordinance 1-16 which amended the Town's Noise Ordinance specifically to target HARBOURSIDE and render HARBOURSIDE's outdoor amphitheater unusable for the events intended. In many respects, the Ordinance amendments exclusively apply to HARBOURSIDE

≡ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

and legislate the Town's animus toward HARBOURSIDE.  *See* **Exhibit 14** attached hereto.   In part, the Town wishes to now regulate the sound at HARBOURSIDE'S property line even if the sound measured at other property lines does not violate the Town's noise ordinance.

- HARBOURSIDE presented its 2016 Event Programming Schedule to the Town in December 2015; the Town claimed a right to a 60-day review period before the event schedule would be deemed operative.  During the 60-day period and to date, the Town has not taken action regarding HARBOURSIDE's 2016 Event Programming Schedule (its opportunity expired long ago) but the Town now claims that HARBOURSIDE is prohibited from presenting any free public events according to its 2016 Event Programming Schedule.  The Town continues to take every opportunity to punish and intimidate HARBOURSIDE to accede to unlawful demands and governmental interferences and prior restraints, for which prompt judicial relief is sought.

In further support of its motion, HARBOURSIDE states:

## FACTUAL BACKGROUND

1.      HARBOURSIDE owns and operates "Harbourside Place" situated in the Town of Jupiter along the Intracoastal Waterway just north of the Indiantown Road bridge. The TOWN self-promotes "Harbourside Place" as its primary entertainment center along the TOWN's Riverwalk:

> "The Harbourside Place development, located north of the Indiantown Road bridge, has completed construction and celebrated its Grand Opening on December 4 - 6, 2014.  Harbourside Place was designed to become the main

-5-

"entertainment" component of the Riverwalk. The 179 room Wyndham Grand Hotel, offices, retail, amphitheater, restaurants[,] public boat docks and public parking are now open." [http://www.jupiter.fl.us/index.aspx?nid=227]

2.      Harbourside Place [http://harboursideplace.com] comprises approximately 11 acres, and includes 43,164 square feet of retail space leased to several tenants including Tommy Bahama, , Chico's, White House/Black Market, Pink Princess, Francesca's, Venetian Nail Spa and Native Visions Gallery; eight restaurants (for example, The Woods Jupiter, Deep Blu Seafood Grille, Bravo! Cucina Italiana, Too Bizarre, Calaveras Cantina and Burger Fi) comprising 31,415 square feet; a 179-room Four Star Wyndham Grand hotel and conference center, multi-level parking structures, 63,852 square feet of office space and open public spaces including an outdoor amphitheater, a public marina and the TOWN's Riverwalk, creating a family-friendly, upscale environment for residents in or around the Town of Jupiter, and business or social visitors as well.

3.      The TOWN's Riverwalk is a 2.5-mile pedestrian walkway adjacent to the Intracoastal Waterway that provides access to residents and visitors to Harbourside Place as the TOWN's entertainment district.

4.      The TOWN approved the development of Harbourside Place as a planned unit development or "PUD".  The Harbourside Planned Unit Development was first approved through the adoption of Ordinance 14-08 ("Ord. 14-08") on December 2, 2008.  The TOWN later adopted Ordinance 44-10 ("Ord. 44-10"), which amended Ord. 14-08, Ordinance 1-13 ("Ord. 1-13"), which amended Ord. 14-08 and 44-10, and Ordinance 50-13 ("Ord. 50-13"), which amended Ords. 14-08, 44-10 and 1-13.  Collectively, Ord. 14-08, Ord. 44-10, Ord. 1-13

-6-

and Ord. 50-13 are referred to herein as the "Harbourside PUD," and are attached as **Composite Exhibit 1**. The Development Orders required HARBOURSIDE to comply with the Exterior Sound Ordinance then in effect.

5.      The TOWN approved the Harbourside Place site plan through the adoption of Resolution 25-08 ("Res. 25-08").  The Harbourside Place site plan was subsequently amended through the adoption of Resolution 4-10 ("Res. 4-10"), Resolution 2-13 ("Res. 2-13") and Resolution 83-13 ("Res. 83-13").  Collectively, Res. 25-08, Res. 4-10, Res. 2-13 and Res. 83-13 are referred to herein as the "Site Plan," and are attached as **Composite Exhibit 2**.  As part of its ultimate approval of HARBOURSIDE's site plan application, the TOWN directed and ordered that HARBOURSIDE construct and operate an outdoor amphitheater at which live music and other entertainment events would be provided to the public for free, as part of the TOWN's desire to make HARBOURSIDE the main entertainment venue of the TOWN's Riverwalk. Collectively, the Harbourside PUD and Site Plan are referred to as the "Development Orders."

6.      In response to the TOWN's demands and in accordance with the Development Orders, HARBOURSIDE in fact designed and constructed "Harbourside Place" at a cost in excess of $150,000,000.00.  Pursuant to the Development Orders, HARBOURSIDE erected an outdoor amphitheater on its premises, and purchased extensive sound amplification equipment for its regular use, at a cost in excess of $1.5 million, plus the cost of operations including the entertainment events regularly presented at the outdoor amphitheater.  The outdoor amphitheater is on a portion of Harbourside Place that otherwise would have been developed by HARBOURSIDE and would have generated revenue to HARBOURSIDE.

BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
t: 561-241-9500  f: 561-998-0028

7.    Under the Development Orders, HARBOURSIDE was entitled to obtain certificates of occupancy for the developed areas on its property, upon demonstrating that its outdoor amphitheater could be operated while complying with the TOWN's Exterior Sound Ordinance.

8.    Under the terms of the Development Order, the TOWN mandated that HARBOURSIDE hold a minimum of 24 events on its property.  If it did not, the TOWN could hold those events and charge HARBOURSIDE for the cost associated with the events.

9.    The TOWN issued permanent certificates of occupancy for all aspects of "Harbourside Place" (including its outdoor amphitheater) on October 1, 2014.  Copies of the permanent Certificates of Occupancy issued to HARBOURSIDE by the TOWN are attached to Harbourside's complaint as **Composite Exhibit 3**.  As a condition precedent to obtaining permanent Certificates of Occupancy, HARBOURSIDE was required to obtain all required building permits and close them out in accordance with applicable law.

10.   Since its opening to the public, HARBOURSIDE has presented live music and other entertainment events at its outdoor amphitheater, including weekend musical events and holiday events. HARBOURSIDE has expended more than $700,000.00 to present those events to the public for free. In addition, for a substantial period before and after opening to the public, and to date, HARBOURSIDE has invested in excess of $544,000.00 in sound amplification equipment, sound attenuation equipment and physical improvements to its outdoor amphitheater, at the direction of the TOWN and its sound consultant, all in compliance with the Development Orders.  HARBOURSIDE's expenditure of these funds provides a tangible public benefit at no cost to the TOWN or to the residents or visitors attending these events at Harbourside Place.

-8-

11.     HARBOURSIDE has complied with the requirements under the Development Orders, particularly concerning its right as an "outdoor venue" under the TOWN's Exterior Sound Ordinance. The Town issued final certificates of occupancy for all of Harbourside Place in *October 2014* pursuant to the Development Orders. For some time, and as of the filing of this action, HARBOURSIDE has fulfilled all of the conditions expressed in the Development Orders to be recognized by the Town as an outdoor venue.

12.     In fact, through Resolution No. 2-13, the TOWN approved Harbourside Place as an Outdoor Venue.

13.     The Development Orders did **not** provide for any additional *certification* of HARBOURSIDE as an outdoor venue, although the TOWN continues to seek to impose that unspecified condition upon HARBOURSIDE well after-the-fact. As of the filing of this motion, the TOWN has not taken any action to challenge or revoke the final Certificates of Occupancy for HARBOURSIDE.

14.     Among other things, HARBOURSIDE presented its own sound consultant's report and analysis establishing that HARBOURSIDE was able to hold events using exterior amplified sound equipment while maintaining compliance with the TOWN's sound regulations; the TOWN accepted the sound compliance report presented by HARBOURSIDE's sound consultant as demonstrating compliance with the TOWN's sound regulations.

15.     HARBOURSIDE is entitled to utilize its outdoor venue regularly, as envisioned and directed by the TOWN's Development Orders. The TOWN through the Development Orders expressly required HARBOURSIDE to present regular, routine event programming; these regularly-scheduled events do not require a special event permit under the Development Orders

-9-

as long as the Town approves the annual special events calendar. The Town has acted in bad faith by failing and refusing to review and respond to HARBOURSIDE'S 2016 Events Calendar submitted to the Town on December 22, 2015.  HARBOURSIDE's regular use of its outdoor amphitheater is not subject to the TOWN's discretionary consideration of "special event permit" applications; HARBOURSIDE is entitled to utilize its outdoor amphitheater regularly without "special event permit", but subject to the provisions of the TOWN's sound Ordinance.

16.     The TOWN's Code Section 27-251 *et seq.* prescribes the "special event permit" process which would be (and has been previously) triggered by certain irregular events planned at HARBOURSIDE, such as public events involving road closures and other traffic concerns, anticipation of an extraordinarily high number of attendees (such as events celebrating St. Patrick's Day, Christmas Tree lighting, annual Boat Parade, Holiday Choir Sign-off, Memorial Day, July 4th and New Years' Eve) and heightened safety concerns. Usually these "special event permit" situations require additional police or paramedic staffing because of the expected increase in attendees as compared to regular events at HARBOURSIDE.

17.     None of HARBOURSIDE's regularly-scheduled events at its outdoor amphitheater require a "special event permit" under the TOWN's Code. Through the Development Orders, the TOWN acknowledged that special event permits would be required only for those unique and infrequent situations in which extraordinarily large crowds were anticipated at Harbourside Place (or there would be road closures).

18.     The TOWN's "special event permit" section of its Code is not part of the TOWN's Exterior Sound Ordinance.

BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

19.     Consistent with its opening to the public in 2014, HARBOURSIDE began leasing retail space at Harbourside Place to retailers and restaurants, including for instance, The Woods Jupiter, Deep Blu Seafood Grille, Bravo! Cucina Italiana, Calaveras Cantina, Burger Fi, Tommy Bahama and White House Black Market. These and other tenants contemplated (as did HARBOURSIDE when investing millions of dollars into Harbourside Place) that HARBOURSIDE's outdoor venue would be regularly used to present public entertainment programs which would attract consumers to Harbourside Place generally, and to their restaurants and retail stores specifically. Upon information and belief, HARBOURSIDE's tenants contemplated the free musical and other events scheduled for HARBOURSIDE's outdoor amphitheater, and the benefits that their businesses would reap by the customer traffic created by those events, when deciding to open their businesses at HARBOURSIDE.

20.     HARBOURSIDE has regularly used its outdoor venue to present public entertainment programs (for free) which have attracted consumers to Harbourside Place, as contemplated by the TOWN under the Development Orders.

21.     Despite the fact that the TOWN's "special permit" section of its Code applies only to truly "special" events, the TOWN has demanded (and continues to demand) that HARBOURSIDE apply for and obtain "special event permits" for each and every regularly-scheduled event programmed by HARBOURSIDE at its outdoor venue. The TOWN has demanded that HARBOURSIDE follow the TOWN's arbitrary "special event permit" process to provide the TOWN the improper and unlawful means of exerting operational control over HARBOURSIDE and all aspects of its use of its outdoor venue, including constraints or prohibitions regarding:

-11-

a.  the type of programming HARBOURSIDE may offer to the public;

b.  the types of instruments musicians may use when performing at HARBOURSIDE's outdoor venue;

c.  the genre of music HARBOURSIDE may offer to the public;

d.  the hours during which HARBOURSIDE may offer events to the public at its outdoor venue;

e.  and days of the week on which HARBOURSIDE may offer events to the public at its outdoor venue.

22.    The TOWN has acted (and continues to act) inconsistent with its Noise Ordinance including the treatment of outdoor venues such as Harbourside Place thereunder.  Under the guise of its land use and zoning authority, the TOWN has imposed upon HARBOURSIDE a variety of over-reaching, unconstitutional and unlawful terms and conditions concerning the regularly-scheduled use of the Harbourside Place outdoor amphitheater, which are arbitrary and capricious, and designed to circumvent the TOWN's Noise Ordinance (and the outdoor venue provisions thereunder) and HARBOURSIDE's rights under the Development Orders and Noise Ordinance, and the United States and Florida Constitutions.

23.    The TOWN's arbitrary actions have severely limited and unlawfully interfered with HARBOURSIDE's regular use of its outdoor venue.  The TOWN's actions have injured, and continue to threaten, HARBOURSIDE's business and that of its tenants whose revenue expectations have been based on HARBOURSIDE being and remaining the main entertainment component to the TOWN's Riverwalk.

-12-

## THE TOWN'S CONTINUING ABUSE OF MUNICIPAL POWERS

24.     The TOWN has continued to demand that HARBOURSIDE seek and obtain "special event permits" for virtually every event that HARBOURSIDE intends to host at its outdoor amphitheater, even though the Development Orders only authorize the TOWN to require "special event permits" for truly "special" events in which public turnout is expected to be exceptionally high, requiring additional security and crowd control measures.

25.     Rather than treat HARBOURSIDE in accordance with the final certificates of occupancy under the Harbourside PUD, which included recognition of the outdoor amphitheater as an 'outdoor venue' under its Exterior Sound Ordinance, the TOWN has continued to bury HARBOURSIDE in a perpetual "special event permit" atmosphere through which the TOWN has imposed upon HARBOURSIDE exterior sound conditions (and other conditions) that are more stringent than those required of other property owners similarly situated, and more stringent than those applicable to HARBOURSIDE under the TOWN's Exterior Sound Ordinance (whether or not HARBOURSIDE's outdoor amphitheater is treating as an "outdoor venue" under the TOWN's Exterior Sound Ordinance).

26.     On January 5, 2016, the TOWN was poised to unilaterally impose additional conditions on HARBOURSIDE's regularly-scheduled events through a Resolution of the TOWN's creation; the TOWN acknowledged through its proposed Resolution that HARBOURSIDE's regularly-scheduled event programming could proceed without any need for "special event permits" (as envisioned by the Development Orders).

≡ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

### RECENT EXIGENT CIRCUMSTANCES WARRANTING EMERGENCY RELIEF

27.     HARBOURSIDE intends to continue to present free entertainment to the public at its outdoor amphitheater this coming weekend, and into the near future, as reflected on the event schedule(s) included on **Exhibit 4** attached hereto. HARBOURSIDE will continue to comply with the Town's current Noise Ordinance and Development Orders.

28.     HARBOURSIDE had hoped the Town would allow HARBOURSIDE to continue to present these events to the public notwithstanding the current legal disputes between the Town and HARBOURSIDE which are now before this Court for proper adjudication.

29.     To ensure no breach of the peace during these free public events, however, HARBOURSIDE simply asked the Town whether it intends to disrupt or shut down these scheduled events *through police force* (which the Town has done in the past, when a musical act at HARBOURSIDE had used 'drums' that were prohibited by the Town). A copy of HARBOURSIDE's January 6, 2016 letter (and attached schedules of planned events) to the Town's attorney is attached hereto as **Exhibit 5**.

30.     In response to HARBOURSIDE's clear request, the TOWN through its attorney issued a letter on January 7, 2016 at 4:20 p.m. that raised several legal arguments that are subject to adjudication in this action, but conspicuously failed to respond to HARBOURSIDE's inquiry concerning the TOWN's intention (or not) to forcibly shut down the free public events HARBOURSIDE planned for this weekend and into the near future while this action remains pending. See 2016-01-07 Letter to Anthony Carriuolo attached as **Exhibit 6.** The TOWN's

-14-

response contained this ominous, unspecific threat: *"Harbourside may expect that the Town will take appropriate enforcement actions."*

31.     Without the simple assurances requested from the TOWN *pendente lite*, HARBOURSIDE remains exposed wrongfully to the TOWN's excessive and unwarranted use of its police force to disrupt or shut down HARBOURSIDE's regularly-scheduled events, and deprive the public of the free events that have been continuously provided to the public for over a year.

32.     In a further effort to avoid the need to obtain emergency relief from this Court, HARBOURSIDE by e-mail (issued within an hour of the Town's January 7 letter) reiterated its request for the TOWN's assurances that the TOWN would not exercise its police power to breach the peace during HARBOURSIDE's regularly-scheduled events this weekend and into the near future, or issue notices of violation. See 2016-01-07 Email to Thomas Baird attached as **Exhibit 7.**

33.     On January 8, 2016, in response to HARBOURSIDE's request that the Motion be heard on January 8, 2016, prior to the free public events at the Harbourside Place outdoor amphitheater scheduled for the upcoming weekend, this Court issued its Order Denying Request for Emergency Handling of "Plaintiff's Emergency Motion for Temporary Injunction (Verified)" (the "Order"), which concluded that the Motion was not entitled to be heard on an emergency basis.

34.     HARBOURSIDE took this Court's Order as an acknowledgement that neither the weekend's regularly scheduled events at the Harbourside Place outdoor amphitheater, including live musical performances, nor the TOWN's reasons for shutting such events down, constituted

☰ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

an emergency which merited immediate treatment by the Court. Consistent with this position, HARBOURSIDE sent a letter to the TOWN expressing HARBOURSIDE's intent to continue with already scheduled events, consistent with the events schedule that TOWN staff had recommended for approval during the January 5, 2016 meeting of the Town Council. See 2016-01-08 Letter to Thomas Baird attached as **Exhibit 8**. The TOWN responded to HARBOURSIDE's expressed intentions by stating that "...Harbourside is not authorized to present any events...." See 2016-01-08 Letter to Anthony Carriuolo attached as **Exhibit 9**.

35.     That evening the TOWN's police force appeared at Harbourside Place and informed HARBOURSIDE that scheduled live musical performances at the outdoor amphitheater would not be permitted under any circumstances. At 6:00pm, Captain Sam Miller of the TOWN's police force (Badge number 0191) appeared at the Harbourside Place outdoor amphitheater and met with HARBOURSIDE's Ryan Miller. Capt. Sam Miller informed HARBOURSIDE that performances would not be permitted under any circumstances. When HARBOURSIDE asked by what authority the TOWN was prohibiting performances from commencing, Capt. Sam Miller advised that he and the TOWN were enforcing §13-86 of the Town of Jupiter Code of Ordinances (the "Code"). Capt. Sam Miller provided HARBOURSIDE with a document entitled, "Code Citation Fine & Fee Schedule," which was highlighted to indicate the invocation of §13-86 of the Code that governed the operation of outdoor sound amplification devices. See Code Citation Fine & Fee Schedule attached as **Exhibit 10**.

36.     Section 13-86(a) of the TOWN's Code states:

*It is unlawful to use, operate or permit to be played, used, or operated any outdoor sound amplification machine* or device including but not limited to a radio receiving set, musical instrument, compact disk, tape, phonograph,

-16-

loudspeaker, sound amplifier or other machine or device for the production or reproducing of sound *between the hours of 11:00 p.m. and 7:00 a.m.*, except if approved as an outdoor venue with extended hours as provided for in subsection (b) below. All sounds emanating from an outdoor amplification machine or device in any sound zone or on the public right of way shall be limited in volume and tone so as not to exceed the regulations established herein.

(emphasis added).   Section 13-86 clearly did not prohibit (and implicitly authorized) HARBOURSIDE's scheduled use of its outdoor sound amplification system between 6:00 p.m. and 10:00 p.m.

37.   HARBOURSIDE had previously informed the TOWN that the performance would cease well before 11:00 p.m.   Capt. Sam Miller stated that he was making it "implicitly clear" that he (and the TOWN) were preventing the event from happening *under any circumstances* even though the scheduled performance at HARBOURSIDE had not even begun, and that he was acting at the direction of the Town Manager and Town Attorney.   Under threat of police action, and as required to comply with the direction of a law enforcement officer, HARBOURSIDE cancelled the live musical performances scheduled for Friday and Saturday nights.

38.   Later on Friday evening, HARBOURSIDE was also directed to stop playing the canned background music that plays through the Harbourside Place outdoor amphitheater.   The police visited Harbourside Place again the following day, and again directed HARBOURSIDE to cease playing the canned background music.   On both occasions, the TOWN failed to cite any authority for shutting down the canned background music or otherwise explain its actions. Again, under threat of police action, and as required to comply with the direction of a law enforcement officer, HARBOURSIDE complied and turned off the canned background music.

☰ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

39.     When HARBOURSIDE inquired about the canned background music being played through other sources at Harbourside Place, including in the porte cochere of the Wyndham Grand Jupiter at Harbourside Place, the TOWN explained that the prohibition only applied to HARBOURSIDE's outdoor amphitheater.  Throughout 2015 and consistent with the development approvals for Harbourside Place, HARBOURSIDE has played canned background music through its outdoor amphitheater from 10:00 a.m. to 10:00 p.m., without incident, or TOWN objection or interference.

40.     On January 12, 2016, HARBOURSIDE sent a letter to the TOWN inquiring whether the TOWN intended to allow (or prohibit under threat of police force) the regularly-scheduled live musical performances HARBOURSIDE intended to present to the public during the upcoming weekend of January 15 through 17, 2016.  See 2016-01-12 Letter to Thomas Baird attached as **Exhibit 11**.  HARBOURSIDE was contractually obligated to terminate its contracts for such musical performances by January 13, 2016 or risk economic loss.

41.     On January 13, 2016, the TOWN responded to HARBOURSIDE's inquiry by indicating that "the Town's position with respect to live musical performances and canned music has not changed."  See 2016-01-12 Letter to Anthony Carriuolo attached as **Exhibit 12**.

42.     Based on the TOWN's response to HARBOURSIDE's inquiry, HARBOURSIDE again was forced to cancel the regularly-scheduled live musical performances and canned music for the weekend of January 15 through 17, 2016.

43.     Despite HARBOURSIDE's good faith efforts to avoid emergency motion practice, the TOWN continues to hold the threat of forcible police action over HARBOURSIDE's head.

≡ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

44.    The TOWN's threatened actions have a chilling effect on HARBOURSIDE's provision of free public benefits to the public, and also endanger the public's right to peaceably assemble.

45.    HARBOURSIDE incorporates by reference all other allegations in its complaint (and its exhibits) as if fully stated herein to the extent they bear on this emergency request for relief.

## **LEGAL ARGUMENT**

46.    The TOWN continues to reveal an intention to continue to interfere with the regular business activities of HARBOURSIDE through the unbridled imposition of several terms and conditions limiting HARBOURSIDE's use of its outdoor amphitheater. In fact the TOWN most recently has deepened its interference with HARBOURSIDE's operations, by purporting to dictate the hours during any given day when HARBOURSIDE may use its outdoor amphitheater, dictating the days of the week on which HARBOURSIDE may use its outdoor amphitheater, and dictating the types of musical instruments, sound emitters and genre of music HARBOURSIDE may present at its outdoor amphitheater.

47.    Aside from the legal issues forming the current dispute between HARBOURSIDE and the TOWN, HARBOURSIDE should not be exposed to the irreparable harm which will result from the Town's threats (or acts in furtherance of those threats) *to use its police force* to adjudicate the legal rights and claims presented to the Court for orderly adjudication. Moreover, Harbourside should not be exposed to the irreparable harm which will result from the Town's threats (or acts in furtherance of those threats) *to issue notices of violation* to Harbourside for the regularly-scheduled events planned this weekend and into the near future (which events

≡ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
t: 561-241-9500  f: 561-998-0028

Harbourside has presented to the public on a regular basis over the past 12 months without issue).

48.     The purpose of a temporary injunction is to preserve the status quo until full relief can be granted following a final hearing.  *Sacred Family Investments, Inc. v. Doral Supermarket, Inc.*, 20 So. 3d 412 (Fla. 3d DCA 2009); *International Village Ass'n, Inc. v. Schaaffee*, 786 So. 2d 656, 658 (Fla. 4th DCA 2001); *Camji v. Helmsley*, 602 So. 2d 617, 618 (Fla. 3d DCA 1992)("The very purpose of a temporary injunction is to preserve the status quo in order to prevent irreparable harm from occurring before a dispute is resolved.").  Temporary injunctions are entered so that a party will not be forced to seek redress for damages after they have already occurred.  *See Lewis v. Peters*, 66 So. 2d 489 (Fla. 1953).

49.     In this scenario, the status quo to be preserved and enforced is Harbourside's continuing presentation of regularly-scheduled public events at its outdoor amphitheater (as it has done for over a year), free of the threat of physical shutdowns by the Town' police force, or the issuance of notices of violation.

50.     In order for the Court to enter a temporary injunction, a party is required to show that:   (1) irreparable harm will result if the temporary injunction is not entered; (2) an adequate remedy at law is unavailable; (3) there is a substantial likelihood of success on the merits; and (4) entry of the temporary injunction will serve the public interest.  *Sacred Family Investments, Inc. v. Doral Supermarket, Inc.*, 20 So. 3d at 415 (internal citations omitted).

51.     HARBOURSIDE meets each of the requirements for the issuance of a temporary injunction.

☰ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

A.      **Irreparable Harm is Occurring.**

52.     This Motion alleges irreparable harm that merits expedited consideration by this Court, as well as a temporary injunction.  It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction.  *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983) certified question answered, 450 So. 2d 224 (Fla. 1984).  "Music, as a form of expression and communication, is protected under the First Amendment."  *Ward v. Rock Against Racism*, 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).  Music is created by the playing of musical instruments. This protection extends to amplified music. *See Saia v. New York*, 334 U.S. 558, 68 S. Ct. 1148, 92 L.Ed. 1574 (1948) (holding use of sound amplification equipment within reasonable limits is aspect of free speech protected by First Amendment).

53.     The TOWN has and will continue to attempt to frame its actions as lawful exercise of the TOWN's land use and zoning authority to protect the health, safety and welfare of the community, otherwise known as police power. To be clear, the TOWN authorized the development, construction and operation of Harbourside Place's outdoor amphitheater pursuant to the Harbourside PUD and Site Plan.  The TOWN has issued certificates of occupancy for all of Harbourside Place, including for the outdoor amphitheater.  HARBOURSIDE has consistently operated the Harbourside Place outdoor amphitheater in accordance with the TOWN's exterior sound standards set forth in Chapter 13 of the Code.

54.     Instead of being a lawful exercise of police power, the TOWN is attempting to control the content of expression made on HARBOURSIDE's property.  The TOWN's actions,

-21-

including those set forth herein, constitute prior restraints on expression protected by the First Amendment to the United States Constitution.

55.      Prior restraints on speech are the most serious and the least tolerable infringement on First Amendment rights. *Vrasic v. Leibel*, 106 So. 3d 485, 486-87 (Fla. 4th DCA 2013), citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).   Any system of prior restraint comes to the Court bearing a heavy presumption against its constitutional validity. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975)  The settled rule is that a system of prior restraint avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.  Id. at 559.  No such procedural safeguards exist here, as the Town Manager and Town Attorney have directed the shutting down of musical performances at Harbourside Place pursuant cited authority which clearly does not apply.

56.      Furthermore, in cases involving unique property, such as real estate, the task of showing irreparable harm is simplified; irreparable harm is easily shown because real estate is unique.  *Reserve at Westfield* Homeowners *v. Dixon*, 948 So. 2d 65 (Fla. 5th DCA 2007).  Conduct which results in the destruction, or serious interference with the use, of property has also been held to constitute an irreparable injury, justifying injunctive relief.  *Eckerd Corp. v. 17070 Collins Ave. Shopping*, 563 So. 2d 103, 105 (Fla. 3d DCA 1990).  *See also Lingelbach's Bavarian Restaurants, Inc. v. Del Bello*, 467 So. 2d 476 (Fla. 2d DCA 1985) (finding that injunctive relief is appropriate where the action revolves around the ownership, possession or use of a unique thing like real property).

≡ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
t: 561-241-9500   f: 561-998-0028

57.      Moreover, each parcel of real property is deemed to be unique as a matter of law, which renders any monetary damages insufficient.  *Bilow v. Benoit*, 519 So. 2d 1114, 1117 (Fla. 1st DCA 1988); *Henry v. Ecker*, 415 So. 2d 137 (Fla. 5th DCA 1982).

58.      Florida courts have issued injunctions to preserve the status quo, for instance, to halt construction where written agreements were not complied with and the aggrieved party was in imminent jeopardy of having the offending construction continue.  *See Sacred Family Investments, Inc. v. Doral Supermarket, Inc.*, 20 So. 3d 412 (Fla. 3d DCA 2009) (Court enjoined landlord's construction of structure in parking lot as contrary to lease term requiring tenant approval); *Gulf Bay Land Investments, Inc. v. Trecker*, 955 So. 2d 1157 (Fla. 2d DCA 2007) (Court enjoined construction of condominium after underground and ground level work had commenced because it did not comply with previous declaration).

59.      In this instance, the TOWN continues to threaten HARBOURSIDE with physical disruptions of its regularly-scheduled public events, and seeks to self-adjudicate Harbourside's rights. That task is now properly before this Court in this action. Until that proper judicial adjudication of rights is rendered, however, HARBOURSIDE should be protected from physical disruptions by the Town's police force as these events admittedly do not pose genuine health or safety risks to the public; instead, the public benefits from wholesome events presented free by HARBOURSIDE. HARBOURSIDE for over a year has presented free, public events at its outdoor amphitheater. The TOWN has continuously monitored HARBOURSIDE's sound emissions at the property lines of residential properties located over 500 feet to the west from Harbourside across the Intracoastal Waterway and just north of the Indiantown Road Bridge.

-23-

Harbourside should be permitted to continue to present regularly-scheduled events under these conditions, free from physical disturbances by the Town including its police force.

### B.     HARBOURSIDE Has No Adequate Remedy at Law.

60.     Given the TOWN's ability to disrupt HARBOURSIDE's operations, and to coerce HARBOURSIDE with threats of continued police enforcement of unlawful standards of conduct as well as civil citations and fines, HARBOURSIDE has no adequate remedy at law to provide compensation for the TOWN's past wrongs or to make HARBOURSIDE "whole" as the TOWN's unlawful actions continue.   This action present the classic injunctive setting in which equitable relief is required to stem the flow of losses and other harms that otherwise will continue unabated. Awards of compensation in favor of HARBOURSIDE and against the TOWN might ameliorate some of the harm being caused by the TOWN, but will never fully compensate HARBOURSIDE.

### C.     HARBOURSIDE is Likely to Succeed on The Merits.

61.     HARBOURSIDE's likelihood of success on the merits of its claims is demonstrated by the TOWN's admitted imposition against HARBOURSIDE of exterior sound standards that are more stringent than those prescribed legislatively by the TOWN through its Exterior Sound Ordinance. The sound-related terms, conditions and  prohibitions imposed by the TOWN against HARBOURSIDE through its "special event permits", as compared to the straightforward terms and conditions expressed by the TOWN through its Exterior Sound Ordinance, make abundantly clear that the conditions imposed by the TOWN via special event permit are not founded on, but are entirely inconsistent with and more stringent than, any of the provisions of the Exterior Sound Ordinance.   No legal justification exists for the TOWN's

-24-

arbitrary and discriminatory treatment of HARBOURSIDE regarding the regular use of its outdoor venue and the standards by which HARBOURSIDE should be judged.

62.     The TOWN's ongoing actions also trample HARBOURSIDE's established rights to present free, public events at its outdoor amphitheater without municipal interference.

63.     The TOWN's imposition of conditions for the operation and use of HARBOURSIDE's outdoor venue, which are contrary to the TOWN's Exterior Sound Ordinance, is *prima facie* unlawful, void and *ultra vires. See e.g. Town of Lauderdale-By-The-Sea v. Meretsky,* 773 So. 2d 1245 (Fla. 4th DCA 2001).

64.     HARBOURSIDE has invested many millions of dollars, and has attracted many third party tenants which themselves have invested millions of dollars in the aggregate, based on the established concept that HARBOURSIDE would present regularly-scheduled free public events utilizing its outdoor amphitheater as an attraction for consumers. That outdoor venue came to fruition, and became a centerpiece for Harbourside Place, because of HARBOURSIDE's multi-million dollar investment in Harbourside Place including its outdoor amphitheater, all of which the TOWN contemplated and directed under the Development Orders.

65.     Given HARBOURSIDE's investment of millions of dollars reliant upon the development and operation of Harbourside Place as envisioned in the Development Orders, and including the positions undertaken by the TOWN concerning the desirability of erecting and operating an outdoor venue at Harbourside Place (at HARBOURSIDE's expense) to create the main entertainment component of the TOWN's Riverwalk, the TOWN is equitably estopped from denying HARBOURSIDE's vested rights to operate its outdoor venue pursuant to the Exterior Sound Ordinance, and is further estopped from interfering with HARBOURSIDE's

BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
t: 561-241-9500   f: 561-998-0028

regularly-scheduled free outdoor events by demanding that a "special event permit" be secured every weekend and by imposing standards (or prohibitions) that are inconsistent with HARBOURSIDE's rights under the Exterior Sound Ordinance or the Development Orders. *See e.g. Hollywood Beach Hotel Co. v. City of Hollywood,* 329 So. 2d 10 (Fla. 1976); *Sun Cruz Casinos, L.L.C. v. City of Hollywood, Florida*, 844 So. 2d 681 (Fla. 4th DCA 2003); *City of Fort Pierce v. Davis,* 400 So. 2d 1242 (Fla. 4th DCA 1981).

### D.    Balance of Harm Favors HARBOURSIDE

66.    In comparison to the irreparable harm to be suffered by HARBOURSIDE, the TOWN will not suffer any harm if enjoined - the TOWN simply will be required to permit regularly-scheduled events to continue under the same sound regulation measurements the Town has applied to Harbourside for over a year. The requested temporary injunction seeks to preserve the status quo until this case is decided on the merits of HARBOURSIDE's claims for declaratory and supplemental relief including permanent injunctive relief.

67.    The harm to HARBOURSIDE, to Harbourside's retail tenants, and to the Jupiter public at large who frequent and enjoy events at Harbourside, will be substantial and irreparable. The harm to the TOWN will be limited or non-existent as the TOWN simply will be required to refrain from lashing out with its police force against Harbourside, and prohibiting regularly-scheduled events to proceed for the benefit of retail tenants and the public, while this Court oversees and resolves this dispute.

68.    Accordingly, the balancing test between the harms suffered strongly favors HARBOURSIDE, its retail tenants and the public.

BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

E.     **The Temporary Injunction Will Serve The Public Interest.**

69.     Public policy militates in favor of granting the relief sought here, and certainly will not be disserved if the relief sought is granted.  In fact, the public interest will be genuinely served by an injunction that simply requires the TOWN to permit Harbourside to continue to present regularly-scheduled events in the same manner in which Harbourside has presented those events free to the public for over a year. Public policy also favors restraining government actions when they are acting *ultra vires* with respect to their established ordinances and constitutional authorities. Certainly, this jurisdiction has an interest in promoting the government's fair and just enforcement of existing laws affecting the development and use of valuable real estate, particularly considering real estate is one of the primary economic drivers of South Florida. Public policy concerns weigh heavily in favor of HARBOURSIDE and the success of Harbourside Place as the main entertainment component of Jupiter's Riverwalk.

70.     HARBOURSIDE should not be required to post any bond under Fla. R. Civ. P. 1.610, given that the relief sought (enjoining arbitrary governmental conduct; requiring government to enforce existing laws fairly and not in a discriminatory manner) offers HARBOURSIDE simply the freedom to be governed fairly by local government. Freedom from arbitrary governmental action is not solely of benefit to HARBOURSIDE but to the public at large. The Town will not suffer any palpable harm if it is simply prohibited from exacting its will through physical force upon Harbourside, its retail tenants and the public (which the Town is supposed to serve).

BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

## CONCLUSION

71.     HARBOURSIDE respectfully requests entry of a temporary injunction on an emergency basis requiring the TOWN to monitor HARBOURSIDE's compliance with the TOWN's Exterior Sound Ordinance by measuring exterior sounds created by HARBOURSIDE at the Water's Edge residential property line (as it has done throughout 2015),  and prohibiting the TOWN from interfering with HARBOURSIDE's regularly-scheduled free public programming through physical force or threats, or through the threat or actual issuance of punitive notices of violation, until this case is fully decided on the merits, and for such other and additional relief that the Court deems just and proper.

Respectfully submitted,

BERGER SINGERMAN LLP
One Town Center Road, Suite 301
Boca Raton, FL 33486
Telephone:  561-241-9500
Facsimile:   561-998-0028


By: /s/ Anthony J. Carriuolo_____
        Mitchell W. Berger
        Florida Bar No. 311340
        mberger@bergersingerman.com
        Anthony J. Carriuolo
        Florida Bar No. 434541
        acarriuolo@bergersingerman.com
        *Attorneys for Plaintiff*

7175017-1

-28-

≡ BERGER SINGERMAN

One Town Center Road  Suite 301  Boca Raton, FL 33486
*t:* 561-241-9500  *f:* 561-998-0028

## Declaration Under 28 U.S.C. § 1746

I declare under penalty of perjury that I have read the Plaintiff's Second Amended and

Supplemented Motion for Temporary Injunction, and affirm that the facts stated in it are true.


HARBOURSIDE PLACE, LLC,
a Florida limited liability company

By: _____
    RYAN MILLER

Its: _Director of Development._