UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 16-CV-80170-KAM
Marra/Matthewman

HARBOURSIDE PLACE, LLC, a
Florida limited liability company,

      Plaintiff,

v.

TOWN OF JUPITER, FLORIDA, a
Florida municipal corporation,
JUPITER COMMUNITY
REDEVELOPMENT AGENCY, a
dependent special district of the
Town of Jupiter, Florida,

      Defendants.

_____/

**SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR RELIEF UNDER 42 U.S.C. § 1983, FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES[1]**

Plaintiff, HARBOURSIDE PLACE, LLC ("HARBOURSIDE"), sues Defendants, TOWN OF JUPITER, FLORIDA ("TOWN") and JUPITER COMMUNITY REDEVELOPMENT AGENCY (the "CRA"), and alleges:

**THE PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff, HARBOURSIDE is a Florida limited liability company.

2.      The TOWN is a Florida municipal corporation.  The TOWN is located in Palm Beach County, Florida.  The TOWN is governed by a body politic known as the Town Council.

---

[1]    This pleading comports with the parameters permitted by the Court's Order [DE 66] dated July 27, 2016 (docketed July 28, 2016) regarding Plaintiff's motion [DE 57] for leave to supplement its pleadings.

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

3.      The CRA is a dependent special district of the TOWN authorized by Chapter 163, Part III, Florida Statutes.  The CRA is governed by the CRA Commission, which is a public body corporate and politic, and which is comprised of the members of the Town Council.

4.      This complaint alleges causes of action pursuant to 42 U.S.C. §1983 to enforce the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution, and to seek redress for the TOWN's continuing unconstitutional acts which continue to harm HARBOURSIDE; for declaratory and injunctive relief, and for damages.  This Court has jurisdiction over this cause and these parties pursuant to 28 U.S.C. §1331, 28 U.S.C. §1441 and 28 U.S.C. §2201.

5.      HARBOURSIDE owns and operates "Harbourside Place," which is located in the TOWN, along the Intracoastal Waterway just north of the Indiantown Road bridge.  The TOWN promotes "Harbourside Place" as its primary entertainment center along the TOWN's Riverwalk:

> "The Harbourside Place development, located north of the Indiantown Road bridge, has completed construction and celebrated its Grand Opening on December 4 - 6, 2014.  Harbourside Place was designed to become the main "entertainment" component of the Riverwalk. The 179 room Wyndham Grand Hotel, offices, retail, amphitheater, restaurants[,] public boat docks and public parking are now open." [http://www.jupiter.fl.us/index.aspx?nid=227]

6.      Harbourside Place [http://harboursideplace.com] comprises approximately 11 acres, and includes approximately 43,164 square feet of retail space leased to several tenants including Tommy Bahama, Chico's, White House/Black Market, Pink Princess, Francesca's, Venetian Nail Spa and Native Visions Gallery; eight restaurants (for example, The Woods Jupiter, Deep Blu Seafood Grille, Bravo! Cucina Italiana, Too Bizarre, Calaveras Cantina and Burger Fi) comprising approximately 31,415 square feet; a 179-room Four Star Wyndham Grand

-2-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

hotel and conference center, multi-level parking structures, approximately 62,405 square feet of office space and open public spaces including an outdoor amphitheater, a public marina and the TOWN's Riverwalk, creating a family-friendly, upscale environment for residents in or around the Town of Jupiter, and business or social visitors as well.

7.     The TOWN's Riverwalk is a 2.5-mile pedestrian walkway adjacent to the Intracoastal Waterway that provides access to residents and visitors to Harbourside Place as the TOWN's entertainment district.

8.     Harbourside Place was developed as an EB-5 regional center through which over 200 foreign investors contributed at least $500,000 each under EB-5 program requirements to assist in financing Harbourside Place's development.  The TOWN sent its Finance Director, Michael Villela, to China in Fall 2011 and Summer 2012 to market the vision of Harbourside.

9.     Venue is proper in this Court because: (a) the TOWN is located in Palm Beach County, Florida; (b) this complaint alleges causes of action based upon actions and events that have occurred, and that continue to occur, in Palm Beach County, Florida; and (c) the property and businesses that are the subject of the causes of actions set forth in this complaint are located and are being conducted in Palm Beach County, Florida.

10.     Harbourside Place is located along the Intracoastal Waterway, which separates it from the nearest residential neighborhood by approximately 600 feet.

11.     Harbourside Place is located in the *US-1 / Intracoastal Waterway Corridor* zoning district and is included in the *US 1/WCE Waterway Commercial & Entertainment* subdistrict, according to the TOWN's 2015 Zoning Map.  Harbourside Place includes an outdoor amphitheater and stage (the "Amphitheater") for musical performances, entertainment and other

-3-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | *f:* 561-998-0028 | WWW.BERGERSINGERMAN.COM

community events.  As it was conceived, the development of Harbourside Place contemplated regular events and musical performances at the Amphitheater that would drive support for the businesses located in Harbourside Place.

12.     Harbourside Place is across the intracoastal waterway from a residential community called Water's Edge Estates, which is zoned *R3 Residential, Limited Multi-Family* ("R3").  The Code describes the intent of R3 zoning as follows:

> The R-3 limited multifamily residential district is composed of certain higher density residential areas plus additional open area where it is likely and desirable to extend such type of development. Due to the higher than average concentrations of persons or vehicles, these districts are situated where they are well served by public and commercial services and have convenient access to thoroughfares and collector streets. Site area requirements are graduated to reflect the relative need for open space of the various types of buildings based on expected parking and population density.

§27-496(a), Code.  Notwithstanding this intent, Water's Edge Estates was developed as 20 lots for single family homes.  Fourteen of those 20 lots are located directly on the Intracoastal Waterway, and are referred to herein as "Water's Edge."   The distance between the Amphitheater and the individual lots in Water's Edge ranges between 630 ft. and 737 ft.

13.     The Intracoastal Waterway, which separates Harbourside Place and Water's Edge, is currently unregulated with respect to sound levels, except that vessel operators with internal combustion engines must use muffling devices to muffle noise from the exhaust in a reasonable manner.   The TOWN has no authority to regulate noise from such activities occurring on the Intracoastal Waterway between Harbourside Place and Water's Edge.  *See* *§327.65(2), Fla. Stat.*  Palm Beach County is given such authority by statute, but even the County's authority is limited to enacting an ordinance that makes the maximum sound level 90

≣ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

dB(A) at a distance of 50 feet from the vessel.  *See id*.  The County has not adopted such an ordinance.  As a result, sounds produced from motorized vessels may and frequently do impact Water's Edge at levels far above any sound level limitations in the TOWN's Code of Ordinances.

14.     Water's Edge is also close to the Florida East Coast Railways railroad line to the West.  As a result, sounds produced by trains on that railroad line also frequently exceed any sound level limitations in the TOWN's Code of Ordinances.

15.     The TOWN approved the development of Harbourside Place as a planned unit development or "PUD".  The Harbourside Planned Unit Development was first approved through the adoption of Ordinance 14-08 ("Ord. 14-08") on December 2, 2008.  The TOWN later adopted Ordinance 44-10 ("Ord. 44-10"), which amended Ord. 14-08, and Ordinance 1-13 ("Ord. 1-13"), which amended Ord. 14-08 and 44-10.  Collectively, Ord. 14-08, Ord. 44-10 and Ord. 1-13 are referred to herein as the "Harbourside PUD," and are attached hereto as **Composite Exhibit "1"**.

16.     The TOWN approved the Harbourside Place site plan through the adoption of Resolution 25-08 ("Res. 25-08").  The Harbourside Place site plan was subsequently amended through the adoption of Resolution 4-10 ("Res. 4-10"), Resolution 2-13 ("Res. 2-13") and Resolution 83-13.  Collectively, Res. 25-08, Res. 4-10, Res. 2-13 and Res. 83-13 are referred to herein as the "Site Plan," and are attached hereto as **Composite Exhibit "2"**.

17.     The Harbourside PUD and Site Plan, including each amendment thereto, were reviewed and approved by the Town Council at publicly noticed meetings.  Each time they were reviewed and approved, the public had a right to object.

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

18.     Under the Harbourside PUD and Site Plan, HARBOURSIDE was entitled to obtain certificates of occupancy for the developed areas on its property, upon demonstrating that the Amphitheater could be operated while complying with the TOWN's sound level regulations. The TOWN on October 1, 2014 issued permanent certificates of occupancy for Harbourside Place (attached hereto as **Composite Exhibit "3"**).

19.     On or about February 9, 2011, the CRA and Jupiter Waterways, LLC entered into an Economic Development Agreement (the "CRA Agreement"), a copy of which is attached hereto as **Exhibit "4"**.   HARBOURSIDE currently holds all rights and obligations under the Agreement that were previously held by Jupiter Waterways, LLC.

20.     During the Site Plan approval process, the Town Council directed HARBOURSIDE to construct the Amphitheater at which live music and other entertainment events would be regularly provided to the public for free, as part of the TOWN's desire to make HARBOURSIDE the main entertainment venue of the TOWN's Riverwalk.   These regular events and musical performances would be exempt from special permitting requirements under Chapter 27, Art. IV (the "Special Permitting Ordinance") of the TOWN's Code of Ordinances (the "Code"), but subject to Chapter 13, Art. IV (the "Noise Ordinance") of the Code.

21.     Consistent with the requirements of the Harbourside PUD and Site Plan, HARBOURSIDE in fact designed and constructed Harbourside Place at a cost of close to $200,000,000.00; the erection of the Amphitheater, and the purchase and installation of extensive sound amplification, attenuation and mitigation equipment and features for its regular use, cost Harbourside in excess of $1.5 million, exclusive of Harbourside's recurring cost of

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

operations including the events regularly presented at the Amphitheater. The Amphitheater is situated on an otherwise-developable, income producing portion of Harbourside Place.

22.     Since its opening to the public, HARBOURSIDE has presented free live music and other events at its Amphitheater, including weekend musical and holiday events. HARBOURSIDE has expended more than $700,000.00 to present those events to the public for free, as required by the Harbourside PUD and Site Plan. In addition, for a substantial period before and after opening to the public, and to date, HARBOURSIDE has invested in excess of $544,000.00 in sound amplification, attenuation and mitigation equipment and features, as well as physical improvements to the Amphitheater, at the direction of the TOWN and its sound consultant in an effort to satisfy the TOWN's appetite to impose more and more conditions and prior restraints on HARBOURSIDE's events at the Amphitheater.  HARBOURSIDE's expenditure of these funds provides a tangible public benefit at no cost to the TOWN or to its residents or visitors attending these events at Harbourside Place.

23.     Consistent with its opening to the public in 2014, HARBOURSIDE began leasing retail space at Harbourside Place to retailers and restaurants, including for instance, The Woods Jupiter, Deep Blu Seafood Grille, Bravo! Cucina Italiana, Calaveras Cantina, Burger Fi, Tommy Bahama and White House Black Market.  These and other tenants reasonably expected (as did HARBOURSIDE when investing millions of dollars into Harbourside Place) that HARBOURSIDE's outdoor venue would be regularly used to present public entertainment programs which would attract consumers to Harbourside Place generally, and to their restaurants and retail stores specifically.  Upon information and belief, HARBOURSIDE's tenants contemplated the free musical and other events scheduled for the Amphitheater, and the

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t*: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

benefits that their businesses would reap by the customer traffic created by those events, when deciding to open their businesses at HARBOURSIDE.

24.     HARBOURSIDE has complied with the requirements under the Harbourside PUD and Site Plan, particularly concerning its right as an "outdoor venue" under the Noise Ordinance. Among other things, HARBOURSIDE has presented reports and analyses establishing that HARBOURSIDE is able to hold events using exterior amplified sound equipment while maintaining compliance with the Noise Ordinance, which reports and analyses were accepted by the TOWN's technical staff.

**HARBOURSIDE PLACE WAS DEVELOPED WITH THE UNDERSTANDING THAT THE TOWN'S NOISE ORDINANCE WOULD PROVIDE THE SOUND STANDARDS APPLICABLE TO AMPLIFIED SOUND FROM ITS AMPHITHEATER**

25.     HARBOURSIDE developed the Amphitheater with the understanding that the regulations that would be applicable to the sound impacts of its operation are those set forth in the Noise Ordinance.

26.     The TOWN's Noise Ordinance prescribes the standards by which exterior sounds created by any property owner should be measured at a receiving property, and the calculations required to determine whether the exterior sounds at the receiving property exceed the prescribed sound ceilings.

27.     The Noise Ordinance sets standards for acceptable levels of exterior sounds created throughout various zones within the Town. These standards are expressed as allowable maximum decibel levels. Section 13-125(a) of the Noise Ordinance provides, in pertinent part:

≡ BERGER SINGERMAN
One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t*: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

Sec. 13-125. - Exterior sound standards.

(a)     The following sound standards, as expressed by the equivalent continuous sound level ($L_{eq}$), unless otherwise specifically indicated, shall apply to all property with a designated sound zone:

Table 1:
Allowable exterior sound levels per sound zone

| Zone | Daytime Sound Level (7:00 a.m. to 10:00 p.m.) | Nighttime Sound Level (10:00 p.m. to 7:00 a.m.) |
|---|---|---|
| Residential sound zone | $L_{eq}$ 55 dB(A) | $L_{eq}$ 45 dB(A) |
| Mixed use sound zone | $L_{eq}$ 60 dB(A) | $L_{eq}$ 50 dB(A) |
| Commercial sound zone | $L_{eq}$ 65 dB(A) | $L_{eq}$ 55 dB(A) |
| Industrial sound zone | $L_{eq}$ 70 dB(A) | $L_{eq}$ 60 dB(A) |

Table 2:
Allowable exterior sound levels per sound zone for outdoor venues approved with extended hours

| Zone | Daytime Sound Level (7:00 a.m. to 11:00 p.m.) | Transitional Nighttime Sound Level (11:00 p.m. to 12:00 a.m.) | Nighttime Sound Level (12:00 a.m. to 7:00 a.m.) |
|---|---|---|---|
| Residential sound zone | $L_{eq}$ 55 dB(A) | $L_{eq}$ 45 dB(A) | $L_{eq}$ 45 dB(A) |
| Mixed use sound zone | $L_{eq}$ 60 dB(A) | $L_{eq}$ 50 dB(A) | $L_{eq}$ 50 dB(A) |
| Commercial sound zone | $L_{eq}$ 65 dB(A) | $L_{eq}$ 55 dB(A) | $L_{eq}$ 50 dB(A) |
| Industrial sound zone | $L_{eq}$ 70 dB(A) | $L_{eq}$ 60 dB(A) | $L_{eq}$ 55 dB(A) |

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

28.     A violation of these exterior sound standards occurs if a sound emanating from a property within the Town, when measured on any other receiving property, persists over a specified period of time and at a specified level over and above the sound standards described in the Tables set forth in Section 13-125(a). More specifically, Section 13-125(b) of the Town's Code provides:

(b)     It is unlawful for any person at any location within the incorporated area of the Town to create any sound, or to allow the creation of any sound on property owned, leased, occupied or otherwise controlled by such person or business, which causes the sound level when measured on any other property, to exceed either of the following:

(1)     The sound standard plus $L_{eq}$ five dB(A) for no more than 7½ minutes in any 30-minute time period;

(2)     The sound standard plus $L_{eq}$ 10 dB(A) for no more than three minutes in any 30-minute time period;

(3)     The sound standard plus $L_{eq}$ 15 dB(A) for no more than one minute in any 30-minute time period; or

(4)     A maximum instantaneous sound level equal to the value of the sound standard plus $L_{eq}$ 20 dB(A) for any period of time (measured using A-weighted slow response).

29.     The TOWN's Noise Ordinance also requires "ambient sound levels" to be considered when evaluating if a violation of the sound ordinance has occurred:

(c) If the ambient sound level exceeds the standard as noted in Table 1 and 2 above, of the designated residential sound zones, the ambient sound level shall be considered the standard, but at no time shall a sound source exceeds the standard noted in section 13-125(b) at the property line.

30.     If the receiving property borders a sound zone that is different than the sound zone in which the receiving property lies, Code Section 13-125(d) provides:

the sound standard shall be the logarithmic dB(A) average of the standards from the respective sound zones. If an acoustically effective intervening wall or barrier exists

-10-

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

between the sound source of concern and the sound-sensitive receiver(s), the effects of the wall must be determined. Otherwise, the sound measurements may be conducted along the vertical plane of the property boundary or anywhere else on the receiving property.

## THE TOWN'S USE OF THE SPECIAL PERMITTING PROCESS AS A MEANS OF EXERTING CONTROL OVER MUSICAL PERFORMANCES AT THE AMPHITHEATER

31.     Specifically, under the Noise Ordinance, the sound standard applicable at the border of two different sound zones is the logarithmic average of the standards for each sound zone.  Harbourside Place is located in a commercial sound zone, which imposes a 60 dB(A) sound level standard, while Water's Edge is located in a residential sound zone, which imposes a 55 dB(A) sound level standard.  The logarithmic average of those two sound level standards is 58.2 dB(A), which is what should have been applied to musical performances and events at the Amphitheater under the Noise Ordinance.

32.     The TOWN's imposition of a more stringent standard through the Special Event Permits was another means by which the TOWN attempted to control the content of musical performances at Harbourside Place.  Music contains peak sounds that cause the dB(A) of a musical performance to be higher than the baseline sound levels of the performance.  The lower the dB(A) sound level standard over a three minute period, the greater the likelihood that certain peak sounds will cause the musical performance to exceed the standard.  Musical genres like rap, hip-hop, heavy metal and rock contain greater contrast between peak sounds and baseline than other genres of music.

33.     Condition No. 22 of the Harbourside PUD required HARBOURSIDE to "submit a special event and amphitheater events program detailing the number and types of routine

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

events that will not require an individual special event permit ….."  The intent of this condition was to allow the TOWN the opportunity to plan for the public safety impacts of the programmed events, such as adequate police presence for crowd control during larger events.

34.     The "Harbourside Events Programming Schedule, dated 09/03/10, revised on 01/29/13, received and dated by the Department of Planning and Zoning on 01/31/13" was incorporated into the Harbourside PUD, and subsequently amended in 2014 (as amended, the "Approved Event Program").   The Approved Event Program, which is attached hereto as **Composite Exhibit "5,"** became the schedule of events for calendar year 2015.

35.     Pursuant to Condition 22 of the Harbourside PUD, HARBOURSIDE was not required to go through the special permitting process under the TOWN's Code for any of the regularly-scheduled events at the Amphitheater on the Approved Event Program.

36.     The Special Permitting Ordinance sets forth the special permitting process which, pursuant to the Harbourside PUD and Site Plan, applied only to certain irregular events planned at Harbourside Place, such as public events involving road closures and other traffic concerns, anticipation of an extraordinarily high number of attendees (such as events celebrating St. Patrick's Day, Christmas Tree lighting, annual Boat Parade, Holiday Choir Sing-off, Memorial Day, July 4th and New Years' Eve) and heightened safety concerns. Usually these special permitting situations would require additional police or paramedic staffing because of the expected increase in attendees as compared to regular events at Harbourside Place.

37.     The TOWN was not empowered by the Harbourside PUD or Site Plan to dictate or restrain the content of performances occurring at the Amphitheater, including the use of

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t*: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

instruments and singing, the types of musical instruments that could be used by artistic performers, or the types of music that could be performed.

38.     In an effort to ensure Noise Ordinance compliance and to cooperatively work through issues associated with sound amplification, attenuation and mitigation at the Amphitheater, the TOWN and HARBOURSIDE agreed to use the special permitting process set forth in the Special Permitting Ordinance underlined temporarily even for regularly-scheduled events on the Approved Event Program.

39.     Throughout 2015, as it became apparent to HARBOURSIDE that the TOWN was using the special permitting process to control the content of musical performances at the Amphitheater and impose more restrictive sound requirements than were imposed on any other property in Jupiter, HARBOURSIDE demanded that the TOWN stop using the special permitting process for events on the Approved Event Program.  The TOWN refused and took the position that the special permitting process was required because the TOWN had not certified the Amphitheater as an outdoor venue.

40.     The TOWN's special permitting process required HARBOURSIDE to pay permitting fees ranging from $100.00 to $400.00 per event.  The TOWN also mandated that HARBOURSIDE hire the TOWN's police personnel for event security and traffic control, at exorbitant cost to HARBOURSIDE.

41.     The TOWN has required Special Event Permits for every event held at the Amphitheater since opening.  The Special Permitting Ordinance required HARBOURSIDE to submit a Statement of Use for each performance at the Amphitheater, and §27-293(b) gave "the

-13-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

Town Manager, the Town Manager's designee, the Planning and Zoning Commission or the Town Council, as appropriate" authority to condition permit approval.

42.     With regard to noise, the Special Permitting Ordinance states: "Noise limitations. Noise limitations more restrictive than the present code may be imposed for the benefit of surrounding uses." §27-293(b)(2), Code.

43.     After the TOWN and HARBOURSIDE began using the special permitting process, the TOWN began exercising control over the content of musical performances at the Amphitheater.  On several different occasions when the special permitting process was being implemented at the beginning of 2015, the Town Manager, Andrew Lukasik (the "Town Manager"), the Director of Planning and Zoning, John Sickler (the "Director"), and the Assistant Director of Planning and Zoning, Stephanie Thoburn (the "Assistant Director"), each acting under color of law, warned HARBOURSIDE's Nicholas Mastroianni III ("Mastroianni") that the TOWN did not want musical performances at the Amphitheater to include rap, hip-hop, heavy metal and similar kinds of music.

44.     The Town Manager, Director and Assistant Director intended and Mastroianni understood these warnings as meaning that the TOWN would cause problems for HARBOURSIDE if the types of music performed at the Amphitheater tended toward types the TOWN did not like.

45.     As a result of the TOWN's warnings regarding the types of music that it preferred, Mastroianni caused most of the Statements of Use submitted by HARBOURSIDE in pursuit of Special Event Permits to include a statement that the particular event would not

-14-

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

include rap, hip-hop, heavy metal, rock, etc., unless the content of the performance was otherwise clear.

46.      Each of the Special Event Permits issued by the TOWN incorporated HARBOURSIDE's Statement of Use and conditioned issuance of the Special Event Permit on consistency of the musical performance with the Statement of Use:

> Except as provided by these conditions, the events shall be consistent with the representations made by the applicant as a part of its Application to the Department of Planning and Zoning as contained in the Department's application file:
> a)      Application
> b)      Statement of Use
> c)      Site Plan

As a result, the Special Event Permits facially prohibited musical performances inconsistent with the applicable Statement of Use, including a prohibition of performances of rap, hip-hop, heavy metal, rock, etc.

47.      On January 28, 2015, the TOWN issued a Special Event Permit to HARBOURSIDE for a "Free Concert" at the Amphitheater to be held on January 29, 2015 (the "1-29-2015 Special Event Permit").

(a)      Condition #9 of the 1-29-2015 Special Event Permit stated that "[t]he decibel levels from the amplified music at the amphitheater shall not exceed $55L_{eq}$ dB(A) with a three minute interval at the property line of any surrounding residentially zoned property."  This sound level limitation imposed through the Special Event Permit was more restrictive than the applicable standard under the Noise Ordinance.

(b)      Condition #16 of the 1-29-2015 Special Event Permit stated: "Town employees must have access on demand to the limiter when any sound is being amplified."

-15-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(c)     Condition #17 of the 1-29-2015 Special Event Permit stated that "[a] report from the sound limiter shall be provided after the event upon the request of Town staff and a copy shall be provided to Peter Begovich by noon on Monday following the event."

48.     The requirements of Condition #16 and #17 of the 1-29-2015 Special Event Permit were included in nearly all Special Event Permits issued by the TOWN. These conditions required HARBOURSIDE to provide its private business records to the TOWN on demand and without probable cause or a warrant.

49.     On February 11, 2015, the TOWN issued a Notice of Violation (the "2-11-2015 NOV") alleging violations by HARBOURSIDE of Conditions #9, #12 & #17 of the 1-29-2015 Special Event Permit. The 2-11-2015 NOV gave HARBOURSIDE notice of a hearing concerning those alleged violations before the TOWN's Special Magistrate on March 11, 2015, and provided notice to HARBOURSIDE that the TOWN considered these violations irreparable and irreversible.

50.     HARBOURSIDE did not violate the Noise Ordinance during the January 29, 2015 "Free Concert" at the Amphitheater.

51.     The TOWN also issued a Special Event Permit to HARBOURSIDE for a "Live Music on Sunday" at the Amphitheater to be held on February 15, 2015 (the "2-15-2015 Special Event Permit").

(a)     Condition #12 of the 2-15-2015 Special Event Permit stated that "[t]he use of bass, drums and percussion instruments shall not be permitted."

(b)     Condition #15 of the 2-15-2015 Special Event Permit again required HARBOURSIDE to provide reports from its sound limiter.

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

52.     On February 19, 2015, the TOWN issued a Notice of Violation (the "2-19-15 NOV") claiming that HARBOURSIDE failed to comply with Conditions #12 and #15 of the 2-15-2015 Special Event Permit.. The TOWN also scheduled the 2-19-15 NOV for a hearing on March 11, 2015.

53.     During the March 11, 2015 hearing, on behalf of the TOWN, the Town Attorney opined that the alleged violations were irreparable and irreversible:

> As to the irreversible issue that has been raised, it's clearly a case of irreversible violation under Chapter 162. It's like cutting down mangroves. Once you cut the mangroves down, they're not there anymore. You can't reverse chopping down mangroves.

> Similarly, once the decibel level has been exceeded, you can't reverse that. It's been exceeded. Once the steerable line speakers have not been used, once Harbourside chose not to use those steerable line speakers, despite knowing of the condition of the permit, you can't reverse it now.

54.     The characterization of the alleged violations as irreparable and irreversible was important to the TOWN because such a finding by the Special Magistrate would allow the Special Magistrate to impose a fine of up to $15,000 for a single violation, which was far greater than $1,000.00 per day for a first violation as provided under the Code.  This extreme fine was important to the TOWN to impose on HARBOURSIDE the TOWN's will, which became important as the TOWN began exercising greater and greater control over the content of musical performances at the Amphitheater.

55.     During the March 11, 2015 hearing, the TOWN admitted that none of the alleged violations of Condition #9 of the 1-29-2015 Special Event Permit would have constituted a violation of any provision of the Noise Ordinance.

-17-

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

56.     Because the TOWN gave notice to HARBOURSIDE that it considered the violations irreparable and irreversible, the Special Magistrate imposed a fine of:

      (a)     $7,500 for the violations set forth in the 2-11-2015 NOV; and

      (b)     $7,500 for the violations set forth in the 2-19-2015 NOV.

57.     Condition #12 of the 2-15-2015 Special Event Permit became a regular condition of many of the Special Event Permits issued by the TOWN in 2015.  The prohibition of specific musical instruments or classes of musical instruments became another means by which the TOWN exercised control over the content of HARBOURSIDE's musical performances.

58.     Musical instruments are to musical expression as words are to poetry, prose and political debate.  By eliminating specific musical instruments or classes of musical instruments, the TOWN effectively eliminated entire genres and styles of musical expression.  For example, the TOWN's prohibition on the playing of drums and other percussion instruments eliminates the vast majority of African music styles.

59.     The TOWN again tightened its control over the content of musical performances at the Amphitheater during the summer of 2015 when the TOWN threatened HARBOURSIDE with the blanket cancellation of regularly-scheduled musical performances on Sundays.  The Town Manager advised Mastroianni that going forward the TOWN was going to stop issuing Special Event Permits for musical performances on Sundays.  At that time, Harbourside's regular Sunday programming consisted of two performances: (1) a 10 a.m. - 2 p.m. acoustic performance at the Farmer's Market; and (2) a 3 p.m. – 7 p.m. afternoon performance which ranged in band size, genre, instruments etc.

-18-

≜ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

60.     When HARBOURSIDE objected to the elimination of Sunday performances, the Town Manager offered that the TOWN would be willing to allow Sunday musical performances to continue as long as the afternoon performance was limited to "island/beach type" music and not rock and roll.

61.     As a result of the TOWN's threat, HARBOURSIDE changed the Sunday afternoon performances to "island/beach type" music and not rock and roll.

62.     Despite HARBOURSIDE's changes to the music programming, several of the TOWN's elected officials and high-ranking members of staff that visited Harbourside Place throughout 2015 expressed to Mastroianni that the music being played was not what HARBOURSIDE's customers wanted to hear. Given the TOWN's past actions, Mastroianni took these admonitions as yet another threat to regulate content.

63.     On November 8, 2015 and November 15, 2015, during *Island Sundayz* (the Sunday afternoon performance formerly known as Live Music on Sunday) the TOWN received complaints from residents at Water's Edge of drums being played at the Amphitheater. The Special Event Permits for these performances stated: "No drums, bass, or percussion instruments shall be permitted."

64.     On November 20, 2015, the TOWN issued Notices of Violation of Condition #13 ("No drums, bass, or percussion instruments shall be permitted") of the Special Event Permits for *Island Sundayz* on November 8 and 15 (the "11-20-15 NOVs"). Subsequently, on December 9, 2015, the TOWN's Special Magistrate issued two Orders Not to Repeat Violation and to Assess Fine and Costs for the 11-20-15 NOVs, each of which imposed a fine of

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

$10,000.00 on HARBOURSIDE merely because drums were used during a musical performance.

65.     Harbourside, reluctantly, has paid all of the fines and costs awarded by the Town's Special Magistrate in order to avoid the imposition of municipal liens on its property.

66.     In addition to the enforcement of Special Event Permits conditions prohibiting specific musical instruments, for the first time on November 15, 2015, and contrary to past approvals, the TOWN prohibited HARBOURSIDE from including 'live music' altogether during its regularly-scheduled "Farmer's Market" on Sunday, and limited any performances Sunday to four hours (inclusive of breaks). The TOWN has imposed this limitation on every Sunday since.

67.     Notwithstanding HARBOURSIDE's timely notification of its upcoming musical performances at the Amphitheater, the TOWN has consistently issued Special Event Permits for such performances only days before each performance is to take place, and has regularly restricted the content of the music (or the use of certain musical instruments). The TOWN's issuance of Special Event Permits for routinely programmed events, sometimes as late as two hours before the event at Harbourside Place is scheduled to begin, has effectively precluded HARBOURSIDE's meaningful objection and review of the conditions imposed by the TOWN for the upcoming events.

68.     Even though the Harbourside PUD and Site Plan contemplated regularly scheduled events at the Amphitheater as set forth in the Approved Event Program, on November 20, 2015, the TOWN issued a notice (attached hereto as **Exhibit "6"**) denying approval of Harbourside's regularly-scheduled event *Island Sundayz* (FKA Live Music on Sunday) altogether.

-20-

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

69.     Over the course of 2015 and up to the present date, HARBOURSIDE has repeatedly expressed to the TOWN that the special permitting process was no longer necessary and should be discontinued for regularly-scheduled events given that it was a voluntary process. The TOWN has insisted that HARBOURSIDE use the special permitting process because the Amphitheater had not been "certified" by the TOWN as an outdoor venue.   Neither the Harbourside PUD nor the Site Plan required the Amphitheater to be "certified" as an outdoor venue.

70.     HARBOURSIDE has fully satisfied each requirement delineated in the Harbourside PUD and Site Plan. Specifically:

(a)     Condition 7 of Res. 83-13 prohibits HARBOURSIDE from charging a parking fee to vehicles parking in the garage at Harbourside Place for the first 2 hours, unless modified by the Town Council.   HARBOURSIDE has never charged a parking fee to any vehicles for the first 2 hours.

(b)     Condition 10 of Res. 2-13:

(i)     requires HARBOURSIDE to submit applications for Special Event Permits to the TOWN 60 days prior to the scheduled event – This condition applies to events not referenced on the Approved Event Program, and HARBOURSIDE has complied with this requirement;

(ii)     requires that events proposing amplified sound outside the Amphitheater, hotel decks on Buildings 1 and 2, and event deck on Building 3B obtain a Special Event Permit – the TOWN and HARBOURSIDE agreed to a modified procedure applicable to

-21-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

these types of events, which provides that HARBOURSIDE need not apply for Special Event Permits if:

> (1)  the number of event participants does not exceed the number permitted by law for those locations; and
>
> (2)  the event complies with the protocols for amplified music for the particular location that require HARBOURSIDE to self-monitor audio to ensure that levels do not exceed $L_{eq}$ 75 dB(A) at the measuring point on the Harbourside Place.

71.     Condition 10 of Res. 2-13 also requires HARBOURSIDE coordinate with the CRA and TOWN's Police Department annually regarding the Approved Event Program for the upcoming year.  This coordination is supposed to occur 60 days prior to the upcoming calendar year.  The purpose of coordinating with the CRA and Police Department is to address and mitigate public safety and traffic concerns for upcoming shows based upon the experiences of the previous calendar year.  The TOWN's requirement that HARBOURSIDE use the special permitting process throughout all of 2015 required ongoing coordination between the CRA, the Police Department and the TOWN, so the intent behind Condition #10 of Res. 2-13 was addressed without formal submission to the TOWN of proposed Approved Event Program for 2016.

72.     Despite over-regulation by the TOWN, HARBOURSIDE formally submitted its proposal for the 2016 Approved Event Program on December 22, 2015.  This proposed 2016 Approved Event Program did not differ from the 2015 event schedule in any material way that would require additional considerations by the CRA and Police Department for the coming year.

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

73.     Both the Harbourside PUD and Site Plan require HARBOURSIDE to measure the sound levels at different locations throughout Harbourside Place to ensure that HARBOURSIDE and its tenants comply with the Noise Ordinance.

74.     HARBOURSIDE has satisfied this condition to the extent necessary to comply with the Noise Ordinance.

75.     HARBOURSIDE has never been cited by the TOWN for a violation of its Noise Ordinance.

76.     HARBOURSIDE and the TOWN are at odds with respect to this condition because the TOWN interprets this condition as prohibiting sound levels that exceed $L_{eq}$ 60 dB(A) anywhere in Harbourside Place.  The TOWN has never interpreted and enforced the Noise Ordinance this way for any other property, and the Noise Ordinance itself is enacted to address nuisances as they impact other properties.  The TOWN's interpretation evidences its intent to punish HARBOURSIDE in an effort to control music and other event content.

77.     Even if the TOWN's interpretation was consistent with the express requirements of the Noise Ordinance, this interpretation would render the Noise Ordinance arbitrary and capricious because the TOWN's police power interest in regulating noise is either based on the nuisance impact to other properties, or the health and safety impacts of the $L_{eq}$ 60 dB(A) sound level, which is equivalent to ordinary conversation and does not impact individual health or safety.

78.     The Harbourside PUD and Site Plan state:

Prior to issuance of any permits for the covered stage, [HARBOURSIDE] shall provide an engineered acoustical analysis to the Department from a sound engineer which demonstrates, to the Department's satisfaction that the noise (sound) from the [Amphitheater] and the events deck on top of Building 3B can

-23-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

> be mitigated so as to conform to the Town's laws and regulations. The analysis shall include the location of the stage and speakers, direction of sound from speakers, and shall measure sound in dB(A). Once approved, the analysis shall be incorporated into the final plans, and [HARBOURSIDE's] continued compliance with the same shall be a condition of this Development Order.

Any assertion by the TOWN that HARBOURSIDE has failed to comply with this condition is erroneous for numerous reasons, including:

(a)     The TOWN, long ago, issued all building permits and certificates of occupancy for the Amphitheater, including the covered stage. With the exception of ongoing compliance, this condition has been waived by the TOWN.

(b)     HARBOURSIDE and the TOWN have collected sound level data for over a year, which indicates that the Amphitheater and the events deck on top of Building 3B not only can be mitigated to conform with the TOWN's laws and regulations, but do conform with the TOWN's laws and regulations.

(c)     With respect to the location of the stage and speakers, and direction of sound from speakers, the stage has not moved since construction and the location of which has been provided in numerous submissions to the TOWN. The TOWN has repeatedly insisted that the location and direction of speakers be "tweaked," but such location and direction has not materially changed since installation.

79.     The Site Plan requires that "[u]pon the submission of the final plans and prior to the issuance of any building permits, [HARBOURSIDE] shall revise the Statement of Use to note:"

(a)     "That the sound limiter shall be set up to limit the overall sound output from the sound system such that it meets the TOWN's sound level regulations at the subject

-24-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

property's property lines." HARBOURSIDE installed and has used a sound limiter from the first day operating the Amphitheater.

        (b)    "That the sound limiter shall turn off or automatically reduce the sound/music which is being produced to a level which is within the TOWN's permitted noise regulations." The limiter will reduce the volume of music that is directly fed into it, however it will not reduce sound that it cannot control, ambient noise and unamplified sound that is louder than the set limit.

### THE TOWN FORCIBLY SHUTS DOWN THE AMPHITHEATER BY POLICE ACTION

80.    On January 6, 2016, HARBOURSIDE sent a letter to the TOWN expressing its intention to continue to present free entertainment to the public at the Amphitheater during the weekend of January 8-10, and into the near future, as reflected on the annual calendar of events submitted by HARBOURSIDE on December 22, 2015. HARBOURSIDE asked the TOWN whether it intended to disrupt or shut down these scheduled events *through police force* (which the TOWN has done in the past, when a musical act at HARBOURSIDE had used 'drums' that were prohibited by the Town).

81.    In response to HARBOURSIDE's clear request, the TOWN through its attorney issued a letter on January 7, 2016 at 4:20 p.m. that raised several legal arguments that are subject to adjudication in this action, but conspicuously failed to respond to HARBOURSIDE's inquiry concerning the TOWN's intention (or not) to forcibly shut down the free public events HARBOURSIDE planned for this weekend and into the near future while this action remains pending. The TOWN's response contained this ominous, unspecific threat: ***"Harbourside may expect that the Town will take appropriate enforcement actions."***

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

82.     In an effort to clarify this ominous threat and avoid seeking emergency relief from the court, HARBOURSIDE by e-mail (issued within an hour of the Town's January 8 letters) reiterated its request for the TOWN's assurances that the TOWN would not exercise its police power to breach the peace during HARBOURSIDE's regularly-scheduled events this weekend and into the near future, or issue notices of violation.

83.     The TOWN responded to HARBOURSIDE's expressed intentions by stating that "…Harbourside is not authorized to present any events…."

84.     That evening the TOWN's police force appeared at Harbourside Place and informed HARBOURSIDE that scheduled live musical performances at the Amphitheater. When HARBOURSIDE asked by what authority the TOWN was prohibiting performances from commencing, Capt. Sam Miller advised that he and the TOWN were enforcing §13-86 of the Code.   Capt. Sam Miller provided HARBOURSIDE with a document entitled, "Code Citation Fine & Fee Schedule," which is attached hereto as **Exhibit "7"**, which was highlighted to indicate the invocation of §13-86 of the Code that governed the operation of outdoor sound amplification devices.

85.     Section 13-86(a) of the TOWN's Code states:

*It is unlawful to use, operate or permit to be played, used, or operated any outdoor sound amplification machine* or device including but not limited to a radio receiving set, musical instrument, compact disk, tape, phonograph, loudspeaker, sound amplifier or other machine or device for the production or reproducing of sound *between the hours of 11:00 p.m. and 7:00 a.m.*, except if approved as an outdoor venue with extended hours as provided for in subsection (b) below. All sounds emanating from an outdoor amplification machine or device in any sound zone or on the public right of way shall be limited in volume and tone so as not to exceed the regulations established herein.

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(emphasis added).   Section 13-86 clearly did not prohibit (and implicitly authorized) HARBOURSIDE's scheduled use of its outdoor sound amplification system between 6:00 p.m. and 10:00 p.m.

86.   The TOWN has never indicated what HARBOURSIDE must do to get the Amphitheater certified, because no such requirement exists.  In fact, the TOWN introduced proposed Ordinance 1-16 on January 5, 2016 (the "Proposed Noise Ordinance Amendment"), which would amend the Noise Ordinance to create a "certification" process in hopes of changing supporting its legal position in the ongoing dispute with HARBOURSIDE.   The Proposed Noise Ordinance Amendment even went so far as to "clarify" a grandfathering provision so as to exclude the Amphitheater.  But as is plainly apparent from the title of Res. 2-13, Harbourside Place, including the Amphitheater, was approved as an outdoor venue by the Town Council:

> A RESOLUTION OF THE TOWN COUNCIL OF THE TOWN OF JUPITER, FLORIDA, APPROVING RESOLUTION NO'S. 25-08 AND 4-10 AND A SITE PLAN FOR A PROJECT KNOWN AS HARBOURSIDE TO MODIFY THE SQUARE FOOTAGES OF THE PREVIOUSLY APPROVED USES, ADDING A COVERED STAGE STRUCTURE, **AND APPROVING THE SITE AS AN OUTDOOR VENUE**; AND PROVIDING FOR AN EFFECTIVE DATE.

(emphasis supplied).

87.   Section 13-1 of the Code also defines a nuisance as "any condition or use of property or of the exterior of buildings, which is detrimental to the property of others, or which causes or tends to cause substantial deterioration in the value of the subject property, or other property in the neighborhood or area in which such property or building is located."

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t*: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

88.     The TOWN, in order to further regulate HARBOURSIDE, began to interpret the Noise Ordinance as requiring HARBOURSIDE to meet a $L_{eq}$ 60 dB(A) sound level maximum at the Harbourside Place is arbitrary and capricious because $L_{eq}$ 60 dB(A) is equivalent to the level of normal conversation between two people, which level of sound cannot be a nuisance to anyone, and certainly cannot be a nuisance as defined in the Code.  Notwithstanding this fact, the TOWN took the position that without the special permitting process, HARBOURSIDE would have to meet the $L_{eq}$ 60 dB(A) standard on its property.  The TOWN's interpretation is contrary to the plain language of the Noise Ordinance, and to any reading of the Code, Harbourside PUD or Site Plan.

### THE TOWN'S ATTEMPT TO PUNISH HARBOURSIDE FOR THE TOWN'S DECISION TO CREATE AN ENTERTAINMENT DISTRICT ACROSS FROM WATER'S EDGE

89.     From the beginning, many of the Water's Edge property owners were opposed to the Amphitheater, and began complaining as soon as it became operational.  These property owners hired a sound consultant, Edward Dugger & Associates ("Dugger"), to lead the charge against Harbourside Place.

90.     In an effort to address impacts on Water's Edge, HARBOURSIDE continuously worked to mitigate sound emanating from the Amphitheater.

91.     Initially, the TOWN's sound consultant handling issues related to the sound impacts from Harbourside Place was Tom Lepore.  As the Water's Edge property owners continued to complain, Lepore was removed from the Harbourside Place assignment and replaced with Dugger.  Through Dugger, the TOWN became very active in making sound mitigation decisions and imposing them on HARBOURSIDE.  Upon the advice of Dugger, the

-28-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

TOWN directed HARBOURSIDE to purchase specific sound mitigation and attenuation equipment, devices and infrastructure.

92.     Coincidentally, Dugger also sold much of the equipment, devices and infrastructure he required on behalf of the TOWN.

93.     At one point, the TOWN even directed that HARBOURSIDE construct temporary plywood baffles, which it would erect before each performance at the Amphitheater, only to be disassembled after the performance.  These baffles were entirely inconsistent with the development plans for Harbourside Place, which presented a live entertainment venue with a view of the Intracoastal Waterway.

94.     Most of the sound mitigation and attenuation equipment, devices and infrastructure required by the TOWN had little impact on the sound levels leaving Harbourside Place.   In fact, the greatest mitigation of sound levels came in March 2015 when HARBOURSIDE purchased and installed an In-Ear Monitoring System for performing musicians on stage to use instead of on-stage amplifiers that faced the musicians (and Water's Edge).  The In-Ear Monitoring System was not recommended by Dugger or required by the TOWN.

95.     HARBOURSIDE presented dozens of events during 2015 and was cited only once by the TOWN for allegedly violating any sound level limitations.  In that sole instance, the TOWN admitted the violation was for exceeding the more stringent 55 $L_{eq}$ dB(A) standard over a three minute interval imposed through the 1-29-2015 Special Event Permit, and that HARBOURSIDE had not violated the sound level limitations prescribed in the Noise Ordinance. In other words, HARBOURSIDE did not exceed the sound level limitations applicable to every

-29-

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

similar property in the TOWN, and was subjected to uniquely stricter restrictions through the special permitting process.

96.      The sound level data collected at Water's Edge also shows that ambient sound levels, otherwise known as background sound levels, at Water's Edge often exceed the levels prescribed in the Noise Ordinance for a residential zone without any sound being produced by Harbourside Place.  As a result, the TOWN is imposing sound level maximums through the special permitting process that are lower than the sound levels occurring at Water's Edge naturally or as a result of its specific location in relation to other sound producing occurrences like the nearby railroad tracks, the opening and closing of the Indiantown Road bridge, Indiantown Road traffic noise and activities on the Intracoastal Waterway.

97.      Ambient sound levels and significant sound producing events at Water's Edge pose yet another problem with respect to the TOWN's position regarding the Amphitheater's compliance with the Noise Ordinance. Sounds from 2 different sound sources that simultaneously reach Water's Edge at a sound level of $L_{eq}$ 55 dB(A) independently, have a cumulative impact of $L_{eq}$ 58.01 dB(A) when measured.  Put another way, if the Amphitheater is producing sound at a level that would be $L_{eq}$ 55 dB(A) without any other sound source present, and the ambient sound level over the same measuring period is $L_{eq}$ 58.7 d(B), then the TOWN's enforcement officer measuring the sound level at Water's Edge will get a reading of $L_{eq}$ 60.243 dB(A), assuming the officer's measuring device is working perfectly.  The TOWN has so far attributed this cumulative effect to HARBOURSIDE.

98.      The fact is that amplified sound from the Amphitheater will be heard faintly at Water's Edge, regardless of HARBOURSIDE's mitigation and attenuation efforts. The

-30-

⊜ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

complaining property owners have become sensitized to any level of sound from the Amphitheater, because they simply do not like the fact that Harbourside Place exists. This phenomenon is similar to a mother's sensitivity to the faintest sound her baby makes.

99.     Notwithstanding the foregoing, the TOWN insists that the special permitting process must be used because HARBOURSIDE has not demonstrated that the Amphitheater can be operated in compliance with the Noise Ordinance and therefore, the Amphitheater cannot be "certified" as an outdoor venue. The facts show the TOWN's position to be pretext:

(a)     The TOWN and HARBOURSIDE have collected sound level data at Harbourside Place and Water's Edge for the better part of a year, and that data clearly shows that Harbourside Place is not producing sound impacts at Water's Edge in excess of the levels prescribed by the Noise Ordinance.

(b)     Certification of the Amphitheater as an outdoor venue was not required by the Harbourside PUD, Site Plan or Noise Ordinance. The Noise Ordinance discusses outdoor venues and provides a process for an outdoor venue to operate under extended hours: "An outdoor venue may be approved to operate outdoor sound amplification devices with extended hours to 12:00 a.m., if the following requirements are met…." §13-86(b), Code.   But HARBOURSIDE had no desire to have its musical performances continue past 10:00 p.m.

100.     The TOWN's arbitrary and capricious, and content-based actions have severely limited and unlawfully interfered with HARBOURSIDE's regular use of its Amphitheater. The TOWN's actions have injured and obstructed, and continue to injure and obstruct, HARBOURSIDE's business operations and that of its tenants who expected that HARBOURSIDE would be the main entertainment center along the TOWN's Riverwalk.

-31-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

101.    HARBOURSIDE has consistently complied with the TOWN's Noise Ordinance. HARBOURSIDE has responded to several demands by the TOWN and its sound consultant concerning measures to manage and limit exterior sounds emanating from the Amphitheater, at tremendous expense to HARBOURSIDE.  Despite HARBOURSIDE's efforts and investments, the TOWN has continued to abuse its powers when dealing with HARBOURSIDE, including without limitation:

(a)    unilaterally seeking to impose upon HARBOURSIDE content-based restraints and other terms and conditions inconsistent with the Harbourside PUD and Site Plan, and the United States and Florida Constitutions;

(b)    administratively seeking to impose upon HARBOURSIDE  new terms and conditions inconsistent with HARBOURSIDE's right as an outdoor venue under the TOWN's Noise Ordinance, the Harbourside PUD and Site Plan;

(c)    imposing exterior sound standards more stringent than those prescribed under the Noise Ordinance;

(d)    interfering with the daily operations at Harbourside Place including the details of event programming;

(e)    imposing conditions not authorized or even contemplated by the TOWN's Noise Ordinance, including

(i)    limitations on the hours on any given day during which HARBOURSIDE may host public events at the Amphitheater that are otherwise permitted by the Noise Ordinance;

-32-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(ii)     the days of any given week during which HARBOURSIDE may host public events at the Amphitheater;

(iii)     the types of musical instruments that performers may use during events hosted by HARBOURSIDE at the Amphitheater; and

(iv)     the types of music that may be performed during events hosted by HARBOURSIDE at the Amphitheater.

102.    The TOWN has exempted itself and other property owners from any of the arbitrary conditions it has imposed on HARBOURSIDE, when the TOWN has hosted events at or immediately adjacent to Harbourside Place.

103.    Rather than treat the Amphitheater as an 'outdoor venue' under its Noise Ordinance, the TOWN has continued to bury HARBOURSIDE in a perpetual special event permit regime through which the TOWN has imposed upon HARBOURSIDE content-based programming conditions, and exterior sound conditions (and other conditions) that are more stringent than those required of other property owners similarly situated, and more stringent than those applicable to HARBOURSIDE under the TOWN's Noise Ordinance (whether or not the Amphitheater is treated as an "outdoor venue" under the TOWN's Noise Ordinance).

## THE CRA, ACTING AS THE TOWN'S ALTER EGO, IS ATTEMPTING TO INFLICT FURTHER ECONOMIC HARM UPON HARBOURSIDE

104.    The CRA Commission is comprised of the same membership as the Town Council.  The CRA is being used by the Town to inflict additional economic harm upon Harbourside through the CRA Agreement.

105.    The CRA Agreement provides that HARBOURSIDE is entitled to receive a Tax Increment Incentive Payment annually for a period of 15 years, which is equal to 50% of the Tax

-33-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

Increment Revenue resulting from the increases in the taxable assessed value of the properties comprising Harbourside Place up to $350,000.

106.     The Tax Increment Incentive Payment(s) were incentives and consideration for the development of Harbourside Place, which the CRA admitted in the CRA Agreement "will result in a significant financial impact for the community which has been estimated at an increase in ad valorem taxes of as much as $15,000,000 over the life of the CRA."

107.     The Agreement specifies only two conditions to the CRA's obligation to make Tax Increment Incentive Payment(s) to HARBOURSIDE ("Tax Incentive Payment Conditions"). Section 3 of the Agreement expressly conditions Tax Increment Incentive Payment(s) due to HARBOURSIDE on (a) the real estate taxes levied on the Property are paid prior to becoming delinquent, and (b) the Owner complies at all times with the performance benchmarks referenced in section 4 in the CRA Agreement.

108.     HARBOURSIDE has satisfied the Tax Incentive Payment Conditions.

109.     In an effort to avoid its obligation to make the Tax Incentive Payment(s) to HARBOURSIDE, the CRA Commission on November 17, 2015 voted to notify HARBOURSIDE of its alleged breach of the Agreement based on HARBOURSIDE's alleged failure to comply with the TOWN's unconstitutional Amphitheater use conditions.

110.     On November 20, 2015, the TOWN and CRA attorney, Thomas J. Baird, sent a letter to HARBOURSIDE (the "November 20 Notice"), which is attached hereto as **Exhibit "8"**, notifying HARBOURSIDE of its alleged breach of the CRA Agreement.

111.     The CRA issued its November 20 Notice simultaneously with the TOWN's issuance of the 11-20-15 NOVs (and notices of hearing) on which the TOWN obtained the award

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

of civil fines by its Special Magistrate Judge (**Composite Exhibit "9"** attached hereto), and simultaneously with the TOWN's denial of future permits for Sunday afternoon regular programming because of the use of drums and bass instruments in contradiction of the TOWN's prior restraints on such expressions.

112.    The infirmities (constitutional and otherwise) that continue to plague the TOWN's imposition of conditions upon HARBOURSIDE under its unlawful special event permitting regime, equally undercut the CRA's claim that HARBOURSIDE is in breach of the CRA Agreement by allegedly violating those same invalid conditions.

113.    Section 25 of the CRA Agreement is a boilerplate provision that requires HARBOURSIDE to "at all times be in compliance with all applicable federal, state and local laws, statutes, rules and regulations…." Section 25 is not a condition governing the CRA's obligation to make Tax Increment Incentive Payment(s) to HARBOURSIDE.    If HARBOURSIDE is in violation of any special event permit conditions (assuming their propriety in the first instance), the TOWN is afforded remedies under its Code Compliance regulations. The TOWN in fact has used those Code Compliance regulations to impose coercive fines upon HARBOURSIDE for alleged violations of invalid conditions on the use of the Amphitheater.

114.    On December 2, 2015, HARBOURSIDE responded to the November 20 Notice of Breach by letter to the TOWN and CRA attorney, which is attached hereto as **Exhibit "10"**.

115.    The TOWN through its CRA asserts a right to refuse to make tax incentive payment(s) to HARBOURSIDE based on HARBOURSIDE's alleged violations of the same conditions and prior restraints that have infected, and continue to infect, the TOWN's lawful use of the Amphitheater.

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

116.    The TOWN's and CRA's actions have irreparably harmed HARBOURSIDE by:

(a)    Stifling expression protected by the First Amendment;

(b)    Creating a system of prior restraints on musical and other performances at the Amphitheater;

(c)    Requiring HARBOURSIDE to consent to the TOWN's unlawful searches and seizures of its business records as a condition for exercise of its First Amendment rights; and

(d)    Causing HARBOURSIDE to suffer a loss of or harm to its goodwill, diminution of its competitive position in the marketplace, and loss of opportunities with future EB-5 investors, each of which causes monetary damages to HARBOURSIDE which may be difficult to quantify fully.

117.    The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.

## HARBOURSIDE'S JULY 4TH CELEBRATION SPECIAL EVENT PERMIT APPLICATION

118.    On April 13, 2016, HARBOURSIDE submitted its application for a Special Event Permit for the 2nd Annual Independence Day Celebration scheduled for July 4, 2016 from 4:00 p.m. to 10:00 p.m. (the "Independence Day SEP Application").    Unlike HARBOURSIDE's regularly-scheduled events, its Independence Day SEP Application sought TOWN approval for a truly special event that would involve larger crowds and road closures, based upon HARBOURSIDE's July 4th celebration hosted in 2015.

119.    HARBOURSIDE's Independence Day SEP Application sought a Class "B" Special Event Permit pursuant to §27-271(2) of the Code.

-36-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

120.     The parties' mediation was declared at an impasse on May 23, 2016.

121.     Having heard nothing from the TOWN in response to its submission of its Independence Day SEP Application, and because it takes a significant amount of time, resources and money to plan, coordinate and implement a community event as important as July 4th, HARBOURSIDE on May 24, 2016 sent a letter to the TOWN reiterating its request for approval of its Independence Day SEP Application.

122.     On June 3, 2016 – 51 days after receiving HARBOURSIDE's Independence Day SEP Application – the TOWN through the Town Attorney sent HARBOURSIDE a letter (attached hereto as **Exhibit "11"**) effectively denying the Independence Day SEP Application. The TOWN asserted that HARBOURSIDE as of April 13, 2016 had already exhausted its available special event permit allocation for 2016, because HARBOURSIDE had obtained special event permits under stipulation over the parties' mediation process.

123.     The TOWN reiterated this position during the early portion of the Court's June 15, 2016 status conference.  However, the TOWN later revealed in open Court that while sitting on HARBOURSIDE's Independence Day SEP Application for almost two months, the TOWN had planned its own July 4th event at Abacoa Town Center, a competitor of Harbourside Place.  The TOWN then represented to the Court that, as a result of its dedication of police and fire/EMS personnel to support Abacoa's TOWN-sponsored July 4th celebration, the TOWN now claimed a lack of additional police and fire/EMS resources to dedicate in support of HARBOURSIDE's July 4th event.

124.     In 2015, HARBOURSIDE presented a large July 4th celebration event at Harbourside Place, with TOWN police and fire/EMS support in place, and at no cost to the

-37-

≣ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

public.  HARBOURSIDE had applied in April 2016 for police and fire/EMS support to present virtually the same events as it had presented the year before.

125.   This Court rejected the TOWN's rationale for denying HARBOURSIDE's Independence Day SEP Application by Order dated June 15, 2016.

126.   Notwithstanding the Court's rejection of the TOWN's rationale for denying HARBOURSIDE's Independence Day SEP Application, the TOWN then adopted another spurious position [*see* Town's letter dated June 17, 2016, attached hereto as **Exhibit "12"**] that HARBOURSIDE's Independence Day SEP Application only became eligible for review as of June 16, 2016 (less than three weeks ahead of July 4th ) even though the TOWN had sat on HARBOURSIDE's Independence Day SEP Application for almost two months before first responding to that permit application through its June 3, 2016 attorney letter.  The TOWN in its June 17, 2016 letter also disingenuously asserted that HARBOURSIDE's Independence Day SEP Application was 'insufficient', and that the TOWN's police department was in the process of confirming that it could fill the security detail required by the TOWN for HARBOURSIDE's July 4th celebration event (contrary to its in-Court representations on June 15, 2016 that it could not).

127.   The TOWN's contrived positions in response to HARBOURSIDE's Independence Day SEP Application reveal its targeted animus against HARBOURSIDE, its tenants and their visitors, and its abuse of governmental power to HARBOURSIDE's detriment.

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

### THE TOWN ADOPTS ORDINANCE NO. 1-16 TO TARGET HARBOURSIDE

128.    Following the mediation impasse in this action, the TOWN rescheduled its proposed Ordinance No. 1-16 (the "Noise Ordinance Amendment") for second reading by its Town Council.

129.    On June 7, 2016, the Town Council held the second reading of proposed Ord. 1-16, and after airing some *ore tenus* changes, voted unanimously to adopt Ordinance No. 1-16 (the "Noise Ordinance Amendment"), which is attached hereto as **Exhibit "13"**.  The Town Council adopted not only the latest text of proposed Ordinance 1-16 but also *ore tenus* amendments made by councilmember(s) during the June 7, 2016 public hearing that were specifically targeted to HARBOURSIDE.

130.    The Town Council by its amendments to the TOWN's Noise Ordinance revealed its intent to target HARBOURSIDE.  The Noise Ordinance Amendment was adopted to control the content of musical performances at the Amphitheater, and to require the Amphitheater to undergo another outdoor venue approval process.

131.    The TOWN enacted the Noise Ordinance Amendment in retaliation for HARBOURSIDE's declaration of a mediation impasse, because HARBOURSIDE was in compliance with the existing Noise Ordinance, and in order to cloak the TOWN's continuing regulatory misdeeds with new legislative deference.  The TOWN expended the effort and time to craft and enact the Noise Ordinance Amendment to shut down HARBOURSIDE and prevent HARBOURSIDE from operating as the main entertainment component of the Riverwalk as designed.

-39-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

132.     Notwithstanding the requirements for approval of the Amphitheater as an outdoor venue set forth in the Harbourside PUD and Site Plan, and the TOWN's approval thereof, the Noise Ordinance Amendment requires that the Amphitheater be certified as an outdoor venue under an entirely new process.  Even though the approval process for an outdoor venue is entirely new under the Noise Ordinance Amendment, properties that established a use with an outdoor venue prior to November 16, 2010, are grandfathered in and need not go through the new approval process.  This grandfathering provision allows other outdoor venue uses such as Guanabana's, Square Grouper and Abacoa Amphitheater to avoid Town Council approval under the new outdoor venue approval process even though those outdoor venues were not similarly required to meet the substantial requirements imposed upon and satisfied by HARBOURSIDE under the Harbourside PUD and Site Plan.

133.     The Noise Ordinance Amendment's approval process for outdoor venues, which obtain certain rights with respect to amplified music, exempts all existing outdoor venues except the Amphitheater under the guise of grandfathering those outdoor venues.  The grandfathering provision applies not as of the date of adoption of the Noise Ordinance Amendment, but as of the date of adoption of the last amendment to the Noise Ordinance.  HARBOURSIDE had already complied with the prior Noise Ordinance, and the Harbourside PUD and Site Plan, and should have been grandfathered under the Noise Ordinance Amendment. HARBOURSIDE has been singled out by the TOWN even though HARBOURSIDE obtained final certificates of occupancy under the Harbourside PUD and Site Plan, and was designated thereunder as an outdoor venue. The new approval process for outdoor venues constitutes an unlawful prior restraint, is arbitrary

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

and capricious, a violation of due process and violates HARBOURSIDE's rights to equal protection under the law.

134.    The Noise Ordinance Amendment purports to require HARBOURSIDE to meet several new and different sound standards:

(a)    At the source of amplified sound, the sound level cannot exceed $L_{eq}$ 65 dB(A);

(b)    At the "upland property line of a property approved as an outdoor venue," the sound level cannot exceed:

(i)    $L_{eq}$ 65 dB(A) measured over a three (3) minute period; and

(ii)    75 dB(A) measured instantaneously or over any period of time;

(c)    At the Water's Edge property line, the sound level cannot exceed:

(i)    $L_{eq}$ 55 dB(A) measured over a three (3) minute period; and

(ii)    65 dB(A) measured instantaneously or over any period of time.

135.    Based on the text of the Noise Ordinance Amendment, HARBOURSIDE is not able to know how it is to comply with these numerous and competing sound standards.

136.    The Noise Ordinance Amendment also does not define "upland" or "upland property line".  When used as an adjective, "upland" is defined by www.dictionary.com as meaning "of or relating to uplands or elevated regions."  Given this definition, there is simply no way to reconcile the adjective "upland" with the noun "property line"; property lines exist without regard to whether property is upland or not.  In addition, there is no rational purpose for imposing a different standard on sound to uplands or elevated regions.

-41-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

137.    The Town Council's use of the phrase "upland property line" is clearly targeted against HARBOURSIDE and indicative of the TOWN's continuing intent to discriminate against HARBOURSIDE as compared to other venues that hold outdoor entertainment events in Jupiter.  The Harbourside Place property line extends a substantial distance into the Intracoastal Waterway at a point behind the Amphitheater.  The Town Council specifically added the adjective "upland" to apply to HARBOURSIDE, but that term is not sufficiently defined as applied to HARBOURSIDE and does not account for meander lines.  If the Noise Ordinance Amendment only used "property line" when imposing this new sound level standard, the measurement point would have been a point much further away from the Amphitheater.

138.    The TOWN may not constitutionally control nuisances without reference to their effect on receiving properties, but the Noise Ordinance Amendment purports to do so.  The numerous sound level standards imposed upon Harbourside Place by the Noise Ordinance Amendment exceed the TOWN's lawful authority and violate HARBOURSIDE's rights to due process and equal protection; the TOWN's efforts to control nuisances using these standards are arbitrary and capricious.

139.    The Noise Ordinance Amendment was enacted under the TOWN's authority to regulate public nuisances.  The Noise Ordinance Amendment will be codified in Chapter 13, Article IV of the Code.  Chapter 13 is entitled "Nuisances".

140.    Section 13-81 of the Noise Ordinance (unaffected by the Noise Ordinance Amendment) states:  "It shall be unlawful for persons to make, continue or cause to be made, any excessive, unnecessary or unusually loud noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of reasonable persons of normal

-42-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

sensibilities, within the Town limits, as prohibited in this article, unless the noise is exempted under this article."

141.    The old Noise Ordinance established standards that prevented production of noise on a property so as to injure the land or some incorporeal right of neighboring properties.

142.    The Noise Ordinance Amendment's limitation of sound levels at the source of the sound is arbitrary and capricious because the limitation addresses no injury to the land or incorporeal rights of neighboring properties.  The Amphitheater and its sound source(s) are at least 630 feet away from the residential sound zone at Water's Edge.  If the sound level at Water's Edge is within the standards set forth in the Noise Ordinance, no nuisance exists.

143.    For properties with outdoor venues that share a property line with adjacent properties (i.e., are not separated by another property, public or private right-of-way or waterway), the Noise Ordinance Amendment grants those properties the benefit of logarithmic dB(A) averaging when the adjacent property is located in a different sound zone.

144.    The purpose of logarithmic dB(A) averaging is to provide for transition between different sound zones that abut each other.  In other words, a property located in a commercial sound zone abutting a property in a residential sound zone should not have to meet the more stringent residential sound zone standard at the property line, because such a rule would:

(a)    favor the rights of the residential property owner over the rights of the commercial property owner; and

(b)    discount the importance of the expectations of each of those property owners abutting commercial properties in determining what constitutes injury.

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

145.     The Noise Ordinance Amendment's exclusion of properties separated by intervening properties or waterways from logarithmic dB(A) averaging is not rational, because the intervening distance between the sound sourcing property and the receiving property can serve to diffuse sound.  The Noise Ordinance Amendment implements this exclusion in an arbitrary and capricious manner, because it fails to consider the diffusion of sound across an intervening property or waterway including the distance of the intervening property or waterway.  In other words, intervening properties or waterways separating the sound sourcing property and the receiving property by 5 feet or 500 feet are treated exactly the same under the Noise Ordinance Amendment.

146.     As applied to the Intracoastal Waterway separating Harbourside Place from the Water's Edge properties, the specific exclusion of HARBOURSIDE from logarithmic dB(A) averaging is arbitrary and capricious, because it discounts the reasonable sound-receiving expectations of the owners of Water's Edge properties who experience sounds from the abutting Intracoastal Waterway (including its boat traffic and associated sound emissions), operations of the Indiantown Road bridge, traffic noise traversing the Indiantown Road bridge and a nearby railroad, to name a few sound producers.  The TOWN under the new Noise Ordinance Amendment seeks to require HARBOURSIDE to control (and be legally responsible for) all of these nearby sound producers, without constitutional basis.

147.     The Noise Ordinance Amendment reduces the instantaneous sound level standard applicable to all properties to 10 dB(A).  The TOWN reduced the instantaneous sound level standard specifically to legislate its prohibition on HARBOURSIDE's use of drums and other percussion during musical events at the Amphitheater on a permanent (rather than

-44-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

weekend-by-weekend basis) and after being sued by HARBOURSIDE for content-based restraints and discrimination.

148.    The Noise Ordinance Amendment's reduction in the instantaneous sound level standard by 10 dB(A) is not content-neutral, because the Noise Ordinance Amendment cannot be justified without reference to specific content sought to be excluded – drums and other percussion.    The Noise Ordinance Amendment cannot be justified given the TOWN's previously expressed intent to exclude such content, the absence of any other cause for the reduction in tolerable instantaneous sound, and the fact that the Noise Ordinance Amendment exempts from its application most other causes of sound that could violate the instantaneous sound level standard.

149.    Furthermore, the Amended Noise Ordinance favors musical expression constituting religious services or the practice of religion over other musical expression, by exempting musical expression constituting religious services or the practice of religion from compliance with §13-125 of the Code.   As a result, if a religious group wanted to hold a religious service featuring a Christian rock band at the Amphitheater, the Christian rock band's performance would only violate the Noise Ordinance if the sound level exceeded 70 dB(A) at a receiving property for a period of 30 or more seconds.   This different standard for religious services that include Christian rock is facially content-based, particularly given the fact that courts will accept such a forum as a valid religious service without inquiry.

150.    The TOWN under the Noise Ordinance Amendment effectively limits HARBOURSIDE's amphitheater events to presenting an acoustic guitar player and a small amplifier at best, unless the focus of the event is religious services.   An assembly of members of

-45-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t*: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

the community wanting to discuss politics using amplified sound would also violate the Noise Ordinance Amendment.

151.    The Noise Ordinance Amendment also exceeds the TOWN's authority under Chapter 162, Florida Statutes.   The Noise Ordinance Amendment states:   "The failure to provide the Town with the sound data report, or the refusal to provide the Town with access to the sound limiter shall be an irreparable violation of this section."   A declaration of irreparable violation is important to the Town, because that allows the Town's code enforcement Special Magistrate to assess a fine of $5,000 for a single failure to provide a sound data report to the Town.  But §162.09, Fla. Stat., makes clear that only the code enforcement board (or special magistrate) can make the finding of "irreparable harm" necessary to impose a fine not to exceed $5,000 per violation.  The Noise Ordinance Amendment makes this change to legislatively declare an irreparable violation to specifically address an argument raised by HARBOURSIDE before the Special Magistrate that even assuming *arguendo* that the TOWN can lawfully compel HARBOURSIDE to produce its sound data reports, which HARBOURSIDE disputes, no single failure to produce a sound data report could constitute irreparable harm under §162.09, Fla. Stat.

152.    The foregoing harm to HARBOURSIDE outweighs any harm the TOWN may suffer from injunctive relief addressing the harm to HARBOURSIDE.

153.    Granting HARBOURSIDE injunctive relief serves the public interest by vindicating and protecting HARBOURSIDE's liberties secured by the United States Constitution and the Florida Constitution.

-46-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

154.    **HARBOURSIDE specifically reserves all rights and compensation claims under Chapter 70, Florida Statutes, against each Defendant.  The presentation of claims under Chapter 70 is tolled pending a judicial determination of whether the TOWN's regulations against HARBOURSIDE are lawful and valid governmental actions as applied to HARBOURSIDE's properties.**

**COUNT I – 42 U.S.C. §1983 – VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE TOWN OF JUPITER**

155.    The allegations set forth in paragraphs 1 through 154 are re-alleged and incorporated as if fully set forth herein.

156.    This is an action pursuant to 42 U.S.C. §1983 seeking redress for continuing violations of the First and Fourteenth Amendments to the United States Constitution.

157.    Music, as a form of expression and communication, is protected under the First Amendment.  Music is created by the playing of musical instruments.  This protection extends to amplified music.

158.    HARBOURSIDE is a private business enterprise that enjoys business relationships with many independent retail tenants.  The TOWN has no legitimate role in managing the daily operations and business plans of HARBOURSIDE on its privately-owned property.  The TOWN has no legitimate interest in controlling or prohibiting the content of music that may be played at the Amphitheater or directing what musical instruments may or may not be used.  The TOWN's police power authorizes it to act to protect the health, welfare and safety of the people, but limited by the protections afforded individuals by the United States Constitution.

-47-

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

159.     The musical performances at the Amphitheater constitute protected expression under the First and Fourteenth Amendments, as well as under Article 1, Section 4 of the Florida Constitution; the TOWN's interference with, and prior restraint of, those activities on HARBOURSIDE's private property also raise Fifth Amendment concerns.

160.     The Town's Manager, its Town Council and Director of Planning and Zoning, under color of law or authority, through the exercise of authority granted under the Special Permitting Ordinance and abuse of authority prescribed in the Harbourside PUD and Site Plan, have adopted and implemented a *de facto* policy of the TOWN to take any and all steps necessary to restrain and/or prohibit constitutionally-protected musical performances on HARBOURSIDE's private property through the special event permitting process.

161.     Pursuant to the Harbourside PUD and Site Plan, the TOWN's Special Permitting Ordinance does not apply to the regularly-scheduled musical performances at Harbourside Place, but the TOWN under color of law has required use of this process through the following threatened actions:

(a)     Restraining protected speech and expression through prior restraint;

(b)     Repeal or modification of the Approved Event Program;

(c)     Shutting down musical performances through police action; and

(d)     Refusal to recognize the Amphitheater as an 'outdoor venue' under the Noise Ordinance, notwithstanding HARBOURSIDE's compliance with the Harbourside PUD and Site Plan.

162.     The TOWN has imposed, and plans to continue to impose, unlawful prior restraints on the musical performances at Harbourside Place, including:

-48-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(a)     The requirement to obtain special event permits for regularly scheduled events already covered by the Approved Event Program;

(b)     The TOWN's direction that HARBOURSIDE agree not to play rap, hip-hop, heavy metal, rock, etc. at the Amphitheater, and inclusion of such agreement into the conditions of special permits by reference;

(c)     The TOWN's prohibition or limitation of the playing of specific musical instruments in Special Event Permits;

(d)     The TOWN's action to deny HARBOURSIDE 'permission' for future "live music" on Sundays, and/or the use of drums and bass guitars, based on HARBOURSIDE's failure to abide by the TOWN's prior restraints on such expressions; and

(e)     The TOWN's imminent repeal of the Approved Event Program to impose conditions on all future performances.

163.    Prior restraints on speech bear a heavy presumption against their constitutionality.  The settled rule is that a system of prior restraint avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.  No such procedural safeguards exist in the TOWN's Code of Ordinances.

164.    The TOWN's prohibitions on the types of musical instruments that may be played at the Amphitheater constitute content-based restrictions on protected expression, because they bar the genres or forms of musical expression predicated on the prohibited musical instruments.

165.    The TOWN's direction regarding the types of music that may be performed at the Amphitheater constitutes content-based restrictions on protected expression.

BERGER SINGERMAN

166.    By adopting the Noise Ordinance Amendment, the TOWN has attempted to dictate the content of musical expression performed at the Amphitheater through less obvious, but no less unlawful means.  These means, which cannot be justified without reference to the content of musical expression the TOWN has demonstrated it wants to restrict or limit, include:

(a)    Numerous sound level standards and measurement criteria that are applicable to the Amphitheater only;

(b)    An instantaneous sound level standard that cannot be met without altering the content of musical expression;

(c)    A sound level standard at the sound source that cannot be met without altering the content of musical expression.

167.    The TOWN's change of strategy and legal position was revealed during the June 15, 2016 status conference before the Court.  Prior to then, the TOWN had asserted that HARBOURSIDE was legally prohibited from presenting *any* events at its amphitheater without a special event permit, based on the flawed premise that HARBOURSIDE could not comply with the TOWN's sound regulations otherwise. On January 8 and 9, 2016, just days after HARBOURSIDE commenced this action, the TOWN through its police force affirmatively prohibited and shut down HARBOURSIDE's amphitheater events (and even its canned music piped through its amphitheater speakers when events are not occurring) on the ground that HARBOURSIDE did not obtain a special event permit to do so.

168.    However, upon its recent enactment of the Noise Ordinance Amendment (and believing that HARBOURSIDE cannot comply with its new provisions), the TOWN has now adopted HARBOURSIDE's position that HARBOURSIDE has satisfied all conditions and may

-50-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

present its regularly-programmed events at its amphitheater without a special event permit.  By acknowledging that HARBOURSIDE does not need special event permits to continue to present its regular event programming (as it has done without TOWN interference since May 2016), the TOWN concedes that the legal premise on which it earlier required HARBOURSIDE to obtain special event permits for every event at HARBOURSIDE's amphitheater was fallacious, and that its imposition of various permitting conditions was arbitrary, capricious and revealed selective and unequal treatment under the TOWN's laws.

169.    The Noise Ordinance Amendment's use of the phrase "upland property line" is both unconstitutionally vague and specifically directed at HARBOURSIDE.

170.    Government restrictions on speech based upon the content of the message are presumptively unconstitutional and are subject to a higher level of scrutiny as a result. Because the TOWN's special event permits impose content-based restrictions on their face, those provisions can stand only if they survive strict scrutiny, which requires the TOWN to show that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.

171.    A compelling interest is "an interest of the highest order."  Mere speculation of harm does not constitute a compelling interest.  The Town already conceded it did not have an interest of the highest order when it issued the special event permits as Class "A" special permits, because such permits are issued for temporary uses that are "anticipated to have minimal impacts on surrounding uses."  §27-271(1), Town Code.

172.    The TOWN's legitimate interest regarding events at the Amphitheater is preventing excessive noise, which is not a compelling interest.

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

173.    The TOWN's conduct has deprived, and continues to deprive, HARBOURSIDE of rights, privileges or immunities secured by the Constitution or laws of the United States.

WHEREFORE, HARBOURSIDE PLACE, LLC respectfully requests that this Court enter a judgment providing that:

(a)    declaring that the musical performances and other events at the Amphitheater constitute expression protected by the First Amendment;

(b)    declaring that the following constitute unlawful prior restraints on expression protected by the First Amendment:

(i)    The TOWN's actions under the Special Permitting Ordinance to deny or condition Special Event Permits for musical performances at the Amphitheater;

(ii)    The requirement to obtain Special Event Permits for regularly scheduled events already covered by the Approved Event Program;

(iii)    The TOWN's direction that HARBOURSIDE agree not to play rap, hip-hop, heavy metal, rock, etc. at the Amphitheater, together with:

(1)    the TOWN's implied threat to use the special event permitting process continuously to impose conditions upon HARBOURSIDE's use of the Amphitheater inconsistent with the HARBOURSIDE's rights and expectations under the Harbourside PUD and Site Plan, and federal law; and

(2)    the TOWN's use of its code enforcement process to impose substantial financial penalties for violations of unlawful Special Event Permit conditions;

-52-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(iv)    The TOWN's prohibition or limitation of the playing of specific musical instruments in Special Event Permits; and

(v)    The TOWN's ability to repeal the Approved Event Program as a means to impose conditions on all future performances;

(c)    declaring that the foregoing unlawful prior restraints constitute violations of HARBOURSIDE's rights under the First Amendment;

(d)    declaring that the TOWN's prohibition on the types of musical instruments that may be played at the Amphitheater constitute content-based restrictions on protected expression;

(e)    declaring that the TOWN's directions regarding the types of music that may be performed at the Amphitheater constitute content-based restrictions on protected expression;

(f)    declaring that the TOWN's threat to cancel Sunday musical performances altogether unless HARBOURSIDE plays a specific type of music constitutes a content –based restriction on protected expression;

(g)    declaring that the Noise Ordinance Amendment is not a facially content-neutral regulation of musical expression protected by the First Amendment;

(h)    declaring that the Noise Ordinance Amendment cannot be justified without respect to the content of the musical expression the TOWN has demonstrated it wants to restrict or limit at HARBOURSIDE;

(i)    declaring that the Noise Ordinance Amendment is not narrowly tailored to serve a compelling government interest;

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(j)      declaring the Noise Ordinance Amendment's use of the term "upland property line" an unlawful prior restraint on musical expression protected by the First Amendment in that it is vague, is specifically targeted against HARBOURSIDE and operates to inhibit HARBOURSIDE's exercise of freedoms afforded by the First Amendment;

(k)      declaring that the exemption from the application of sound level standards of §13-125 of the Code for religious services and practice of religion under the Noise Ordinance Amendment violates the Establishment Clause of the First Amendment;

(l)      declaring the Noise Ordinance Amendment in unconstitutional, and striking:

(i)       the portions of the Noise Ordinance Amendment that can be severed; or

(ii)      the Noise Ordinance Amendment in its entirety because the portions that must be struck as unconstitutional render the remaining ordinance arbitrary, capricious, ambiguous and vague;

(m)      granting injunctive relief;

(n)      awarding damages;

(o)      awarding attorneys' fees and costs pursuant to 42 U.S.C. §1988(b), and

(p)      awarding such other and further supplemental relief to HARBOURSIDE as may be just and proper.

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

**COUNT II – 42 U.S.C. §1983 – VIOLATIONS OF THE FIFTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION BY THE TOWN OF JUPITER**

174.     The allegations set forth in paragraphs 1 through 154 are re-alleged and
incorporated as if fully set forth herein.

175.     This is an action pursuant to 42 U.S.C. §1983 seeking redress for continuing
violations of the Fifth and Fourteenth Amendments to the United States Constitution.

176.     As applied to HARBOURSIDE, the Noise Ordinance and Special Permitting
Ordinance deny HARBOURSIDE procedural due process.

177.     Pursuant to Section 13-119 of the Code, events receiving Special Event Permits
are exempt from the noise level regulations set forth in the Noise Ordinance, and are also exempt
from the substantive and procedural protections afforded by the Noise Ordinance.

178.     Specifically, Section 13-125(c) of the Code requires the TOWN to account for
ambient sound levels in enforcing violations of the Noise Ordinance: "If the ambient sound level
exceeds the standard, as noted in Table 1 and 2 above, of the designated residential sound zones,
the ambient sound level shall be considered the standard, but at no time shall a sound source
exceeds the standard noted in section 13-125(b) at the property line."

179.     Because Special Event Permits are exempt from the requirements of the Noise
Ordinance, the TOWN can regulate amplified sounds in a Special Event Permit without
accounting for the impact of ambient noise at the location at which a violation is alleged.

180.     Section 13-125(c) does not adequately address ambient sound by failing to
account for the cumulative impact of multiple sound sources.  As a result, HARBOURSIDE can
amplify sound such that it causes sound levels to reach Water's Edge at $L_{eq}$ 55 dB(A) over a 3

-55-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t*: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

minute period.  Such conduct on the part of HARBOURSIDE would not create a nuisance and would lawful under the Noise Ordinance.  But other sound sources occurring simultaneously at Water's Edge, including but not limited to ambient sound, necessarily elevate sound levels at Water's Edge higher than $L_{eq}$ 55 dB(A), thereby triggering a perceived violation of the Noise Ordinance that is attributed to HARBOURSIDE.

181.    The effect of the Noise Ordinance's failure to account for the cumulative impacts of multiple sound sources is that the Noise Ordinance arbitrarily and capriciously makes the same conduct by HARBOURSIDE lawful (not a nuisance) on one occasion and unlawful (a nuisance) on another occasion.

182.    The impact of the failure of the Noise Ordinance to account for the cumulative impacts of multiple sound sources is even more arbitrary and capricious when one considers that the TOWN is regulating excessive sound under its power to address public nuisances.  An ordinance with such an effect must, in other words, do no more than duplicate the result that could have been achieved in the courts—by adjacent landowners (or other uniquely affected persons) under the State's law of private nuisance, or by the TOWN under its complementary power to abate nuisances that affect the public generally, or otherwise.

183.    Determination of what constitutes a nuisance requires consideration of the individual facts and circumstances of the affected property, and the increased level of ambient and transitory sound at Water's Edge, which has been demonstrated by over a year's worth of sound data collected by the TOWN and HARBOURSIDE, necessarily makes the level of sound that constitutes a nuisance at Water's Edge higher than in other residential areas of the TOWN.  The failure of the Noise Ordinance to account for the cumulative impacts of multiple sound

-56-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

sources, as applied to HARBOURSIDE, has the opposite effect of imposing a *de facto* standard to Water's Edge of L$_{eq}$ 52-53 dB(A).

184.     Section 13-125(d) of the Code evidences the TOWN's recognition that a higher sound standard should apply to Water's Edge.  Section 13-125(d) provides that the sound standard to be applied at the boundary of two sound zones is the logarithmic dB(A) average of the standards from the respective sound zones.  Water's Edge is on the boundary of a residential sound zone, and Harbourside Place is in a MU Zone with a higher sound level standard that should have implicated §13-125(d).

185.     Section 327.65(2), Fla. Stat., effectively renders the Intracoastal Waterway a sound zone which imposes a sound standard no lower than L$_{eq}$ 90 dB(A).  Water's Edge is on the boundary of the *de facto* Intracoastal Waterway sound zone.  As a result, the applicable standard at Water's Edge should be the logarithmic average of L$_{eq}$ 55 dB(A) and L$_{eq}$ 90 dB(A).

WHEREFORE, HARBOURSIDE PLACE, LLC respectfully requests that this Court enter a judgment:

(a)     Finding that:

(i)     The TOWN's failure to include the substance of §13-125(c) in Special Event Permits renders the Special Event Permits arbitrary and capricious and in violation of substantive due process;

(ii)     The TOWN's failure to include provisions addressing the cumulative impacts of multiple sound sources in Special Event Permits renders the Special Event Permits arbitrary and capricious and in violation of substantive due process;

-57-

(iii)    The sound standards applied by the TOWN to HARBOURSIDE exceed the TOWN's authority to regulate no more than an actual nuisance; and

(iv)    The Noise Ordinance's failure to address the cumulative impacts of multiple sound sources renders it arbitrary and capricious, both facially and as applied to HARBOURSIDE;

(v)    The Noise Ordinance Amendment is arbitrary and capricious because:

(1)    It imposes numerous sound level standards on musical expression that bear no relationship to the TOWN's expressed goal of preventing unwanted sound on other properties;

(2)    It declares certain conduct a nuisance that is not a nuisance in fact;

(3)    It provides exemptions, conditions or modifications of general sound level standards which bear no relationship to the TOWN's expressed goal of preventing excessive sound on other properties, including but not limited to the exclusion of properties separated by another property, public or private right-of-way or waterways from logarithmic dB(A) averaging under §13-125(d), the exemption of excessive sounds that enjoy no protection under the First Amendment, and the imposition of a completely different sound level standard for religious services or the practice of religion which would include religious musical expression;

-58-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(4)     It exempts from the outdoor venue approval process existing outdoor venues but not as of the date of the Noise Ordinance Amendment;

(5)     It declares the failure to provide the TOWN at any time upon request with the sound data report, or the refusal to provide the TOWN with access to the sound limiter, an irreparable violation;

(vi)     The Noise Ordinance Amendment's use of the term "upland property line" is unconstitutionally vague, and targeted against HARBOURSIDE, and therefore void;

(b)     granting injunctive relief;

(c)     awarding damages;

(d)     awarding attorneys' fees and costs pursuant to 42 U.S.C. §1988(b), and

(e)     awarding such other and further supplemental relief to HARBOURSIDE PLACE, LLC as may be just and proper.

### COUNT III – 42 U.S.C. §1983 – VIOLATIONS OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE TOWN OF JUPITER

186.     The allegations set forth in paragraphs 1 through 154 are re-alleged and incorporated as if fully set forth herein.

187.     This is an action pursuant to 42 U.S.C. §1983 seeking redress for continuing violations of the Fourth and Fourteenth Amendments to the United States Constitution.

188.     The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

-59-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

189.    HARBOURSIDE owns a sound limiter and iPad sound level meter that it uses in connection with the musical performances and other events it programs for the Amphitheater.

190.    The reports produced by HARBOURSIDE's sound limiter and iPad sound level meter constitute HARBOURSIDE's private papers and effects under the Fourth Amendment, and HARBOURSIDE has an expectation of privacy in them.

191.    Through the Harbourside PUD and Site Plan, the Town Council, acting under color of law, has required HARBOURSIDE to produce its private sound limiter and iPad sound level meter without probable cause or a warrant, on a continuing basis and under penalty of fines and other coercive measures.

Through the Harbourside PUD, the Site Plan and conditions of individual Special Event Permits, the TOWN has consistently required that HARBOURSIDE produce its private sound limiter and iPad sound level meter without probable cause or a warrant.

192.    The TOWN's conduct has deprived, and continues to deprive, HARBOURSIDE of rights, privileges or immunities secured by the Constitution or laws of the United States.

WHEREFORE, HARBOURSIDE PLACE, LLC respectfully requests that this Court enter a judgment:

(a)    finding that conditions of the Harbourside PUD, Site Plan and Special Event Permits requiring HARBOURSIDE to produce sound limiter reports, iPad sound level meter reports, or any other business record of HARBOURSIDE

-60-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

without probable cause and a warrant and under penalty of fines and other coercive measures, violate the Fourth Amendment to the United States Constitution;

(b)  finding that the Amended Noise Ordinance's requirements that HARBOURSIDE produce sound limiter reports, iPad sound level meter reports, or any other business record of HARBOURSIDE without probable cause and a warrant and under penalty of fines and other coercive measures, violate the Fourth Amendment to the United States Constitution;

(c)  awarding damages;

(d)  awarding attorneys' fees and costs pursuant to 42 U.S.C. §1988(b), and

(e)  awarding such other and further supplemental relief to HARBOURSIDE PLACE, LLC as may be just and proper.

### COUNT IV – DECLARATORY AND SUPPLEMENTAL RELIEF AGAINST THE TOWN OF JUPITER

193.  The allegations set forth in paragraphs 1 through 154 are re-alleged and incorporated as if fully set forth herein.

194.  This is an action for declaratory judgment pursuant to Section 28 U.S.C. §2201, et seq., otherwise known as the Federal Declaratory Judgment Act.  This action is brought against the TOWN and the CRA.

195.  A bona fide controversy exists between the parties with regard to their respective rights and obligations of HARBOURSIDE and the TOWN under the Harbourside PUD, Site Plan and Noise Ordinance, the United States and Florida Constitutions, and the CRA Agreement.

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

196.     HARBOURSIDE has asserted that:

(a)     It has complied with those conditions delineated in the Harbourside PUD and Site Plan concerning the use of the Amphitheater as an "outdoor venue", and is an "outdoor venue" under the TOWN's Noise Ordinance;

(b)     As an approved "outdoor venue" under the TOWN's Noise Ordinance, HARBOURSIDE is entitled to host events producing exterior sounds, subject to the hours of operation specified in Table 2 under Section 13-125(a) of the Noise Ordinance;

(c)     while HARBOURSIDE should be recognized as an "outdoor venue" under the TOWN's Noise Ordinance, HARBOURSIDE is entitled, at a minimum, to host events producing exterior sounds, subject to the hours of operation specified in Table 1 under Section 13-125(a) of the Noise Ordinance;

(d)     In any event, HARBOURSIDE is not obligated to seek or obtain special event permits for each and every regularly-scheduled public event HARBOURSIDE wishes to host at the Amphitheater but is required to obtain a special event permit only regarding those unique events for which HARBOURSIDE and the TOWN reasonably anticipate the need for road closures and other traffic concerns, an extraordinarily high number of attendees (such as Holiday events or New Years' Eve celebrations) and heightened safety concerns;

(e)     The TOWN's Noise Ordinance prescribes certain standards by which exterior sounds created by any property owner should be measured at a receiving property, and the calculations required to determine whether the exterior sounds at the receiving property exceed the prescribed sound ceilings;

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(f)     That the only measuring point prescribed by the Noise Ordinance for enforcement against Harbourside Place is at the property line of another property impacted by sound being produced at Harbourside Place by HARBOURSIDE or its employees and agents and from no other sources;

(g)     Enforcement of violations of the Noise Ordinance or any Special Event Permit conditions related to amplified sound against HARBOURSIDE require that the TOWN present evidence to the Special Magistrate showing that the alleged violations arise from sounds being produced at Harbourside Place by HARBOURSIDE or its employees and agents;

(h)     Enforcement of violations of the Noise Ordinance or any Special Event Permit conditions related to amplified sound against HARBOURSIDE without considering the impacts of ambient sound violates HARBOURSIDE's rights to due process;

(i)     Notices of Violation of the Noise Ordinance or conditions of Special Event Permits issued by the Town that do not notify HARBOURSIDE how it violated the Noise Ordinance or conditions of Special Event Permits are facially invalid under Florida law, and violate HARBOURSIDE's rights to due process;

(j)     Submission of the annual calendar of events (Approved Event Program) for review by the CRA and Police Department, as required by the Harbourside PUD and Site Plan, was for the limited purpose of addressing public safety and traffic impacts, and not to impose sound impacts;

(k)     As of the date of this Second Amended Complaint, the annual calendar of events (Approved Event Program) formally submitted by HARBOURSIDE on December 22,

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

2015, is in effect and governs which events may be presented at the Amphitheater without a Special Event Permit;

(l)    HARBOURSIDE had coordinated with the CRA and Police Department on the relevant aspects of the annual calendar of events (Approved Event Program) formally submitted on December 22, 2015, throughout all of 2015 in conjunction with the special permitting process;

(m)    Any provision of the Harbourside PUD or Site Plan that the Approved Event Program "…may be repealed in part or total by the Town, if the Town determines the exempt events are creating significant impacts that warrant revisions to the criteria and requirements…." is unlawful;

(n)    Even if HARBOURSIDE had violated terms and conditions of any Special Event Permits, which HARBOURSIDE disputes, such violations would not constitute a failure on the part of HARBOURSIDE to "at all times be in compliance with all applicable federal, state and local laws, statutes, rules and regulations;"

(o)    HARBOURSIDE has not breached any provision of the CRA Agreement;

(p)    Section 25 is not a material term of the CRA Agreement, and therefore, the CRA may not withhold Tax Increment Incentive Payment(s) due to HARBOURSIDE under the CRA Agreement;

(q)    While the TOWN may fairly enforce its Noise Ordinance according to its terms, the TOWN does not possess the lawful authority to dictate:

(i)    the hours during which HARBOURSIDE hosts public events that are more restrictive than the hours expressly permitted by the Noise Ordinance;

-64-

☰ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(ii)     the days of the week on which HARBOURSIDE hosts public events, or

(iii)     the types of musical instruments, or genre of music or other entertainment, which HARBOURSIDE elects to offer when it hosts public events.

197.     The TOWN has refused to recognize HARBOURSIDE as an "outdoor venue" under its Noise Ordinance despite acknowledging that HARBOURSIDE has complied with all those conditions delineated in the Harbourside PUD and Site Plan concerning the use of the Amphitheater as an "outdoor venue" (including acceptance of the exterior sound analysis provided by HARBOURSIDE's sound consultant); continues to demand that HARBOURSIDE seek and obtain special event permits for each and every public event HARBOURSIDE wishes to host at the Amphitheater; continues to impose terms and conditions upon HARBOURSIDE's use of the Amphitheater that exceed the conditions provided by the TOWN's Noise Ordinance; continues to impose terms and conditions upon HARBOURSIDE's use of the Amphitheater that have no genuine lawful basis under its Code such as dictating the hours, days and specific musical instruments or genre of music that HARBOURSIDE may wish to offer to the public at the Amphitheater, and refuses to recognize and honor HARBOURSIDE's vested rights under the Harbourside PUD and Site Plan.

198.     While the TOWN has consistently monitored exterior sounds created by HARBOURSIDE by measuring sound levels at a receiving property (in this case, the Water's Edge residential zone across the Intracoastal Waterway (and to the west) from Harbourside Place), the TOWN has asserted a continuing right to use the Special Event Permits process to

-65-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

regularly impose upon HARBOURSIDE exterior sound standards measured at the receiving property that are more stringent than those prescribed by the TOWN's Noise Ordinance.

199.    The TOWN has not declared HARBOURSIDE in violation of the TOWN's Noise Ordinance; HARBOURSIDE has remained in compliance with the TOWN's Noise Ordinance. Instead, the TOWN has regulated content of expression protected by the First Amendment through its special event permit scheme especially to restrain HARBOURSIDE, and then has declared violations of those conditions to restrict protected speech and musical content, and otherwise interfere with private property rights.

200.    All conditions precedent to the bringing of this action have occurred, have been performed, have been excused, or have been rendered futile or incapable of performance. Without limitation, the TOWN's treatment of HARBOURSIDE (through the terms and conditions imposed by its technical staff, and the directives of the Town Manager) demonstrates that the TOWN has no intention of treating HARBOURSIDE in accordance with the TOWN's Noise Ordinance or the Development Orders but instead intends to continue its "special" treatment of HARBOURSIDE without end, in an arbitrary and capricious manner and without legal basis.

201.    The parties are at odds as to their respective rights and duties.

202.    The interests of the parties to this dispute are adverse and concrete, and all necessary parties are within the jurisdiction of this Court.  HARBOURSIDE does not merely seek legal advice on questions raised out of curiosity or in the abstract, but seek this Court's determination of the respective rights of the parties premised upon an ascertainable state of facts. Resolution of the dispute between and among the parties is of utmost importance, as the

-66-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

declarations by this Court will directly determine the existence of valuable rights (and corresponding obligations) which are held by one or more parties under the TOWN's Noise Ordinance and the Development Orders, and shall guide the parties as they proceed in their daily operations and administrative processes.  The declarations sought by HARBOURSIDE are critical as well because of the harm the TOWN's actions have created, and continue to create, upon the business interests of HARBOURSIDE, the interests of its many commercial tenants whose businesses greatly benefit from HARBOURSIDE's active use of the Amphitheater, and the interests of the public at large who regularly enjoy the free outdoor entertainment hosted by HARBOURSIDE at the Amphitheater.

203.    There exists a practical need for declaratory and injunctive relief; this cause presents the Court with a controversy based on concrete differences of opinion as to the legal and equitable rights and interests of the parties, the proper interpretation of statutory rights and performances thereunder, and the obligations of the parties under the tenancy arrangement alleged.  The rights of the parties are dependent upon the law applicable to their respective positions.

204.    The claims and issues on which HARBOURSIDE seeks declaratory and injunctive relief are ripe for adjudication.  A prompt and final determination of the rights, liabilities and interests of the various parties is absolutely essential, given that the issues raised by this action directly affect the further relationships of the parties concerning HARBOURSIDE's use of the Amphitheater and the success of Harbourside Place.

205.    To give full force and effect to this Court's final declarations, HARBOURSIDE is entitled to the granting of further relief, including temporary and/or permanent injunctive

-67-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

relief, and supplemental relief including writs of mandamus directed against the TOWN as this Court may deem appropriate based on its declarations of rights and remedies.

206.    HARBOURSIDE is entitled to temporary and permanent injunctive relief against the TOWN, including a mandate that the TOWN enforce its Noise Ordinance and the Harbourside PUD and Site Plan as written, and preventing the TOWN's enforcement of the manufactured conditions alleged herein including the TOWN's unlawful restraints on speech and musical expressions. Irreparable harm will result if temporary and/or permanent injunctive relief is not entered; an adequate remedy at law is unavailable to HARBOURSIDE; there is a substantial likelihood of HARBOURSIDE's success on the merits; and the granting of injunctive relief against the TOWN will serve the public interest by compelling the TOWN simply to enforce its existing Noise Ordinance, and the Harbourside PUD and Site Plan, fairly and not in a discriminatory or unconstitutional manner towards HARBOURSIDE.  The TOWN's continued demand that HARBOURSIDE obtain Special Event Permits in order for HARBOURSIDE to lawfully use the Amphitheater is contrary to the TOWN's Noise Ordinance and the Development Orders.

WHEREFORE, Plaintiff, HARBOURSIDE PLACE, LLC, requests entry of Judgment against Defendants, THE TOWN OF JUPITER, FLORIDA and JUPITER COMMUNITY REDEVELOPMENT AGENCY, granting the following relief:

(a)    declaration that:

(i)    the Court has jurisdiction over this cause and these parties;

(ii)    HARBOURSIDE has satisfied all conditions delineated in the Development Orders concerning the use of the Amphitheater as an

-68-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

"outdoor venue", and is an "outdoor venue" under the TOWN's Noise Ordinance;

(iii)     as an "outdoor venue" under the TOWN's Noise Ordinance, HARBOURSIDE is entitled to host events producing exterior sounds, subject to compliance with Sections 13-125(a) and (b) of the TOWN's Noise Ordinance and the hours of operation specified in Table 2 under Section 13-125(a) of the Noise Ordinance;

(iv)     if HARBOURSIDE is not an "outdoor venue" under the TOWN's Noise Ordinance, HARBOURSIDE is entitled at a minimum to host events producing exterior amplified sounds, subject to compliance with Sections 13-125(a) and (b) of the TOWN's Noise Ordinance and the hours of operation specified in Table 1 under Section 13-125(a) of the Noise Ordinance;

(v)     in any event, HARBOURSIDE is not obligated to seek or obtain Special Event Permits for each and every regularly-scheduled public event HARBOURSIDE wishes to host at the Amphitheater;

(vi)     the TOWN has acted arbitrarily, capriciously and unconstitutionally against HARBOURSIDE with respect to the imposition of the Special Event Permits process, and/or its imposition against HARBOURSIDE of terms and conditions relating to its use of the Amphitheater, and continues to do so;

-69-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(vii)    additionally and alternatively, the TOWN has imposed, and continues to impose, terms and conditions against HARBOURSIDE relating to its use of the Amphitheater that exceed the TOWN's lawful authority under its Noise Ordinance and the Harbourside PUD and Site Plan, and are unconstitutional;

(viii)    while the TOWN may fairly enforce its Noise Ordinance, and the Harbourside PUD and Site Plan, according to their terms, the TOWN does not possess the lawful authority to dictate:

(1)    the hours during which HARBOURSIDE hosts public events that are more restrictive than the hours expressly permitted by the Noise Ordinance;

(2)    the days of the week on which HARBOURSIDE hosts public events, or

(3)    the types of instruments, or genre of music or other entertainment, which HARBOURSIDE elects to offer when it hosts public events;

(ix)    the TOWN pursuant to its Noise Ordinance shall monitor HARBOURSIDE's compliance by measuring exterior sounds created by HARBOURSIDE at the Water's Edge residential property line (the receiving property), provided that the calculations used to determine whether HARBOURSIDE is compliant with the Noise Ordinance are performed in strict accordance with Section 13-125(b)-(d) thereof, and

-70-

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

notwithstanding ambiguous text in the Development Orders suggesting sound monitoring for Noise Ordinance purposes might occur at HARBOURSIDE's property line;

(x)    as long as HARBOURSIDE complies with the standards codified at Table 2 of Code Section 13-125(a) and as calculated under Section 13-125(b), HARBOURSIDE has fully complied with the TOWN's Noise Ordinance and shall be free from interference or violation notices by the TOWN;

(xi)    That the only measuring point prescribed by the Noise Ordinance for enforcement against Harbourside Place is at the property line of another property impacted by sound being produced at Harbourside Place by HARBOURSIDE or its employees and agents;

(xii)    Enforcement of violations of the Noise Ordinance or any Special Event Permit conditions related to amplified sound against HARBOURSIDE require that the TOWN present evidence to the Special Magistrate showing that the alleged violations arise from sounds being produced at Harbourside Place by HARBOURSIDE or its employees and agents and from the other source;

(xiii)    Enforcement of violations of the Noise Ordinance or any Special Event Permit conditions related to amplified sound against HARBOURSIDE without considering the impacts of ambient sound violate HARBOURSIDE's rights to due process;

-71-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

(xiv)   Notices of Violation of the Noise Ordinance or conditions of Special Event Permits issued by the Town that do not notify HARBOURSIDE how it violated the Noise Ordinance or conditions of Special Event Permits are facially invalid under Florida law, and violate HARBOURSIDE's rights to due process;

(xv)   Submission of the annual calendar of events (Approved Event Program) for review by the CRA and Police Department, as required by the Harbourside PUD and Site Plan, was for the limited purpose of addressing public safety and traffic impacts, and not to impose sound restrictions;

(xvi)   As of the date of this Amended Complaint, the annual calendar of events (Approved Event Program) formally submitted by HARBOURSIDE on December 22, 2015, is in effect and governs which events may be presented at the Amphitheater without a Special Event Permit;

(xvii) HARBOURSIDE had coordinated with the CRA and Police Department on the relevant aspects of the annual calendar of events (Approved Event Program) formally submitted on December 22, 2015, throughout all of 2015 in conjunction with the special permitting process;

(xviii) Any provision of the Harbourside PUD or Site Plan that the Approved Event Program "...may be repealed in part or total by the Town, if the Town determines the exempt events are creating significant

-72-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

impacts that warrant revisions to the criteria and requirements….” is unlawful;

(xix)   Even if HARBOURSIDE had violated terms and conditions of any Special Event Permits, which HARBOURSIDE disputes, such violations would not constitute a failure on the part of HARBOURSIDE to “at all times be in compliance with all applicable federal, state and local laws, statutes, rules and regulations;”

(xx)   HARBOURSIDE has not breached any provision of the CRA Agreement; and

(xxi)   Section 25 is not a material term of the CRA Agreement, and therefore, the CRA may not withhold Tax Increment Incentive Payment(s) due to HARBOURSIDE under the CRA Agreement;

(xxii)  The Noise Ordinance Amendment’s declaration that the failure to provide the TOWN with the sound data report, or the refusal to provide the TOWN with access to the sound limiter shall be an irreparable violation, exceeds the TOWN’s lawful authority;

(xxiii) The Noise Ordinance Amendment is vague, ambiguous and fails to provide HARBOURSIDE adequate notice of its proscriptions, and is legally unsound and unenforceable;

(b)   the granting of further relief, including temporary and/or permanent injunctive relief, and supplemental relief including writs of mandamus directed against the TOWN, as this Court may deem appropriate based on its declarations of the parties’ rights and

-73-

**BERGER SINGERMAN**

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
*t:* 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

obligations, including without limitation, orders and judgments mandating that the TOWN:

    (i) refrain from requiring HARBOURSIDE to apply for Special Event Permits for its regularly-scheduled outdoor venue events;

    (ii) refrain from any communications or actions that tend to dictate or prohibit, or seek to dictate or prohibit, the use of any particular type of musical instruments (including percussion) or any genre of music, at Harbourside Place, including the Amphitheater;

    (iii) refrain from any communications or actions that tend to dictate or prohibit, or seek to dictate or prohibit, HARBOURSIDE's use of the Amphitheater on any particular days of the week, or at any particular hours of the day or night, subject only to the requirement that HARBOURSIDE maintain compliance with Sections 13-125(a) and (b) of the TOWN's Noise Ordinance; and

    (iv) treat HARBOURSIDE and its tenants fairly with respect to Harbourside Place in all respects;

  (c) attorneys' fees and costs pursuant to Section 28 of the Economic Development Agreement;

  (d) such further declarations, and such further relief, as the Court deems necessary and proper to effectuate its declarations of rights and remedies, and reserving jurisdiction to consider awards of damages and professional fees resulting from the TOWN's unlawful activities and exercises of governmental powers without cause or legal justification.

BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

## COUNT V – ANTICIPATORY BREACH OF CONTRACT BY THE JUPITER COMMUNITY REDEVELOPMENT AGENCY

207.    The allegations set forth in paragraphs 1 through 154 are re-alleged and incorporated as if fully set forth herein.

208.    This is an action for anticipatory breach of the CRA Agreement by the CRA.

209.    The CRA Agreement constitutes a contract between HARBOURSIDE and the CRA.

210.    HARBOURSIDE has performed, and continues to perform, all of its duties under the CRA Agreement.

211.    Under the CRA Agreement, the CRA has a duty to make the Tax Increment Incentive Payment(s) to HARBOURSIDE (the first of which is due no later than May 1, 2016).

212.    The CRA through its November 20 Notice of Breach has distinctly, unequivocally and absolutely evidenced its refusal to perform its duty to make the Tax Increment Incentive Payment(s) to HARBOURSIDE.

213.    HARBOURSIDE is entitled to specific performance of the CRA Agreement by the CRA pursuant to Section 14 of the CRA Agreement, including the payment of the Tax Increment Incentive Payment(s) as they become due to HARBOURSIDE.

WHEREFORE, Plaintiff HARBOURSIDE PLACE, LLC, demands judgment against Defendant, JUPITER COMMUNITY REDEVELOPMENT AGENCY, for specific performance (payment of the Tax Increment Incentive Payment(s) due to HARBOURSIDE), attorneys' fees and costs pursuant to Section 28 of the Economic Development Agreement, and for such other relief that this Court deems just and proper.

-75-

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

## COUNT VI – BREACH OF CONTRACT BY THE JUPITER COMMUNITY REDEVELOPMENT AGENCY

214.    The allegations set forth in paragraphs 1 through 154 are re-alleged and incorporated as if fully set forth herein.

215.    This is an action for breach of the CRA Agreement by the CRA.

216.    The CRA Agreement constitutes a contract between HARBOURSIDE and the CRA.

217.    HARBOURSIDE has performed, and continues to perform, all of its duties under the CRA Agreement.

218.    Under the CRA Agreement, the CRA has a duty to make the Tax Increment Incentive Payment(s) to HARBOURSIDE (the first of which was due no later than May 1, 2016).

219.    The CRA through its November 20 Notice of Breach has distinctly, unequivocally and absolutely evidenced its refusal to perform its duty to make the Tax Increment Incentive Payment(s) to HARBOURSIDE.

220.    Despite written demand by HARBOURSIDE, the CRA failed and refused to make the Tax Increment Incentive Payment due to HARBOURSIDE as of May 1, 2016.

221.    HARBOURSIDE is entitled to specific performance of the CRA Agreement by the CRA pursuant to Section 14 of the CRA Agreement, including the payment of the Tax Increment Incentive Payment due to HARBOURSIDE as of May 1, 2016.

WHEREFORE, Plaintiff HARBOURSIDE PLACE, LLC, demands judgment against Defendant, JUPITER COMMUNITY REDEVELOPMENT AGENCY, for specific performance (payment of the Tax Increment Incentive Payment due to HARBOURSIDE),

≡ BERGER SINGERMAN

One Town Center Road | Suite 301 | Boca Raton, Florida 33486
t: 561-241-9500 | f: 561-998-0028 | WWW.BERGERSINGERMAN.COM

attorneys' fees and costs pursuant to Section 28 of the Economic Development Agreement, and for such other relief that this Court deems just and proper.

Respectfully submitted,

BERGER SINGERMAN LLP
Attorneys for Plaintiff
One Town Center Road, Suite 301
Boca Raton, FL 33486
Telephone:  561-241-9500
Facsimile:   561-998-0028

By: /s/ Anthony J. Carriuolo_____
  Mitchell W. Berger
  Florida Bar No. 311340
  mberger@bergersingerman.com
  Anthony J. Carriuolo
  Florida Bar No. 434541
  acarriuolo@bergersingerman.com
  Paul S. Figg
  Florida Bar No. 736619
  pfigg@bergersingerman.com

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this 1st day of August, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on Lyman H. Reynolds, Jr., Esq., ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC, Attorneys for Defendants, 470 Columbia Drive, Bldg. C101, West Palm Beach, FL 33409, via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Anthony J. Carriuolo_____
  Anthony J. Carriuolo
  Florida Bar No. 434541

-77-