UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:16-CV-80170-KAM

**HARBOURSIDE PLACE, LLC,** a Florida
limited liability company,

        Plaintiff,

vs.

**TOWN OF JUPITER**, a Florida municipal
corporation, and **JUPITER COMMUNITY
REDEVELOPMENT AGENCY**, a dependent
special district of the Town of Jupiter, Florida,

        Defendant.
_____/

## TOWN OF JUPITER'S MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, TOWN OF JUPITER ("Town"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Southern District Local Rule 7.1, hereby moves this Court for the entry of final summary judgment in its favor and, in support, states as follows:

## INTRODUCTION

On August 1, 2016, Plaintiff, HARBOURSIDE PLACE, LLC, filed its Second Amended and Supplemental Complaint for Relief Under 42 U.S.C. §1983, For Declaratory and Injunctive Relief, and For Damages [DE 67] (hereinafter "Complaint"), against both Town and Town's Community Redevelopment Agency ("CRA"). As to Town, Counts I, II, and III of the Complaint attempt to set forth causes of actions for violations of the First, Fifth, Fourth, and

1

Fourteenth Amendments of the United States Constitution, respectively. In addition, Count IV attempts to state a cause of action for Declaratory and Supplemental Relief.

Plaintiff's claims against Town are primarily based upon the Town's adoption of Ord. 1-16. Plaintiff alleges that Town adopted Ordinance 1-16 to target Harbourside, control the content of musical performances at the amphitheater, and require the amphitheater to undergo another outdoor venue approval process. *DE 67, ¶ 130*. However, as outlined in greater detail below, it is clear from the language of Ord. 1-16 that it does not target Plaintiff, it is content neutral, it is narrowly tailored to serve a governmental interest, it leaves open ample channels for communication, and does not constitute a total ban of music or affect the quality, quantity or content of the music or expression.

Town maintains that Plaintiff's Complaint fails even to pass muster at the pleading stage, but nevertheless will demonstrate through this Motion for Summary Judgment that there exists no genuine issue as to any material fact that: (a) Town has not imposed prior restraints upon Plaintiff and, thus, has not violated its First and Fourteenth Amendment rights; (b) Town's Noise Ordinance and special permitting ordinance do not deprive Plaintiff of any procedural or substantive due process rights and, thus, Town has not violated Plaintiff's Fifth and Fourteenth Amendment rights; (c) Town has not unlawfully required Plaintiff to produce private papers and effects and, thus, Town has not violated Plaintiff's Fourth and Fourteenth Amendment rights; and (d) there exists no bona fide controversy between Town and Plaintiff and, thus, Plaintiff is not entitled to declaratory relief. Due to the absence of any genuine issue of material fact as to each of the causes of action Plaintiff attempts to set forth against Town, Town is entitled to summary judgment in its favor as a matter of law.

**MEMORANDUM OF LAW**

A. *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56, in order to prevail on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 344, n. 3 (1986); *Sunderland v. Bethesda Health, Inc.*, 2016 WL 3128652, at *7 (S.D. Fla. 2016). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Harrison v. Culliver*, 746 F.3d 1288, 1289 (11th Cir. 2014). The movant may discharge this burden by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

An issue is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Burgos v. Chertoff*, 274 F. App'x. 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir.1997)0; *Sunderland*, 2016 WL 312852 at *7. The material facts are determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 249. A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

Once the moving party satisfies its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party to produce specific facts through admissible evidence showing that a jury trial is warranted. *Allen*, 121 F.3d at 646. The non-moving party must then go beyond the pleadings and designate specific facts

showing there is a genuine issue for trial, through its own affidavits, or by depositions, answers to interrogatories, and admissions on file. *Porter v. Ray*, 461 F.3d 1315, 1321 (11th Cir. 2006). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"). Although courts construe all reasonable inferences in the light most favorable to the non-moving party, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find... by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1184 (11th Cir. 2003); *Nichols v. CSG Systems, Inc.*, 245 Fed Appx. 937 (11th Cir. 2007). Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. *Celotex*, 477 U.S. at 322.

**B.**   *Count I – No violation of Plaintiff's First or Fourteenth Amendment Rights*

The First Amendment protects the right to play or broadcast recorded music as a form of speech and expression. *Ward v. Rock Against Racism,* 491 U.S. 781, 790 (1989). In order to be permissible, government restrictions on the right to play or broadcast music must be: (1) "content neutral"; (2) "narrowly tailored to serve a significant governmental interest"; and (3) "leave open ample alternative channels for communication." *Id.* at 791; *DA Mortg., Inc. v. City of Miami Beach,* 486 F/ 3d 1254, 1265 (11th Cir. 2007). It is only where licensing procedures are without objective standards that an alleged prior restraint will be deemed unconstitutional. *See Shuttlesworth v. Birmingham,* 394 U.S. 147, 151 (1969). While standards for licensing procedures are flexible and the officials implementing them will exercise discretion, "perfect

4

clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward* at 794 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 110 (1972).

Here, Town has created no condition or regulation on Plaintiff which expressly prohibits Plaintiff from expressing any message or playing any particular genre of music during live musical performances at its amphitheater. It was Plaintiff which represented to Town, through its Statement of Use incorporated into its application for the Subject Permits, that no rap, hip hop, heavy metal, or rock music would be played. Town merely accepted these representations and required Plaintiff's special events only to be consistent with the representations made in the Statements of Use. The only condition imposed by Town was the prohibition of bass, drum, or percussion instruments, which were created due to the sound emitted by these instruments; not due to any message which may be conveyed by genres which may utilize these instruments. Indeed, Town did not condition the issuance of the Subject Permits upon the prohibition of rap, hip hop, heavy metal or rock music. Thus, the conditions on Plaintiff's ability to play and broadcast music are content neutral because they do not relate to the message to be conveyed by the music; the conditions are narrowly tailored to serve a significant government interest of protecting surrounding residents from noise which could constitute a nuisance; and the conditions leave open ample alternative channels for communication because they do not constitute a total ban or affect the quality, quantity, or content of the music.

Ord. 1-16 likewise does not violate the First Amendment because it is narrowly tailored to serve a compelling government interest, which is, according to the WHEREAS clauses, to "more appropriately regulate sound" and to clarify the regulations "pertaining to the measurement of sound and the amplification of sound outdoors" in furtherance of the public's health, safety and welfare. *DE 67-13, p. 2*.

Ord. 1-16 amends the definition of "outdoor venue" under Code §13-1 to clarify that the purpose of an outdoor venue is to play live music and announcements more times than permitted under Chapter 27 of the Code. Ord. 1-16 also amends Code §13-86 to clarify the requirements for Town approval of an outdoor venue such as a site plan showing sound attenuation located on the property to minimize "the projection of sound amplification beyond the surrounding upland property lines of a proposed outdoor venue." DE 67-13, pp. 3-4. Ord. 1-16 also amends §13-86 to clarify that sound levels from an outdoor venue shall not exceed the exterior decibel levels established for the zoning district in which the outdoor venue is located and that the sound level from the outdoor venue shall meet the sound levels established for properties in the zoning districts of surrounding properties. *Id.* at p. 4. Ord. 1-16 also amends Code §13-125 to *increase* the allowable exterior sound level for approved outdoor venues in a mixed use sound zone on properties without residential from 60 dB(A) to 65dB(A). Therefore, Plaintiff (whose property is in a mixed use sound zone without residential) will be allowed to produce exterior sound up to 65 dB(A) (instead of 60dB(A)) measured at a 3 minute Leq once it meets the requirements for an outdoor venue contained in the Town's Code.

      **i.**    **Town's conditions and Ord. 1-16 are content neutral**

Content neutrality depends upon whether a restriction was adopted due to disagreement with the message conveyed by the music, and the government's purpose is the controlling factor in making this determination. *Ward* at 792. An ordinance is content neutral if its predominant purpose is unrelated to the suppression of free expression. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986). An ordinance designed to control noise levels and to prevent interference with surrounding residential areas will be deemed to be content neutral. *See Ward* at 792. Thus, even where a regulation may have more of an effect on a particular genre of music,

they will nevertheless be deemed content-neutral if the government's primary concern is not the content of the music, but rather the impact of the sound on residents. *See Funtana Village, Inc. v. City of Panama City Beach,* 2016 WL 375102, *3 (N.D. Fla. 2016)

In determining whether a regulation is content neutral, a court must first determine whether it is *facially* content neutral, after which the court can consider the regulation's justification or purpose. *Reed v. Town of Gilbert,* 135 S. Ct. 2218, 2228 (2015). A regulation will be deemed facially content-based only if its terms target speech based on communicative content and/or draw distinctions based on the message or idea expressed. *See Id.* at 2226-27 (citing *R.A.V. v. St. Paul,* 505 U.S 377, 395 (1992); *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 565 (2011).

The purpose of the conditions of the Subject Permits – prohibiting and/or limiting the use of particular musical instruments – was to control noise levels and to protect Town's residents from interference with the peaceful enjoyment of their properties. There were no conditions created by Town aimed to regulate or restrict the communicative content of the musical performances at Plaintiff's amphitheater. The instruments which Town prohibited and/or limited in use, to wit, bass, drums, and percussion instruments, were so limited because past experience demonstrated that these instruments created the greatest noise impact on surrounding residential areas. Thus, because the predominant purpose of this condition imposed by Town was to control noise levels, the condition is content neutral.

The amendments to the Code outlined in Ord. 1-16 are content neutral because they do not relate to the message of the music and are narrowly tailored to serve a governmental interest, i.e., to protect the surrounding residential neighborhoods from noise which may constitute a

nuisance. Ord. 1-16 also leaves open ample channels for communication and does not constitute a total ban of music or affect the quality, quantity or content of the music or expression. *See Funtana Village, supra*.

There is absolutely no evidence that Ord. 1-16 was adopted to specifically target Plaintiff. The text amendment was proposed by Town staff in December 2015, after Plaintiff, which had proposed its own text amendment in June 2015, decided to indefinitely postpone its request in November 2015.[1] In December 2015, Town staff recommended "changes to how sound is measured on properties **Town wide**; modify exemption for special permits; amend the definition of an outdoor venue and provide clarification to existing regulation…" [Emphasis added]. *See DE 56-2; DE 44-14, p. 3*. The amendments to the Noise Ordinance were "necessary to more appropriately regulate sound" in the Town. *DE 44-14, p. 17*. Plaintiff has failed to present any evidence, other than its self-serving conclusory allegations, that these amendments only apply to Plaintiff. Accordingly, Plaintiff's claim that the amendments exclusively apply to Plaintiff has no merit.

There is also no evidence to support Plaintiff's claim that the amendments to the Code outlined in Ord. 1-16 prohibit them from playing any music at the amphitheater. Specifically, Plaintiff claims that as a result of the changes to § 13-125(b), the Town is no longer measuring sound at instantaneous levels, but rather, only measuring sound at peak levels and, as a result, it is impossible for them to play any music which can be heard at the back of the amphitheater

---

[1] On or about June 25, 2015, Plaintiff requested a text amendment to § 13-86 which sought to change the measurement of sound emanating from the amplified music on the Plaintiff property line, which is the source of the amplified sound being produced, to the property line of adjacent properties which receive the amplified sounds. However, on November 6, 2015, Plaintiff requested a postponement of this request to a date uncertain.

without exceeding 65dB(A) at their property line. However, there is no evidence to support Plaintiff's claims.

First, there is absolutely no objective testing to support Plaintiff's claims. Plaintiff's own expert, David Parzych, testified that he has not taken any measurements of the sound level being produced since the passage of Ord. 1-16. Secondly, it is undisputed that the Town has not enforced the peak measurement level in§ 13-125(b)(2) on Plaintiff nor has Town issued Plaintiff any notices of violation pursuant to Ord. 1-16. Rather, the only enforcement and measurement used by the Town has been the three minute A-weighted Leq. Furthermore, it is undisputed that Plaintiff can implement further attenuation measures for the amphitheater to bring them in compliance with the Code. Plaintiff's own expert, Mr. Parzych, conceded to this fact. However, Plaintiff simply does not want to spend the money on such measures.

  ii. **Town's conditions and Ord. 1-16 are narrowly tailored to serve a significant government interest**

A government has been held to have "a substantial interest in protecting its residents from unwelcomed noise." *Ward* at 796; *see also Kovacs v. Cooper,* 336 U.S. 77, 86-87 (1949)(holding a government has a valid interest in protecting public forums from excessive noise). "A regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative," as long as the regulation is not "substantially broader than necessary to achieve the government's interest." *Ward* at 800.

The conditions in the Subject Permits were implemented in response to prior problems at other business venues which amplified music outdoors. Specifically, Town has received complaints from residents in the past concerning the noise level coming from outdoor amplified music at other venues. Thus, Town narrowly tailored the conditions on the Subject Permits to

9

mitigate noise impacts of amplified music and, particularly, the more intense noise impacts resulting from drums, bass, and percussion instruments. As such, these conditions are narrowly tailored to serve the government interest of protecting residents from unwanted noise which could constitute a nuisance. Furthermore, Plaintiff agreed to abide by the special permit process set forth in the special permit ordinance.

Likewise, the amendments to the Code outlined in Ord. 1-16 are narrowly tailored to serve a governmental interest, i.e., to protect the surrounding residential neighborhoods from noise which may constitute a nuisance. It is clear from the face of Ord. 1-16 that the amendments to the Code were necessary to more appropriately regulate sound in the Town.

### iii. Town's conditions and Ord. 1-16 leave open ample alternative channels for communication

Where a condition does not impose a total ban, but rather imposes only restrictions targeted to reduce sound levels "so as not to intrude on the peace and quiet of neighborhood residents[,]" then the condition leaves open ample channels for alternative expression. *DA Mortg., Inc. v. City of Miami Beach,* 486 F.3d 1254, 1268 (Fla. 2007). The Subject Permits place conditions on amplified music in order to protect Town's residents from the adverse impacts of unwanted loud noises. The conditions do not affect the quality, quantity, or content of the music, nor do they impose a total ban on music.

Town's special permit ordinance requires the satisfaction of nine criteria as a prerequisite to the issuance of a permit and the principle criterion is the consideration of public health, safety, and welfare. The ordinance further requires, prior to the issuance of a permit, consideration as to whether a nuisance can be prevented, whether negative audible effects will occur, and whether impacts to residents will be minimized, and the ordinance authorizes noise limitations more

restrictive to the present code for the benefit of surrounding uses, including surrounding residential uses. Plaintiff agreed to abide by the special permit process set forth in this ordinance. Now Plaintiff contends that Town's conditions, which are authorized by the ordinance to which Plaintiff assented, constitute unlawful prior restraint. However, Plaintiff has presented no legal or factual support for this claim that a prohibition or limitation on the use of instruments with significant noise impacts in turn amounts to a prohibition on particular genres which again in turn amounts to a restriction on the content of the music to be performed. Town has only imposed restrictions on the instruments to be used; it has not imposed restrictions on musical genres or musical content. Moreover, even if the Court could find a question of fact as to whether Town restricted the types of genres to be performed, for Plaintiff's claim to survive, there must be a particular message or idea which can be conveyed only through rap, hip hop, heavy metal, and rock music which cannot be conveyed through other types of music such as reggae, jazz, and blues. Plaintiff has failed to produce any evidence which would demonstrate the content or message which could only be conveyed through these particular genres which Town allegedly sought to restrict.

Moreover, Ord. 1-16 leaves open ample channels for communication and does not constitute a total ban of music or affect the quality, quantity or content of the music or expression. While Plaintiff asserts that the peak measurement in Ord. 1-16 prevents them from playing any music so that it can be heard in the back of the amphitheater, this argument is not supported by any record evidence. Plaintiff's expert conceded he has not taken any measurements since the passage of Ord. 1-16. Further, it is further undisputed that Plaintiff could easily implement further attenuation measures to be in compliance with the Code. Accordingly, Town is entitled to summary judgment in its favor as to Count I.

### C.     *Count II – No violation of Plaintiff's Fifth or Fourteenth Amendment Rights*

#### i.    **Plaintiff has not been deprived of substantive due process rights**

"Substantive due process protects the rights that are fundamental and implicit in the concept of ordered liberty." *Greebriar Vill., LLC v. Mountain Brook, City,* 345 F.3d 1258, 1262 (11th Cir. 2003) (quoting *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir. 1994). "[A]reas in which substantive rights are created only by state law… are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" *McKinney* at 1556 (citing *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229 (1985)). Property rights are not created by the Constitution and, therefore, they are not fundamental rights. *Greenbriar Vill., LLC* at 1262*; see also DeKalb Stone, Inc. v. County of DeKalb, Ga.,* 106 F.3d 956, 959 (11th Cir. 1997)("It is well established that land use rights, as property rights generally, are state-created rights."). Moreover, the enforcement of zoning regulations is an executive act which does not create a basis for a substantive due process claim. *DeKalb Stone* at 959-60; *see also Boatman v. Town of Oakland,* 76 F.3d 341, 346 (11th Cir. 1996)(no substantive due process exists where a property owner alleges town executives arbitrarily and capriciously refused to issue a certificate of occupancy, which is a state-created land use right). "Federal courts must not usurp the roles of agencies, review boards, and state courts in reviewing the wisdom of executive actions." *DeKalb Stone* at 960.

There is no evidence that Plaintiff has been deprived of a fundamental right that would trigger substantive due process protections. It is Plaintiff's position that the Town's alleged "failure" to include in the Subject Permits the substance of its Noise Ordinance requiring the an accounting of ambient sound levels when enforcing noise violations renders the Subject Permits to be arbitrary and capricious and in violation of substantive due process. However, this

12

argument fails for several reasons. Primarily, other than its own argumentative allegations, Plaintiff has presented no actual evidence to demonstrate that Town failed to consider ambient noise when enforcing its noise ordinance. Additionally, there is no fundamental right to have ambient noise considered when enforcing a noise ordinance; such is a locally created right land use right.

Moreover, Ord. 1-16, on its face, has at least two rational bases—"to more appropriately regulate sound" and to "further the public health, safety and general welfare" by clarifying the measurement of sound and the amplification of sound outdoors. As argued *supra*, property rights are not fundamental rights entitled to substantive due process protection. *McKinney, DeKalb Stone, supra.* The exception to this rule is if an individual's state-created rights are infringed by a legislative act. *Lewis v. Brown,* 409 F.3d 1271, 1273 (11th Cir. 2005)(per curiam). In that situation, the substantive component of the Due Process Clause generally protects the individual from arbitrary and irrational action by the government. "Substantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard." *Foley v. Orange County*, 638 Fed. Appx. 941, 943-44 (11th Cir. 2016)(quoting *Kentner v. City of Sanibel*, 750 F.3d 1274, 1278 (11th Cir. 2014), *cert. denied*, --U.S.--, 135 S.Ct. 950, 190 L.Ed.2d 831 (2015)). The rational basis test is "highly deferential" and to survive this minimal scrutiny, the challenged provision need only be rationally related to a legitimate government purpose. *Id.* at 944. Under rational basis scrutiny, governments are not required to convince the courts of the correctness of their legislative judgments. *Kentner*, 750 F.3d at 1281. "Rather, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id*.

Plaintiff has failed to meet its burden of convincing this Court that Ord. 1-16 lacks a rational basis and that the legislative facts on which Ord. 1-16 is based could not reasonably be conceived to be true by the Town's decision maker. Accordingly, Plaintiff's substantive due process claim fails to survive rational basis scrutiny.

### ii.  Plaintiff has not been deprived of procedural due process rights

Property rights created by state law are entitled only to procedural due process. *McKinney,* 20 F.3d at 1556. State-created rights may be infringed by the state as long as certain procedures are followed. *Id.* Procedural due process only protects against an unfair process – not against the deprivation of rights – and, thus, a procedural due process violation has not occurred "unless and until the state fails to provide due process." *Id.* In other words, the unavailability of adequate remedies is an element of a procedural due process claim. *Flagship Lake County Development Number 5, LLC v. City of Mascotte,* 559 Fed. Appx. 811 (11th Cir. 2014).

Here, Plaintiff has failed to present evidence that post-deprivation remedies were unavailable or inadequate with respect to Town's alleged failure to consider ambient noise levels when enforcing its noise ordinance. Quite to the contrary, the record evidence establishes that remedies were available to Plaintiff. Specifically, On February 11, 2015, Town issued a Notice of Violation to Plaintiff in part due to its exceedance of the permitted decibel level. Following the issuance of this and other Notice of Violations, a hearing took place before a Code Compliance Special Magistrate on March 11, 2015 at which Plaintiff had the opportunity to respond to the alleged violations, to present oral or written testimony regarding same, to present witnesses, cross-examine witnesses against Plaintiff, and to be represented by counsel. Following the issuance of an order finding Plaintiff to be in violation of Town's code and ordering Plaintiff to pay a fine, Plaintiff then appealed the decision via an April 10, 2015 Petition

for Writ of Certiorari with the 15th Judicial Circuit Court, which affirmed the Special Magistrate's Orders. Plaintiff has presented no evidence to demonstrate that these were inadequate post-deprivation remedies such that it was deprived of its procedural due process.

Further, with respect to Ord. 1-16, there is absolutely no evidence that the passage of Ord. 1-16 violated Plaintiff's procedural due process rights. There is no evidence that the notice of the public hearing on Ord. 1-16 was not provided or that Plaintiff was deprived of an opportunity to be heard at the meetings that were held on Ord. 1-16. Accordingly, Town is entitled to summary judgment in its favor as to Count II.

    **D.**    *Count III – No violation of Plaintiff's Fourth or Fourteenth Amendment Rights*

To prevail on a claim under the Fourth Amendment, a party must establish (1) that a search and seizure occurred of his person, house, papers, or effects which invaded upon the claimant's reasonable expectation of privacy, and that said search was conducted by an agent of the government and (2) that the challenged search and seizure was "unreasonable," because all searches and seizures are not proscribed by the Fourth Amendment. *Katz v. United States,* 389 U.S. 347 (1967); *United States v. Bachner,* 706 F.2d 1121 (11th Cir. 1983); *Elkins v. United States,* 364 U.S. 206, 222 (1960). These requirements are "separate and distinct, and both must be met before a violation of an individual's rights guaranteed by the fourth amendment can occur." *Ball v. State of Ga.,* 733 F.2d 1557, 1559-60 (11th Cir. 1984)(citing *Rawlings v. Kentucky,* 448 U.S. 98, 112 (1980)). Consensual searches are excepted from the Fourth Amendment requirements of a warrant and probable cause. *U.S. v. McBean,* 861 F.2d 1570, 1572-3 (11th Cir. 1988)(citing *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973)); *Illinois v. Rodriguez,* 497 U.S. 177, 183 (1990).

The alleged basis for Plaintiff's Fourth Amendment claim is that the Development Order and Subject Permits require Plaintiff to produce its sound limiter and iPad sound level meter. However, prior to its enactment, Plaintiff agreed to the conditions of the Development Order, among which is Condition 13 of Resolution 2-13, which requires Plaintiff to produce a sound report prior to any amplified sound being transmitted outdoors to ensure compliance with Town's sound regulations. Plaintiff also agreed to the use of Town's special permitting process set forth in the Special Permitting Ordinance. Thus, by agreeing to the Development Order and the use of the Special Permitting Ordinance, Plaintiff consented to producing the sound limiter and iPad sound level meter along with sound reports. Moreover, the sound limiter readouts consist of data compiled from audible sounds amplified over an open, public space. Thus, Plaintiff has failed to produce evidence sufficient to demonstrate a reasonable and legitimate expectation of privacy in the sound limiter or the reports generated by the sound limiter.

Also, there is no evidence that Ord. 1-16 violates Plaintiff's Fourth Amendment rights. As noted above, Plaintiff agreed to produce its sound limiter and iPad sound level meter prior to the adoption of Ord. 1-16. Thus, Plaintiff's claim that the amendments in Ord. 1-16 regarding the inspection of the sound limiter and data constitute an unlawful seizure fail as a matter of law because Plaintiff has no legitimate expectation of privacy in said items. *See McBean, supra.* Accordingly, Town is entitled to summary judgment in its favor as to Count III.

**E.**   *Count IV – Plaintiff is not entitled to declaratory or supplemental relief*

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), permits a court to declare the rights of parties only in cases of "actual controversy." An actual controversy exists when, under all the circumstances, "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." *Perret v. Wyndham Vacation Resorts, Inc.* 889 F. Supp. 1333, 1346 (citing *GTE Directories Publishing Corp. v. Trimen America, Inc.,* 67 F.3d 1563, 1567 (11th Cir.1995) (citation omitted)). Plaintiff must show, at a minimum: (1) it has suffered some actual or threatened injury as a result of the alleged conduct of Town; (2) the injury fairly can be traced to the challenged action; and (3) it is likely to be redressed by a favorable decision. *GTE Directories*, 67 F.3d at 1567. (citations omitted).

In order to obtain declaratory relief under Section 2201, Plaintiff must show that there is a substantial likelihood that it will suffer injury in the future. *Incredible Investments, LLC v. Fernandez-Rundle*, 984 F. Supp. 2d 1318, 1323-4 (S.D. Fla. 2013)(citing *Walden,* 669 F.3d at 1284). "Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* (citing *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1347 (11th Cir.1999) (quoting *Emory v. Peeler,* 756 F.2d 1547, 1552 (11th Cir.1985)) (internal quotations omitted)). While the Declaratory Judgment Act confers discretion on the courts to issue a declaratory judgment, "it does not impose a duty to do so." *Dear v. Q Club Hotel,* slip copy, *LLC*, 2015 WL 4273054, at * 2 (July 14, 2015) (citing *Ameritas Variable Life Ins. Co. v. Roach,* 411 F.3d 1328, 1330 (11th Cir.2005) (per curiam)). In an action for declaratory relief such as this, where the party moving for summary judgment sets forth facts with citations to documents having evidentiary value so as to demonstrate the absence of a genuine issue of material fact, the movant is entitled to summary judgment. *Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.*, 981 F.Supp.2d 1302, 1305 (S.D. Fla. 2013).

In Counts I, II, and III of Plaintiff's Complaint, Plaintiff seeks declaratory relief which is duplicative to some of the requested declarations sought under Count IV. For instance,

Plaintiff's requests that this Court declare Town acted arbitrarily and capriciously with respect to its Special Permit process, and enforcement of violations of the noise ordinance or any special permit without considering the impacts of ambient sound are both requests for relief duplicative to that found in Count II of the Complaint. Additionally, Plaintiff's request for a declaration that Town lacks authority to limit the types of instruments or genre of music which can be played is duplicative of the relief sought by Plaintiff in Count I of the Complaint. Therefore, to the extent that Count IV of Plaintiff's Complaint is seeking declaratory relief which is duplicative to the relief requested in Counts I, II and III, Town is entitled to summary judgment in its favor as this Court must reject those claims. *See Dear,* 2015 WL 4273054, at * 2 ("Where a party has properly raised an issue in other counts of its pleadings, district courts exercising their discretion will reject claims for declaratory relief addressing that same issue."

As to the remaining requests for declaratory relief, Plaintiff has failed to produce evidence to support its requested relief. The evidence of record demonstrates that Plaintiff's Amphitheater has failed to satisfy the conditions of an outdoor venue and, therefore, is not classified as an outdoor venue. *See DE 102-1* at ¶¶26-27, 30; *DE 99-1* at ¶¶29, 32. Due to Plaintiff's failure to attain certification for outdoor venue status, the Town utilized its special permitting process to facilitate the hosting of musical performances at Plaintiff's amphitheater. *Id.* at 30; *DE 107-1*. Among the provisions of the special permitting ordinance which Plaintiff agreed to utilize is the authorization for Town to impose noise limitations more restrictive than set forth in the code for the benefit of surrounding uses. *DE 41-5; DE 102-1* at ¶34. It is further clear from the record evidence that Plaintiff has, in fact, violated the Development Orders and Special Permit conditions. *See DE 102-1, DE 99-1.* As such, Town is entitled to summary judgment in its favor as to Count IV.

## CONCLUSION

WHEREFORE, Defendant, TOWN OF JUPITER, respectfully requests this Honorable Court enter an order granting summary judgment in its favor as to Counts I, II, III and IV of Plaintiff's Complaint [DE 67], and for any other relief deemed just and proper.

Respectfully submitted,

/s/ Lyman H. Reynolds, Jr.
**LYMAN H. REYNOLDS, JR.**
FBN: 380687

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof has been furnished by CM/ECF to all parties on the attached Counsel List this 10th day of January, 2017.

**ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC**
470 Columbia Drive, Bldg. C101
West Palm Beach, FL  33409
Phone: 561-688-6560/Fax: 561-688-2343
E-Service: service_LHR@rrbpa.com
Email: lreynolds@rrbpa.com
Attorneys for Defendant Town of Jupiter

/s/ Lyman H. Reynolds, Jr.
LYMAN H. REYNOLDS, JR.
Florida Bar No: 380687

STYLE: HARBOURSIDE PLACE v. TOWN OF JUPITER & JUPITER CRA
CASE NO.: 9:16-CV-80170-KAM
OUR FILE NO.: 16-107

## COUNSEL LIST

MITCHELL W. BERGER, ESQ.
ANTHONY J. CARRIUOLO, ESQ.
Berger Singerman, LLP
One Town Center Rd., Suite 301
Boca Raton, FL 33486
Counsel for Plaintiff
PHONE: 561-241-9500
DIRECT: 954-712-5146
FAX: 561-998-0028
E-SERVICE: acarriuolo@bergersingerman.com
mnewland@bergersingerman.com
drt@bergersingerman.com
mberger@bergersingerman.com
FBN: 311340 / 434541

PAUL S. FIGG, ESQ.
Berger Singerman, LLP
350 E. Las Olas Blvd., Suite 1000
Ft. Lauderdale, FL 33301
Co-Counsel for Plaintiff
PHONE: 954-525-9900
DIRECT: 954-712-5104
FAX: 954-523-2878
E-SERVICE: pfigg@bergersingerman.com
FBN:

LYMAN H. REYNOLDS, JR., ESQ.
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Dr., Bldg. C101
West Palm Beach, Florida  33409
Counsel for Defendants Jupiter & CRA
PHONE: 561-688-6560
FAX: 561-688-2343
E-SERVICE: service_LHR@rrbpa.com
EMAIL: lreynolds@rrbpa.com
   bsmith@rrbpa.com
FBN: 380687