# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 9:16-CV-80170-KAM

**HARBOURSIDE PLACE, LLC,** a Florida
limited liability company,

       Plaintiff,

vs.

**TOWN OF JUPITER**, a Florida municipal
corporation, and **JUPITER COMMUNITY
REDEVELOPMENT AGENCY**, a dependent
special district of the Town of Jupiter, Florida,

       Defendant.

_____/

## TOWN OF JUPITER'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT

Defendant, TOWN OF JUPITER ("Town"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Southern District Local Rule 56.1, hereby files this Statement of Material Facts in Support of its Motion for Final Summary Judgment and states as follows:

1.      On October 19, 2007, Plaintiff, HARBOURSIDE PLACE, LLC ("Plaintiff"), submitted applications for special exception uses, a site plan and a planned unit development (PUD) to include a hotel, marina, restaurants, office, and retail uses. *DE 102-1* at ¶3.

2.      On December 2, 2008, the Town passed and adopted Ordinance 14-08, which authorized the development of the PUD, a mixed use project, and Resolution 25-08, which approved the site plan, special exceptions. *Id.* at ¶4.

3.      Plaintiff submitted an application to amend the previously approved PUD and site plan and on November 16, 2010, the Town passed and adopted Ordinance 44-10 and Resolution

4-10, which approved an amendment to Ordinance 14-08 (PUD) and the site plan approval under Resolution 25-08. *Id.* at ¶6.

4.      After the commencement of construction, Plaintiff submitted construction plans for review for permits and it became apparent that the depth of parking spaces did not meet the standards of Town's zoning code. *Id.* at ¶10.

5.      Rather than submitting revised plans, on November 13, 2012, Plaintiff submitted an application requesting a PUD waiver of the parking requirements to accommodate the reduced depth in the presented plans; however, to justify a waiver of Town's parking requirements, Plaintiff had to provide a public benefit to Town per the PUD requirements. *Id* at ¶¶10-11.

6.      Plaintiff proposed to build a proper covered stage in the area designated as a plaza on the original site plan and made a commitment to install a sound system which would not be a nuisance to the neighbors. *Id.* at ¶11.

7.      On February 5, 2013, Town passed and adopted Ordinance 1-13 which amended Ordinances 14-08 and 44-10 and Resolution 2-13, which amended Resolutions  25-08 and 4-10, all pertaining to Plaintiff's PUD and Site Plan. *Id.* at ¶13.

8.      The Town Council found that the provision of installing a proper stage, and other requirements, qualified as a public benefit to justify the waiver of certain Town parking space requirements, and the ordinance provided a PUD waiver of authorizing reduction of depth of parking stalls in the parking garage in return for providing a proper covered stage and a professional controlled sound system and conditions on use. *Id.*

9.      Condition 10 of Resolution 2-13 required, among other requirements, events proposing amplified sound or music at Plaintiff's amphitheater to require a special event permit. *Id.* at ¶15.

10.     Condition 13 of Resolution 2-13 required Plaintiff to submit a sound report ensuring compliance with Town's sound regulations prior to amplified sound being transmitted outdoors. *Id.* at ¶17.

11.     On September 9, 2013, Plaintiff submitted an application for a text amendment to Code § 13-86. *See DX 014, Plaintiff's Application for Chapter 13 text amendment; see also DX 015, Plaintiff's justification statement for text amendment.*

12.     Plaintiff's September 9, 2013 proposed text amendment sought to increase the decibel levels and change the location of measurement to "the property line of the complainant of an occupied residential or mixed-use residential lot." *Id.*

13.     On April 29, 2014, Plaintiff withdrew its September 9, 2013 application for the text amendment to Code § 13-86. *DX 017, Correspondence from Emily O'Mahoney to Peter Meyer dated 4/29/14.*

14.     In March of 2014, despite Plaintiff's failure to satisfy sound condition requirements, in an effort to assist Plaintiff with the opening of its project, Town issued a permit for the amphitheater canopy because of Plaintiff's written commitment to satisfy the sound requirements. *DE 102-1* at ¶¶23-24.

15.     The amphitheater was approved to be designated as an Outdoor Venue by Resolution 2-13, but it could not obtain status as such for the purposes of Town's noise ordinance until all conditions for approval were met, including complying with the Resolutions and Code requirements for certification. *Id.*at ¶¶26-27.

16.     Plaintiff completed construction and opened its facility in October of 2014, and in December of 2014, Town began issuing special permits for events. *Id.* at ¶28.

17.     The issuance of a certificate of occupancy did not determine Harbourside's compliance with the conditions for becoming an outdoor venue. *Id.* at ¶27.

18.     On June 29, 2015, Plaintiff submitted another application for a text amendment to Code § 13-86. *See DX 023.* Plaintiff sought to amend § 13-86 to change the location of measurement of sound to the property lines of receiving properties. *Id.*

19.     The Town's Planning & Zoning Department reviewed Plaintiff's request for the text amendment to § 13-86 and placed its recommendations in its October 8, 2015 report. *See DX 077; see also DE 99-1 at ¶ 21.*

20.     The Town's consultant, Dugger & Associates, provided input to the Plaintiff's text amendment to § 13-86. *DX 075; see also DE 99-1 at ¶ 22.*

21.     On November 6, 2015, Emily O'Mahoney, the authorized agent of Plaintiff, requested postponement of a hearing before the Town Council on the proposed text amendment to § 13-86. *DX 081; see also DE 99-1 at ¶ 24.*

22.     In December 2015, the Town's Planning & Zoning Department initiated a text amendment to § 13-86. A staff report was prepared and submitted to Council which heard it on first reading on January 5, 2016. *DE 99-1 at ¶ 26; see also DX 085.* However, further action on this text amendment was put on hold pending the mediation in this lawsuit filed by Plaintiff against Town. *DE 99-1 at ¶ 30.*

23.     In the interim, Plaintiff and Town used the Town's special permitting process in order to facilitate Plaintiff in hosting events at its amphitheater. *DE 107-1 at ¶4.*

24.     Since Plaintiff had not been certified as an outdoor venue and its regular event schedule for 2015 could not comply with the noise standards in the Town's Code, Town, in an effort to further assist Plaintiff with the success of its project, proposed using the special event permit process under Article IV, Chapter 27 of the Town Code so Plaintiff could proceed with 2015 events with conditions which address the events' impacts, including noise. *DE 102-1* at ¶30.

25.     Pursuant to §27-293(a)(1)-(9) of Town's Code, the Town Council has codified specific standards which the Town Manager, Planning & Zoning Commission or Town Council must review and confirm to have been met before issuing a special permit. *Id.* at ¶31.

26.     According to this process adopted by the Town Council, the Town Manager, or his designee (here, the Planning & Zoning Department) may approve an application for a special permit only if all of the standards are met. *Id.* at ¶32.

27.     The chief criterion set forth in the special permit ordinance is to consider whether the public health, safety, and welfare will be affected, and the remaining criteria include considerations for whether a nuisance can be prevented, whether negative audible effects will occur, and whether impacts to residents will be minimized. *See DE 41-5.*

28.     Town's special permit ordinance further authorizes noise limitations more restrictive than the present code for the benefit of surrounding uses. *Id.; DE 102-1* at ¶34.

29.     Town attached certain conditions to the permits issued to Plaintiff in an effort to control the sound impacts of the amphitheater events until Plaintiff satisfied the conditions for its venue to become a certified outdoor venue. *DE 107-1* at ¶4.

30.     During the entire special permit process, Town continually modified the conditions of approval for special permits issued to Plaintiff due to complaints received from Town residents. *Id.* at ¶4.

31.     Since Plaintiff began operating Harbourside Place in 2014, Town has received numerous complaints from residents regarding the number and duration of events, sound levels, and the use of percussion instruments, drums, and bass. *DE 99-1* at ¶4.

32.     In fact, since December 2014, and even prior to that time since Plaintiff's October 28, 2014 "soft grand opening," Town has received numerous complaints about the noise and sound coming from Plaintiff's amphitheater through the "Harbourside Place Event Observation Form" on Town's website, which was created to facilitate community input. *Id.*; *DE 102-1* at ¶27.

33.     The modifications to the conditions of approval for special permits issued to Plaintiff were based upon recommendations of Town's acoustical consultant. *DE 107-1* at ¶4.

34.     None of the special permits issued by Town to Plaintiff contained any restriction on the genre of music. *Id* at ¶7; *see also DE 41-1.*

35.     The only document which restricted the genre of music were Statements of Use dated November 14, 2014 and January 20, 2015, which were submitted by Plaintiff for weekly "Live Music" events and which stated "[g]enres will vary, but there will be no rap, hip-hop, heavy metal, rock, etc." *DE 107-1* at ¶7; *see also DE 41-1; DE 41-2.*

36.     The genre restrictions contained in the Statements of Use were voluntarily submitted by Plaintiff. *DE 107-1* at ¶7*; see also DE 41-1; DE 41-2.*

37.     Further demonstrating that Town did not impose genre restrictions and that same were voluntarily submitted by Plaintiff for its "Live Music" events, the Statements of Use submitted by Plaintiff for "Throwback Thursday" events did not include self-imposed restrictions on genre and Town nevertheless issued special permits for the "Throwback Thursday" events. *DE 107-1* at ¶8.

38.     Town's modifications to the conditions of the special permits it issued to Plaintiff was to mitigate adverse impacts of amplified sound from Plaintiff's amphitheater. *Id.* at ¶¶12-16.

39.     In December of 2014, Town added conditions to special permits requiring Plaintiff to provide Town access to its sound limiter when sound is amplified and to provide a report from the sound limiter by noon on Monday following a weekend event. *Id.* at ¶17.

40.     These conditions are contained within §13-86 of Town's Code, which outlines the requirements for certification as an outdoor venue. *Id.*

41.     These conditions were included in the special permits because Plaintiff's facility is not an outdoor venue, but Plaintiff was attempting for it to become certified as such and, therefore, was required to meet these conditions and, further, these conditions were added in an effort to mitigate sound levels from the amphitheater following continuing complaints from nearby residential property owners. *Id.; see also DE 99-1* at ¶¶29, 32.

42.     Also in December of 2014, Town revised the conditions of approval for special permits for Plaintiff's "Live Music on Sunday" events to prohibit the use of drums or bass. *DE 107-1* at ¶18.

43.     These conditions were responsive to resident complaints regarding sounds from bass and drums and in accordance with the Town's acoustical consultant's expert opinion that low frequencies from drums, bass and percussion instruments create more intrusive and penetrating adverse sound impact to surrounding residential property owners. *Id; DE 99-1* at ¶6.

44.     Similarly, in January, February and November of 2015, Town issued special permits which included the condition that no bass, drums, or other percussion instruments could be used and, once again, this condition was based upon sound impact observations in response to

complaints received from residents as well as recommendations of Town's acoustical consultant. *DE 107-1* at ¶¶23, 26, 38.

45.     In 2016, Plaintiff submitted new Statements of Use for special events which did not include the self-imposed genre restriction that previous Statements of Use submitted by Plaintiff had contained and Town issued special permits for these special events which did not include any genre restriction because this has never been a condition of approval imposed by Town. *Id.* at 45, 48, 8; *see also DE 99-1* at ¶28.

46.     In May 2016, after mediation concluded in this litigation, the Town's Planning & Zoning Department submitted a revised report on the text amendment which included suggested changes of members of the Town Council. *DE 99-1 at ¶ 31.*

47.     On June 7, 2016, Ordinance 1-16 was passed by the Town Council on second reading. *DX 092.*

48.     Ordinance 1-16 amended the definition of "outdoor venue" under Code § 13-1 to clarify that the purpose of an outdoor venue is to play live music and announcements more than permitted under Chapter 27 of the Code. *Id.*

49.     Ord. 1-16 also amends Code § 13-86 to clarify the requirements for Town approval of an outdoor venue such as a site plan showing sound attenuation located on the property to minimize "the projection of sound amplification beyond the surrounding upland property lines of a proposed outdoor venue." *Id.*

50.     Ord. 1-16 also amends § 13-86 to clarify that sound levels from an outdoor venue shall not exceed the exterior decibel levels established for the zoning district in which the outdoor venue is located and that the sound level from the outdoor venue shall meet the sound levels established for properties in the zoning districts of surrounding properties. *Id.*

51.     Ord. 1-16 also amended Code §13-125 to *increase* the allowable exterior sound level for approved outdoor venues in a mixed use sound zone on properties without residential from 60 dB(A) to 65dB(A). *Id.*

52.     Town has not enforced the amendments to the Code outlined in Ord. 1-16 on Plaintiff nor has Town issued Plaintiff any notices of violations pursuant to Ord. 1-16. *DE 149 at [76:16-18];  DE 150 at [79:5-14].*

53.     Plaintiff's expert, David Parzych, has not taken any measurements of the sound level being produced at the Plaintiff's amphitheater since the passage of Ord. 1-16. *DE 150 at [88:11-14].*

Respectfully submitted,

/s/ Lyman H. Reynolds, Jr.
**LYMAN H. REYNOLDS, JR.**
FBN: 380687

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy hereof has been furnished by CM/ECF to all parties on the attached Counsel List this 10th day of January, 2017.

**ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC**
470 Columbia Drive, Bldg. C101
West Palm Beach, FL  33409
Phone: 561-688-6560/Fax: 561-688-2343
E-Service: service_LHR@rrbpa.com
Email: lreynolds@rrbpa.com
Attorneys for Defendants Town of Jupiter

/s/ Lyman H. Reynolds, Jr.
LYMAN H. REYNOLDS, JR.
Florida Bar No: 380687

STYLE:          HARBOURSIDE PLACE v. TOWN OF JUPITER & JUPITER CRA
CASE NO.:      9:16-CV-80170-KAM
OUR FILE NO.:   16-107

## COUNSEL LIST

MITCHELL W. BERGER, ESQ.
ANTHONY J. CARRIUOLO, ESQ.
Berger Singerman, LLP
One Town Center Rd., Suite 301
Boca Raton, FL 33486
Counsel for Plaintiff
PHONE: 561-241-9500
DIRECT: 954-712-5146
FAX: 561-998-0028
E-SERVICE: acarriuolo@bergersingerman.com
               mnewland@bergersingerman.com
               drt@bergersingerman.com
               mberger@bergersingerman.com
FBN: 311340 / 434541

PAUL S. FIGG, ESQ.
Berger Singerman, LLP
350 E. Las Olas Blvd., Suite 1000
Ft. Lauderdale, FL 33301
Co-Counsel for Plaintiff
PHONE: 954-525-9900
DIRECT: 954-712-5104
FAX: 954-523-2878
E-SERVICE: pfigg@bergersingerman.com
FBN:

LYMAN H. REYNOLDS, JR., ESQ.
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Dr., Bldg. C101
West Palm Beach, Florida  33409
Counsel for Defendants Jupiter & CRA
PHONE: 561-688-6560
FAX: 561-688-2343
E-SERVICE: service_LHR@rrbpa.com
EMAIL: lreynolds@rrbpa.com
     bsmith@rrbpa.com
FBN: 380687