## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 9:16-CV-80170-KAM

**HARBOURSIDE PLACE, LLC,** a Florida
limited liability company,

        Plaintiff,

vs.

**TOWN OF JUPITER**, a Florida municipal
corporation, and **JUPITER COMMUNITY
REDEVELOPMENT AGENCY**, a dependent
special district of the Town of Jupiter, Florida,

        Defendant.
_____/

### ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

This matter is before the Court upon Plaintiff, Harbourside Place, LLC's ("Harbourside") motion for the issuance of a preliminary injunction against Defendant, the Town of Jupiter ("the Town"), a municipal corporation located in Palm Beach County, Florida. [DE 44].[1] An evidentiary hearing was conducted before the Court. Upon considering the evidence presented, the argument of counsel and otherwise being duly advised in the premises, it is hereby ORDERED AND ADJUDGED as follows:

**I. BACKGROUND.**

Harbourside is the owner and operator of an entertainment center known as "Harbourside Place" located within the Town. Harbourside Place is located along the Intracoastal Waterway

---

[1] Harbourside has described its motion as one seeking a "temporary injunction." While a temporary injunction is the proper terminology to use in the state courts of Florida, *see* Fla. R. Civ. P. 1.610(a), in the federal courts the motion is properly described as one for a preliminary injunction. Fed. R. Civ. P. 65(a).

within the Town. Harbourside Place comprises approximately 11 acres and includes approximately 43,164 square feet of retail space leased to various shops, restaurants and a 179 room hotel. The location also has an outdoor amphitheater where Harbourside has and desires to continue to present live musical performances for the those who frequent the property and its tenants' businesses.

Across the Intracoastal Waterway from Harbourside Place is a residential development known as "Water's Edge." Water's Edge consists of 20 residential lots, 14 of which are located directly on the Intracoastal Waterway. The distance between the amphitheater located at Harbourside Place and the waterfront lots at Water's Edge is between 630 ft. and 737 ft. Residents at Water's Edge began complaining to the Town about the noise level of music which was being played at the Harbourside Place amphitheater. As a result of the concerns expressed by nearby residents, the Town and Harbourside engaged in numerous interactions in an attempt to remedy the concerns. Ultimately, the Town adopted a new noise ordinance, Ordinance 1-16 ("the Ordinance"), in June of 2016. Plaintiff's Exhibit 4. Harbourside contends that the enactment of the Ordinance has resulted in an unconstitutional limitation on its right of freedom of expression under the First and Fourteenth Amendments by unlawfully restricting its ability to have live music performed at Harbourside Place. Harbourside thus seeks to enjoin the Town's enforcement of the Ordinance.

**DISCUSSION.**

A. Relevant Facts.

The Court first observes that the vast majority of the evidence presented in connection with the present motion relates to zoning and permitting disputes between Harbourside and the Town that have no bearing on the constitutionality of the Ordinance. Whether Harbourside violated conditions of special permits or whether the amphitheater at Harbourside Place has met the requirements to be

classified as an Outdoor Venue are not matters of constitutional significance unless, as Harbourside contends, the Town's actions are part of an overarching scheme to infringe on Harbourside's constitutional right to play music on its property. To the extent Harbourside contends that the Town, through its Building, Zoning and Code Enforcement representatives, is selectively targeting it in order to frustrate its ability to use Harbourside Place profitably by unconstitutionally restricting its right to play music, the Court rejects that contention.

Harbourside Place is a planned unit development within the Town that was approved through a series of resolutions and ordinances. Plaintiff's Exhibit 74. Some of the provisions of these foundational documents that are relevant to the present controversy include:

Section 2, ¶ 19 of Ordinance No. 44-10, which provides:

> The Owner [Harbourside] shall measure the noise levels at different locations *throughout the subject property* with a noise governor or docimeter to ensure that the businesses and subject property as a whole meets and maintains compliance with the noise standards of the Town as they now exist or may be amended from time to time.

(emphasis added); *See also,* Resolution No. 04-10, Section 2, ¶17.

Section 2, ¶ 11 of Resolution No. 2-13, which provides for sound requirements for Outdoor Venues, states:

> a. That the sound limiter shall be set up to limit the overall sound output from the sound system such that it meets the Town's sound level regulations *at the subject property's property lines.*

(emphasis added).

Section 2, ¶ 15 of Resolution No. 2-13 provides:

> The Owner shall maintain, on the subject property, an approved sound level meter . . . The sound level meter is required as

3

>> a condition herein to assist the business in self-monitoring sound levels *on the subject property.*
>
> (emphasis added).

The Ordinance provides, in relevant part, that:

> Section 13-86.  Operation of outdoor sound amplification devices; outdoor venues.
>
> (a)  Outdoor sound amplification.
>
> (1) It is unlawful to use, operate or permit to be played any outdoor sound amplification machine or device including but not limited to a radio receiving set, musical instrument, compact disk, tape, phonograph, loudspeaker, sound amplifier or other machine or device for the production or reproducing of sound between the hours of 11:00 p.m. and 7:00 a.m., except if approved as an outdoor venue as provided in subsection (b) below.
>
> (2) All sounds emanating from an outdoor amplification machine or device in any sound zone or on the public right of way shall be limited in volume and tone so as not to exceed the regulations established herein.
>
> (3) Outside live musical performances associated with a non-residential establishment shall meet the outdoor venue regulations of subsection (b) below or obtain special permits pursuant to Chapter 27, Article IV entitled "Special Permits".

(b) Outdoor Venue.  An outdoor venue may be approved to operate outdoor sound amplification devices with extended hours up to 12:00 a.m., if all of the following requirements are met:

(1) Exterior sound standards of section 13-125, Table 2.
(2) A site plan identifying the location and details of all speakers, sound attenuation and outdoor stages which demonstrates that the stage sound attenuation and speakers are located on the property *to minimize the projection of sound amplification beyond the surrounding upland property lines of a proposed outdoor venue.*
(3) Details and specifications of the proposed professional sound system which demonstrate that the sound being amplified is transmitted only through the professional sound system; and
(4) Details and specifications that the proposed professional sound system include a

      sound limiter. The professional sound system shall have a sound limiter with a tamper resistant volume control limiter. The volume is to be set and locked at or below the maximum allowable sound level and the sound levels from the outdoor venue shall not exceed the exterior decibel levels established for the zoning district in which the outdoor venue is located. The sound level from the outdoor venue shall meet the sound levels established for properties in the zoning districts of surrounding properties.

      An inspection of the sound data report from the sound limiter and access to the sound system shall be permitted at any time upon the request of a Town police or code compliance officer. The failure to provide the Town with the sound data report or the refusal to provide the Town with access to the sound limiter shall be violation of this section.

(5) Sound attenuation of adequate height, length and density such as perimeter walls, berming or other adequate soundproofing barrier around the outdoor stage and/or perimeter of the property *are a requirement for outdoor venues to ensure that the standards of Section 13-125 are met at the upland property line of a property approved as an outdoor venue* and the sound levels established for the zoning districts of surrounding properties.

(6) A property owner who has established a use with outdoor live music on its property prior to November 16, 2010, and who proposes to establish an outdoor venue on that property shall submit an administrative site plan amendment. All other proposed outdoor venues shall submit a site plan application with an event program to the Town which shall be subject to the review and approval of the Town Council. The purpose of the event program is to define the hours and frequency of events to demonstrate conformance with Section 27-96.

    *Outdoor venue* means a nonresidential establishment, or portion thereof, which is not completely enclosed with walls, windows, and a roof and has a site plan approval to operate outdoor amplification devices for sound for the purposes of playing live music and announcements on a regular basis more times than permitted in Chapter 27, Article IV entitled "Special Permits."

Plaintiff's Exhibit 4 (emphasis added).

    The Ordinance increased the sound level limit of the zoning category that applies to Harbourside from 60 dBA at the property boundary to 65 dBA. Affidavit of Gary Siebein ¶ 20 [DE 101].

Under the Ordinance, any person wanting to have an outdoor live musical performance on their non-residential property must obtain a special event permit from the Town or approval from the Town Council for an outdoor venue pursuant §13-86(b) of the Code.  The Ordinance requires an outdoor venue to meet the sound level standards of §13-125 "at the upland property line of a property approved as an outdoor venue and the sound levels established for the zoning districts of surrounding properties."  Plaintiff's Exhibit 4, Section 3(b)(5).

Despite Harbourside's assertions to the contrary, the Court finds that Harbourside has not met the conditions for being classified as an "Outdoor Venue."  While the buildings at Harbourside have met the requirements of the Building Code in order to obtain certificates of occupancy, that is insufficient to meet the requirements for being classified as an "Outdoor Venue."  Harbourside did not meet all of the conditions required to be an "Outside Venue."  Affidavit of Roger Held, ¶ 5 [DE 103]; Affidavit of John Sickler, ¶¶ 26, 27, 47 [DE 102]; Affidavit of Stephanie Thoburn, ¶¶ 29, 32 [DE 99].  Thus, because an events programming schedule had not been approved, Harbourside was required to obtain special permits in order to have live musical performances at its property.  Affidavit of Stephanie Thoburn, ¶ 27 [DE 99]; *see* Affidavit of John Sickler, ¶ 30 [DE 102].

The Court finds that the Town did not attempt to dictate to Harbourside the type or genres of music that could be performed at Harbourside Place.  *See* Affidavit of Stephanie Thoburn, ¶ 28 [DE 99].  The Court finds credible the testimony of the Town's representatives that any limitation on the playing of rap, hip-hop or heavy metal rock music was self-imposed by Harbourside.  *See* Affidavit of John Sickler, ¶ 29 [DE 102].

The Court also finds that Harbourside repeatedly exceeded the permitted noise levels under the applicable Town ordinances by the presentation of live musical performances. Affidavit of Gary Siebein [DE 101]; Affidavit of Edward Dugger [DE 100].  Some exceedances were above 75 dBA at Harbourside Place. Affidavit of Gary Siebein, ¶ 19 [DE 101].  Measured exceedances were not attributable to "spikes," but were the result of singing and playing of musical instruments at the amphitheater. Affidavit of Gary Siebein, ¶ 13 [DE 101].  Nor are the exceedances attributable to a particular style of music or the music's content. *Id.* ¶ 17. Furthermore, measuring the noise level from the subject property rather than the affected property is reasonable. Affidavit of Edward Dugger, ¶15(C) and (D) [DE 100].  The Court finds that the noise limits contained in the Ordinance are reasonable. Affidavit of Gary Siebein, ¶ 19 [DE 101].

The Court finds that the Town did not use the special permitting process as a means to control the content of musical performances at Harbourside Place.  Rather, since Harbourside had not met the conditions for becoming an Outdoor Venue, the special permitting process was the proper means under the Town's ordinances for authorizing live musical performances.

The Court finds that the Town did not adopt the Ordinance in order to target or retaliate against Harbourside, or as a means of controlling the content of musical performances at Harbourside.  The Court finds that the Ordinance is content neutral on its face and was not adopted by the Town to control the message being expressed through the music performed at Harbourside Place.

B. Legal Standards for the Issuance of a Preliminary Injunction.

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr*, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003) (citing *McDonalds Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). "The purpose of a preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

Normally, a private party seeking a preliminary injunction under Federal Rule of Civil Procedure 65 must demonstrate (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest. *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 968 (11th Cir. 2005).

C. Legal Standards for Challenging Noise Ordinances.

Harbourside contends that the noise ordinance enacted by the Town is unconstitutional because it places an undue restriction on its ability to engage in a constitutionally protected form of expression, that being the playing of music on its property. It is recognized that music is a form of expression and communication that is protected by the First Amendment of the U. S. Constitution. *Ward v. Rock Against Racism,* 491 U.S. 781, 790 (1989). Because Harbourside is challenging the Town's noise ordinance as it relates to Harbourside's ability to have music

played from its outdoor amphitheater, the Court will treat this case as one where the music is being disseminated from a public forum. Thus, the Town's right to regulate musical expression is subject to the protections of the First Amendment. *Id.* at 791. Notwithstanding the fact that Harbourside wishes to have music played in a public forum, the Town may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they open ample alternative channels for communication of the information. *Id; DA Mortgage, Inc. v. City of Miami Beach,* 486 F.3d 1254, 1266 (11th Cir. 2007).

The principal inquiry in determining content neutrality, in speech cases generally, and in time and place or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. *Ward,* 491 U.S. at 791; *DA Mortgage,* 486 F.3d at 1266. The government's purpose is the controlling consideration. *Id.* A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. *Ward,* 491 U.S. at 791. Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech. *Id.; DA Mortgage,* 486 F.3d at 1266. If the ordinance is content neutral, courts will analyze it according to intermediate, rather than strict, scrutiny.

In evaluating time, place and manner restrictions, "the least intrusive means" of achieving the desired end is not required. *Ward,* 491 U.S. at 797-98; *DA Mortgage,* 486 F.3d at 1267. The requirement of narrow tailoring is satisfied "so long as the . . . regulation promotes a

substantial government interest that would be achieved less effectively absent the regulation." *Ward,* 491 U.S. at 799; *DA Mortgage,* 486 F.3d at 1267.

It is also important to recognize that the government "has a substantial interest in protecting it citizens from unwelcome noise." *Ward,* 491 U.S. at 796; *Pine v. City of West Palm Beach,* 762 F.3d 1262, 1269 (11th Cir. 2014). While this interest is at its greatest when it concerns the well-being, tranquility and privacy of the home, the government may act to protect traditional public forums as city streets and parks from excessive noise. *Pine,* 762 F.3d at 1269.

D. Analysis of Facts to the Law.

As previously indicated, although music is a form of expression and communication that is constitutionally protected, governmental entities may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they open ample alternative channels for communication of the information. *Ward,* 491 U.S. at 791*; DA Mortgage, Inc.,* 486 F.3d at 1266. The Ordinance is content neutral and was not enacted for the purpose of controlling the messages expressed through the music being played at Harbourside Place.[2] Rather, the Ordinance was adopted to protect the residents of the Town from excessive noise, which objective would not be achieved in the absence of the Ordinance.

---

[2] Harbourside places great reliance on the case of *Reed v. Town of Gilbert, Arizona,* 135 S. Ct. 2218 (2015) to support its challenge to the constitutionality of the Ordinance. The Court concludes this reliance is misplaced. In *Reed,* the Court was analyzing a sign ordinance, not a noise ordinance, which was not content neutral on its face. Here, the Ordinance is content neutral on its face.

The Ordinance promotes a significant governmental interest by reasonably limiting the decibel levels at which the musical expression can be disseminated on the Harbourside Place property.[3] With the use of recommended sound mitigation and attenuation strategies, Harbourside would be able to have music played and heard on its property without adversely affecting adjacent property owners. *See* Affidavit of Gary Siebein, ¶¶ 18, 23 [DE 101]; Affidavit of Edward Dugger, ¶¶ 8, 14 [DE 100]. Thus, the Ordinance is narrowly tailored to serve the significant governmental interest of protecting inhabitants of the Town from excessive noise, yet there are ample alternative channels available to Harbourside to continue to communicate

---

[3] Harbourside challenges the requirement of the Ordinance that the decibel level of sounds be measured at its property as opposed to the location where the sounds are received. As previously indicated, the Court finds that provision to be reasonable. *See* Affidavit of Edward Dugger, ¶ 15(C) and (D) [DE 100]. Moreover, measurement of the noise levels from Harbourside Place was always contemplated by the parties when the development was approved. Plaintiff's Exhibit 74, Section 2, ¶ 19 of Ordinance No. 44-10; Resolution No. 04-10, Section 2, ¶17; Section 2, ¶ 11 of Resolution No. 2-13; Section 2, ¶ 15 of Resolution No. 2-13.

Additionally, to the extent Harbourside challenges the Ordinance on the basis that it is vague and ambiguous because the sound standards for an Outside Venue must be met at the "upland property line," that challenge is also rejected. "Upland property line" has a recognized and ascertainable meaning, as does "mean high-water line." *See* Fla. Stat. §§ 177.27(15), 177.28(1); *Martin v. Busch,* 93 Fla. 535, 112 So. 274, 285 (1927)(Uplands are those bordering on bodies of water. Lands bordering on the shores of navigable waters do not extend beyond the ordinary high-water mark.); American Land Association's Land Title Institute, Title 101, Chapter 9, "Water Rights and Related Issues" at 9-1 (2001 rev. ed.)("The land below the mean high-tide line is classified as submerged, and the land above the mean high-tide line as upland.")

through the medium of music.[4]   As a result, the Court concludes that the Ordinance passes constitutional muster.

Because the Ordinance is not constitutionally infirm, Harbourside cannot meet the requirements for the issuance of a preliminary injunction against its enforcement.  Harbourside had not demonstrated a likelihood of success on the merits, it will not suffer irreparable injury by the enforcement of a valid ordinance, the threatened injury to Harbourside does not outweigh the damage the issuance of an injunction would cause the Town, and it would not serve the public interest to enjoin the enforcement of a constitutionally valid ordinance.  *BellSouth Telecommunications, Inc.,* 425 F.3d 968.

**Conclusion.**

In view of all of the foregoing, Harbourside's motion for a preliminary injunction is **DENIED.**

Done and Ordered in Chambers in West Palm Beach, Palm Beach County, Florida, this 10th day of May, 2018.

KENNETH A. MARRA
UNITED STATES DISTRICT JUDGE

---

[4]  In its constitutional challenge, Harbourside places great reliance on the fact that the Ordinance makes it unlawful to create any sound, when measured on any other property line, to exceed the "A maximum A-weighted instantaneous sound level or peak measurement value which is greater than or equal to the relevant sound standard by 10 dB(A) for any time period." ("spikes"). Plaintiff's Exhibit 4, Section 13-125 (b)(2).  The Court rejects this as a basis to render the Ordinance constitutionally infirm in view of the evidence presented in this case, which the Court accepts, that measured exceedances were not attributable to "spikes."  Affidavit of Gary Siebein, ¶ 13 [DE 101].